UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALICIA STREET, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:19-cv-2590 CDP |
| | ) |
| LT.COL. LAWRENCE O'TOOLE, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS LEYSHOCK AND OTHER SUPERVISORY OFFICERS**

Plaintiffs' first amended class action complaint [ECF 13] is long on rhetoric but short on material facts. It is equally short on plausibility. Defendants Lt.Col. Gerald Leyshock and the other supervisory officers identified in ¶9 of the amended complaint now urge this Court to insist that plaintiffs play by the law and rules, dismissing all claims against these defendants.[1]

Plaintiffs' claims arise out of the events of September 2017, in St. Louis that are described in this Court's opinion in *Ahmad v. City of St. Louis,* 4:17-cv-2455, reported at 2017 U.S.Dist.LEXIS 188478. Plaintiffs sue defendants Leyshock and the other supervisory officers named in ¶9 (hereinafter referred to as defendant supervisors) in their individual capacities, and allege that they "supervised SLMPD Officers during the events in question and knew or should

---

[1] As the Court is aware from the preliminary scheduling conference, see ECF 10, the defendants have endeavored to simplify the Court's and the parties' task at this motion stage. Defendants fall roughly into three groups: the City, its acting police commissioner and its acting director of public safety at the time; supervisory officers in the field; and line officers in the field. A fourth group, mixing supervisors and line officers, was added by the amended complaint. Because at least some issues vary with the roles of the defendants, four motions to dismiss are being filed, one for each general group, accompanied by a supporting memorandum that will avoid duplication as much as possible.

have known that there was no probable cause for the arrest of Plaintiffs and class members and that there was no legal justification to use force against Plaintiffs." Amended complaint [ECF 13] ¶9.

The focus of the Street amended complaint is the mass arrest that occurred at the intersection of Tucker Blvd. and Washington Ave. in downtown St. Louis on the night of September 17, 2017.  The amended complaint includes a substantial portion of the record before this Court in *Ahmad,* see ¶¶39, 50,  Ex. D [ECF 13-4] & E [ECF 13-5], and a video (Ex. G--ECF 13-7), which also appears (at least in part) in the record in *Ahmad.*  The exhibits are part of the complaint for present purposes.  F.R.Civ.P. 10(c); *Kiesling v. Holladay,* 859 F.3d 529 (8th Cir. 2017).

Insofar as pertinent to the defendant supervisors, plaintiffs allege in substance that all defendants illegally arrested them, maced or pepper sprayed them, handcuffed them too tightly, and struck them, and at the same time failed to prevent fellow officers from doing so.  Plaintiffs also complain that all defendants denied them medical treatment for injuries--all in contravention of the First, Fourth, Eighth and Fourteenth Amendments.  Counts I-III, V, XV.  Plaintiffs also attempt to plead state law claims of battery, false arrest, abuse of process, malicious prosecution, negligent infliction of emotional distress, conversion, and conspiracy.  Counts VII-XIV.  Because plaintiffs cannot allege direct action by more than a handful of supervisors, plaintiffs lump all defendants into a vast conspiracy to accomplish the constitutional violations alleged.  Count IV.

## Facts

Plaintiffs do plead some facts.  Plaintiffs are among 123 persons arrested on September 17, 2017, by officers of the St. Louis division of police (usually referred to as the St. Louis

2

Metropolitan Police Department), acting under the direction of the defendant supervisors.  In the course of the arrest of the plaintiffs, officers deployed pepper spray against them, handcuffed them too tightly, struck them, denied them first aid for the effects of the spray or other injuries, and took them to jail.  Although allegedly they were summoned to appear in municipal court on charges of "failure to disperse," no charges in fact were ever filed.  See Amended complaint [ECF 13], ¶¶42-57; 103, 115-16; Ex. G [ECF 13-7].

Plaintiffs allege that the defendant supervisors were part of a conspiracy to illegally arrest and mistreat protesters in the City of St. Louis in September 2017 in order to terrorize or intimidate them in the exercise of their constitutional rights.  They point to allegations of text messages by a few officers reflecting their intention to do so, and to *post hoc* comments of the acting police commissioner praising police work over the weekend, as facts supporting the claimed conspiracy.  ¶¶30-32, 98-100.  They also allege that protective equipment normally worn in mass disorder situations was somehow indicative of a plan to "disguise" officers in the course of misconduct  ¶34.   More specifically, plaintiffs allege that defendants Leyshock and Sachs formed a plan to encircle and arrest *en masse* the plaintiffs and their putative class at Tucker and Washington on the night of September 17.  They assert that defendants Rossomanno, Jemerson, and Karnowski actively engaged in the execution of the mass arrest.  They do not identify any other defendant supervisors who had anything to do with the planning of the mass arrest.

Plaintiffs admit that there had been violence earlier that night in connection with the group that was to be encircled, and acknowledge that orders to disperse had been given repeatedly.   ¶¶48-49, Ex. F [ECF 13-6]. They also acknowledge that many persons in the putative class were sporting masks and goggles, ¶ 87, and the amended complaint shows that at

3

least some members of the class were milling about in the intersection of Tucker and Washington, blocking the intersection.  Ex. G; see also Ex. E, pp. 12-13, 24, 71.  Finally, the complaint includes evidence that, not long before the arrest, the crowd had directed threats and violence at police officers a few blocks away from Tucker and Washington.  Ex. E, pp. 192-93.  Nonetheless, plaintiffs allege that the mass arrest was without probable cause and that the defendant supervisors knew it. ¶¶46-47, 56, 92, 101; see also preliminary statement.

The class representatives, few of whom apparently were present as protesters, see ¶¶158, 158, 182, 198, 237, individually allege the following experiences during the mass arrest: plaintiff Street was jabbed with a baton, could "taste" pepper spray, and was handcuffed with "excruciating" tightness, ¶¶140ff.; plaintiff Harris was stood on, pepper sprayed, tightly handcuffed, sustained cuts, and his cell phone was seized, ¶¶170ff.; plaintiff McCain was pepper sprayed and handcuffed; plaintiff Theis was knocked down, possibly pepper sprayed, "roughly" handcuffed, had her leg and foot stepped on, and was ignored at the City jail when she asked for medical attention due to her lupus and the effects of pepper spray; plaintiff Warrington was handcuffed and her legs were pepper sprayed, ¶¶237ff.  All of the representative plaintiffs spent some time at the City jail, and were instructed to appear in municipal court.  However, no court summonses were served nor were any charges filed.  ¶¶115-16, Ex. H.

Plaintiffs assert generally that defendant supervisors, in common with "all defendants," participated in using force on plaintiffs.  They also assert that defendant supervisors failed to intervene to prevent the use of excessive force by other officers, asserting in general terms the requisite knowledge and opportunity to do so.  Count XV.  However, none of the representative plaintiffs asserts that any particular defendant supervisor was in the vicinity when the plaintiff was pepper sprayed, struck or handcuffed.

**1.    Plaintiffs fail to state an actionable conspiracy claim against defendant supervisors, because no facts are alleged to show any agreement among them to violate plaintiffs' rights and the claims are supported only by conclusions and formulae.**

An essential element of a conspiracy claim under 42 U.S.C. §1983 is an agreement by a defendant to deprive the plaintiff of constitutional rights.  See, e.g., *Burbridge v. City of St. Louis,* 2019 U.S.Dist.LEXIS 219483 (E.D.Mo. 2019) and cases cited therein.  This holds true for a state law conspiracy claim as well.  E.g., *Minor v. Terry,* 475 S.W.3d 124 (Mo.App.E.D. 2014).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).  A pleading that merely pleads "labels and conclusions," or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of factual enhancement will not suffice. *Id.* at 678-79.  Determining whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

This Court is well aware that the evidence before it in the *Ahmad* case gave no hint of a "conspiracy."  Amended complaint, Ex. D & E.  Presented with very similar claims, the Court in *Burbridge* unhesitatingly rejected a conspiracy theory advanced against the City.  To the extent that plaintiffs attempt to bootstrap a conspiracy by virtually the entire police division on the basis of the criminal conduct and statements of a few officers indicted for their actions in a wholly separate incident, ¶30, this Court (having jurisdiction of the criminal cases as well) is in the uniquely qualified position to reject plaintiffs' outlandish claims against defendant supervisors, not one of whom is alleged to have been privy to the statements of the indicted rogue officers.

Other defendants have briefed the issue of lack of facts to support an agreement, and so these defendants will not address the issue further.

This Court's judicial experience and common sense necessarily will impel the Court to reject the plaintiffs' threadbare and formulaic allegations of conspiracy in virtually the same context.

**2.     Plaintiffs fail to state an actionable conspiracy claim against the defendant supervisors by reason of the intracorporate conspiracy doctrine, which can and should be applied in this case on the pleadings.**

Because the judges of the Eastern District routinely refuse to entertain application of the intracorporate conspiracy doctrine in §1983 cases on motions to dismiss, defendant supervisors will simply note that the doctrine can and should be applied here as a matter of fairness. Plaintiffs have no basis in fact for believing that defendants supervisors were party to a conspiracy.  They were doing a difficult job in extremely difficult circumstances.  The teachings of *Ashcroft v. Iqbal,* 556 U.S. at 684-85, rejecting arguments against determination of the defense of qualified immunity at the pleadings stage, warrant an exception in this case to the Eastern District's practice.  Defendants simply urge the Court to follow *Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019) and *Grider v. City of Auburn*, 618 F.3d 1240 (11th Cir. 2010), apply the intracorporate conspiracy doctrine, and dismiss this action.

**3.     Defendant supervisors are qualifiedly immune to plaintiffs' alleged claims, because the law of intracorporate conspiracy under 42 U.S.C. §1983 is unsettled and defendant supervisors had no notice in 2017 that their joining in planning or directing a mass arrest of disorderly protesters was unconstitutional.**

Again, these defendants do not wish to needlessly duplicate briefing of issues addressed in parallel motions to dismiss. Because the application of the intracorporate conspiracy doctrine has not been addressed authoritatively in §1983 cases in this Circuit, this Court must apply qualified immunity here. This conclusion follows from *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017). In that case, the Court declared that the government officers involved in alleged intentional constitutional violations were entitled to qualified immunity, observing that close and frequent consultations to facilitate the adoption and implementation of policies are essential to the orderly conduct of governmental affairs, and if those discussions, and the resulting policies, were to be the basis for private suits seeking damages against the officials as individuals, "the result would be to chill the interchange and discourse that is necessary for the adoption and implementation of governmental policies" 137 S.Ct. at 1868-69,

To be sure, *Ziglar* was decided under §1985(3), but the principles of qualified immunity applied in *Ziglar* are identical to immunity principles applied in claims under §1983. E.g., *Ashcroft v. al-Kidd,* 563 U.S. 731 (2011); *Plumhoff v. Rickard,* 134 S.Ct. 2012 (2014); *Hanson v. Best,* 915 F.3d 543 (8th Cir. 2019). The principles enunciated in *Ziglar* apply with particular force in regard to defendant supervisory officers. Plaintiffs' amended complaint shows, at a minimum, that defendants were attempting to police civil disorder, dealing with a crowd that dismembered and reconstituted itself several times, committing acts of violence and vandalism in the center of the City's downtown. The defendants were acting in light of behavior of similar crowds during the preceding two nights, when, after nightfall, violence broke out, including a near-riot at the Mayor's home and numerous assaults on police officers in St. Louis and in nearby University City. Ex. E, pp. 6-7, 182-83. Even if it is assumed that the defendant supervisors agreed or consulted together regarding whether plaintiffs should be arrested or subjected to the

7

use of force, it does not follow that reasonable officers in their situation would have known that such conduct would render each of them liable if any plaintiff was illegally arrested or subjected to excessive force.

Defendant supervisors are likewise immune to the state law conspiracy claim asserted in count XIV.  That claim appears to rest on the identical claims asserted under §1983, i.e., denial of civil rights.   Amended complaint, ¶¶402-03.  While, as noted below, count XIV does not state a cognizable claim under state law, defendant supervisors are nonetheless entitled to official immunity under Missouri law, because their acts and conduct in dealing with a mass arrest are alike discretionary.  An arrest, especially a mass arrest, and any use of force in connection therewith must be deemed discretionary acts.  E.g., *Southers v. City of Farmington,* 263 S.W.3d 603 (Mo.banc 2008).  While official immunity may be denied in cases of acts done with bad faith or malice, it is clear from the factual allegations of the amended complaint--including the contents of Ex. D & E--that there is no plausible claim of bad faith or malice on the part of defendants. *State ex rel. Alsup v. Kanatzar,* 588 S.W.3d 187 (Mo.banc 2019); *Edwards v. McNeill,* 894 S.W.2d 678 (Mo.App.W.D. 1995); see also *Wealot v. Brooks,* 865 F.3d 1119 (8th Cir. 2017)(noting distinction between qualified immunity and state law official immunity).

In sum, all conspiracy claims against defendant supervisors must be dismissed on immunity grounds.

**4.     The claims against defendant supervisors based on illegal retaliatory arrest, application of excessive force, and denial of medical care must be dismissed for failure to state a claim.**

The amended complaint is at war with itself in many respects.  The blunderbuss allegations accuse the defendant supervisors individually of committing every constitutional

8

violation asserted by plaintiffs, but the allegations of the class plaintiffs concerning their injuries, and the video exhibit to the amended complaint, do not show a plausible claim against any identified defendant supervisor.

It is elementary that liability under 42 U.S.C. §1983 is personal and not vicarious, and so supervisors are liable under the statute only for their individual acts.  E.g., *Doran v. Eckold,* 409 F.3d 958 (8th Cir. 2005)(*en banc*); see also *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009); *Calgaro v. St. Louis City (MN),* 919 F.3d 1054 (8th Cir. 2019).  Except for Lt.Col. Leyshock, Lt. Sachs, and Sergeants Rossomanno, Jemerson and Karnowski, there is not a single allegation in the amended complaint that shows that any defendant supervisor directed an arrest, nor, except with regard to Sgts. Rossomanno and Karnowski, is there an allegation that a defendant supervisor personally participated in the physical arrest of or used force against any plaintiff on September 17.  There is no allegation whatever that any of the defendant supervisors was aware of and ignored any plaintiff's need for medical treatment.

With regard to the allegedly unlawful arrest, the amended complaint shows that, in fact, the police had probable cause to arrest plaintiffs.  At the time defendants Leyshock and Sachs determined that a mass arrest should occur, the amended complaint shows that the following facts were known or had been reliably reported to them:  a large crowd was milling about the intersection of Tucker and Washington; that crowd included persons wearing masks and goggles; that crowd included persons who had been involved in disorderly activity downtown in the past several hours; that crowd had disregarded repeated efforts to disperse; at least some members of that crowd had assaulted or threatened officers; and that similar crowds had resorted to violence on the two preceding nights.

9

The determination of probable cause is an objective one: whether the facts and circumstances known to an officer, or collectively known to the police, at the time would warrant the officer in believing that an offense had been committed and that the arrestee had committed it? E.g., *District of Columbia v. Wesby,* 138 S.Ct. 577 (2018).  The subjective belief of an officer as to the offense which has been committed is immaterial, as is any subjective animus of the officer.  E.g., *Nieves v. Bartlett,* 139 S.Ct. 1715 (2019); *Peterson v. Kopp,* 754 F.3d 594 (8th Cir. 2014).  Moreover, in situations of civil disorder, if there are reasonable grounds to believe that a group has been acting and will act as a unit, it is reasonable to treat the group as a unit in assessing probable cause to arrest the group's members.  *Bernini v. City of St. Paul,* 665 F.3d 997, 1003-04 (8th Cir. 2012); see also *Carr v. Dist. of Columbia,* 573 F.3d 401, 408 (D.C.Cir. 2009).   Above all, the determination of probable cause is made from the standpoint of the officer in the field, and not in an exercise of judicial hindsight.  E.g., *Herring v. United States,* 555 U.S. 135 (2009).

In the case at bar, defendants Leyshock and Sachs had ample probable cause to believe that the group milling about Tucker and Washington was a unit, and that the unit had engaged in violence and vandalism previously.  It was reasonable to infer that, left undisturbed, this crowd would erupt in further disorder.  Probable cause to arrest does not become stale.  E.g., *United States v. Watson,* 423 U.S. 411 (1976).  It took time to assemble the necessary force to accomplish the mass arrest.  Under the circumstances, arrest of the members of the unit, i.e., plaintiffs and the putative class, was entirely proper.

As to the claim of denial of medical care, the amended complaint wholly fails to show facts permitting a reasonable inference that each and every defendant supervisor was aware of a serious medical need of any plaintiff, and deliberately ignored it.  The amended complaint shows

10

that the plaintiffs were arrested and promptly taken to the City jail. While it might have been feasible to allow the arrestees to wash off any lingering pepper spray, the amended complaint simply does not show any deliberate indifference to a known, serious medical need. See *A.H. v. St. Louis County,* 891 F.3d 721 (8th Cir. 2018)("deliberate indifference" akin to criminal recklessness).

Doubtless plaintiffs will argue that they have pleaded a sufficient claim of failure to intervene (count XV) amounting to "tacit collaboration" against defendant supervisors, but that argument would be meritless. In an excessive force case, a police officer may be liable for breach of a duty to intervene "where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration." *White v. Jackson,* 865 F.3d 1064, 1081 (8th Cir. 2017). In this case, the video exhibit and the allegations of the complaint wholly fail to show that any defendant supervisor was aware that any force applied was excessive, in time to do anything about it. This Court's view of a similar (if not the same) video exhibit in *Ahmad* was that a single officer was spraying arrestees. ¶125. Multiple officers engaged in arresting 123 people. Several plaintiffs do not claim that any pepper spray was directed at them individually, ¶¶152, 221-22, and plaintiff Warrington claims only that she "later learned" she was sprayed), ¶264. Thus, plaintiffs wholly fail to allege a cognizable claim of failure to intervene against the defendant supervisors.

Counts I-III, V and XV should be dismissed as to defendant supervisors.

**5.     The claims against defendant supervisors based on illegal retaliatory arrest, application of excessive force, and denial of medical care must be dismissed for failure to state a claim on grounds of qualified immunity.**

Assuming that the amended complaint states a plausible claim for relief against defendant supervisors, such defendants are nevertheless entitled to qualified immunity.

Qualified immunity is applicable here because it was not clearly established in September 2017 that a mass arrest under the circumstances was unlawful.  Furthermore, defendant supervisors, at a minimum, had arguable probable cause to believe that the arrests of plaintiffs were lawful.  In addition, defendant supervisors had no notice that the force used on any plaintiff was excessive as a matter of law, or that it was clearly established in September 2017 that a failure to help arrestees wash off pepper spray was deliberate indifference to serious medical needs.

*Illegality of mass arrest.*  Not only was the mass arrest of September 17, 2017, virtually unprecedented in St. Louis, but it was by no means clearly established then (or now, for that matter) that such an arrest under the circumstances was contrary to the Fourth Amendment.  If police reasonably believe that a crowd is behaving as a unit, and reasonably believe that the members of the unit have committed or are about to commit criminal acts, they are warranted in treating the crowd as a unit and in arresting its members.  *Bernini v. City of St. Paul,* supra.  In the instant case, defendants Lt.Col. Leyshock and Lt. Sachs had been observing and receiving reports concerning the behavior of the crowd to which plaintiffs adhered.  The members of that crowd had committed, or were reliably reported to have committed, acts of violence against police and vandalism of property.  Similar crowds, also sporting masks and goggles, had erupted into near-riots in similar situations over the previous two days.  In similar circumstances, courts have approved mass arrests, despite the near certainty that innocent persons could be caught up in the net.  *Bernini,* supra; *Carr v. Dist. of Columbia,* 587 F.3d 401 (D.C.Cir. 2009).  Hence, it

was not clearly established that the mass arrest of plaintiffs was unconstitutional, and defendant supervisors are entitled to qualified immunity.

*Arguable probable cause.* It is well established that, in making an arrest, an officer is qualifiedly immune to liability under 42 U.S.C. §1983 if the officer has at least arguable probable cause to arrest. In other words, if the conduct of the officer is at least "reasonably unreasonable," there is no basis for liability. An officer may act reasonably even if his action is result of a mistake, provided that the mistake is also reasonable. In the analysis, courts consider only facts known or knowable to the officer. See *White v. Pauly,* 137 S.Ct. 548, 550 (2017); *White v. Jackson,* 865 F.3d 1064 (8th Cir. 2017); *Bernini v. City of St. Paul,* supra.

In this case, the factors impelling Lt.Col. Leyshock and Lt. Sachs to decide to arrest plaintiffs have been delineated above. Even if defendants Leyshock and Sachs were mistaken in believing that the group milling about Tucker and Washington was acting as a unit and presented a danger to the public, that mistake, in light of all the circumstances, was reasonable, because they reasonably believed that it was important to control a chaotic and potentially combative scene and prevent escalation of disorder. See *Kelsey v. Ernst,* 933 F.3d 975 (8th Cir. 2019)(*en banc*); *Rudley v. Little Rock P.D.,* 935 F.3d 651 (8th Cir. 2019). The other defendant supervisors, including Sgts. Rossomanno, Jemerson and Karnowski, acted on the orders of their superiors. Their reliance on the directives of their superiors was entirely reasonable. See *Ehlers v. City of Rapid City,* 847 F.3d 1002, 1010 (8th Cir. 2017). Nothing in the amended complaint shows that any defendant supervisor had superior means of knowledge or had any reason to question the judgment of Leyshock and Sachs, both of whom had been involved in policing disorders during that entire weekend. In short, defendant supervisors are qualifiedly immune to liability for the mass arrest.

*Excessive force.* Defendant supervisors are immune from liability for the use of excessive force, if any, by individual officers for three reasons: first, the amended complaint fails to show that the supervisors knew that line officers were using any excessive force; second, insofar as the supervisors did not personally use force, it was reasonable under the circumstances for them to believe that officers were using necessary force to accomplish the arrest of plaintiffs; and, third, it was and is not clearly established that the use of pepper spray, tight handcuffing, or stray baton strikes constitute anything more than *de minimis* use of force, which is not a cognizable Fourth Amendment violation of which defendant supervisors knew or should have known.

Although plaintiffs allege in formulaic terms that the defendant supervisors intended and knew that line officers were using excessive force in the mass arrest, the only supervisor named as being within arm's length of officers and arrestees when force was being used is Sgt. Rossomanno. The only defendant supervisor alleged to have used force personally is Sgt. Karnowski. ¶80. In any case, the allegations by the individual plaintiffs fail to identify anyone who used force on any one of them, and the video included with the amended complaint makes it obvious that *all* officers did not deploy pepper spray. Ex. G. Given that the supervisors could reasonably believe that individual arrestees were not subdued and compliant when pepper spray was used, it was arguably reasonable to believe that spray was necessary to induce compliance. Cf. *Bernini v. City of St. Paul,* 665 F.3d at 1006. It follows that none of the supervisors can be liable for a violation of any clearly established right.

The defendant supervisors are also entitled to qualified immunity because, at the time of the mass arrest (and still) it was not clearly established that pepper spray, handcuffing, or isolated baton or other strikes were anything other than *de minimis* uses of force, such that

14

defendant supervisors reasonably believed that such force did not amount to a constitutional violation. It is well settled that not every slap or kick or other application of force is a Fourth Amendment violation, e.g., *Graham v. Connor*, 490 U.S. 386 (1989), but this Court has not yet explicated just when a use of force passes the *de minimis* threshold, or whether there really is a *de minimis* threshold, and the extent to which the nature of actual injury is determinative of the issue of excessiveness. In *White v. Jackson*, 865 F.3d at 1080, this Court held that placing a knee on an arrestee's back in the process of the arrest was not excessive force, notwithstanding lack of resistance. In *Crumley v. City of St. Paul*, 324 F.3d 1003 (8th Cir. 2003), this Court held that handcuffing so tightly as to cause bleeding, without medical evidence or any other evidence of long-term injury, did not amount to a Fourth Amendment violation. On the other hand, this Court has also held that force causing a back contusion can amount to excessive force, with the focus on the "excessiveness" of the force, not the degree of injury. E.g., *Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011). Recently, the uncertainty of the law in this Circuit on this subject was cast in sharp relief by the multiple opinions in *Robinson v. Hawkins*, 937 F.3d 1128 (8th Cir. 2019). In that case, the majority of the panel held that shoving an arrestee up against a car, and handcuffing her, causing pain and bleeding from the wrists, did not amount to unconstitutionally excessive force, thus compelling a grant of qualified immunity. All of the opinions in *Robinson* reflect the prevailing uncertainty as to whether some minimum level of injury is necessary to establish a Fourth Amendment violation. This very uncertainty in the law compels the grant of qualified immunity to defendant supervisors in regard to the claim of excessive force.   See *Dist. of Columbia v. Wesby,* 138 S.Ct. at 590 ("precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply").

In this case, under all the circumstances as derived from the amended complaint as a whole, defendant supervisors could reasonably have believed that the use of pepper spray by officers in the course of arresting plaintiffs was either arguably reasonable, as it was impossible to tell if anyone in the groups was non-compliant with officer instructions or not, or was not such force as was inflicting more than *de minimis* injury, and so not amounting to unreasonable force. In other words, in the unusual context of a mass arrest, a reasonable police officer could have believed that as long as the force used did not cause more than *de minimis* injury to an arrestee, the use of force was not unconstitutional.  *Wright v. United States,* 813 F.3d 689 (8th Cir. 2015). *A fortiori,* in the context of a mass arrest, defendant supervisors could reasonably have believed that as long as the pepper spray and handcuffing did not cause more than *de minimis* injury, the force being used by line officers was not unconstitutional.

While some plaintiffs have alleged injuries resulting from the use of pepper spray, several have not only failed to allege any injury but have also failed to allege that any officer directed spray at them individually.  Plaintiff Street complains only of "tasting" spray; plaintiff Warrington complains only that she was sprayed on the back of her legs.  ¶¶151-52, 264.  No plaintiff has alleged any serious physical injury from handcuffing, and, in any event, it cannot plausibly be alleged that defendant supervisors had any reason to know that handcuffs on any arrestee were likely to inflict more than *de minimis* injury.  Given the conflicting precedents in this Circuit on the issue of *de minimis* injury, for purposes of determining a violation of the Fourth Amendment, defendant supervisors are qualifiedly immune.

Defendant supervisors must also be deemed immune to the claim of denial of medical care.  Again, a reasonable officer could believe that inability to wash off pepper spray immediately would at most entail *de minimis* injury, and, in any event, deliberate indifference is

16

tantamount to criminal recklessness, which is lacking absent notice of the existence of a serious medical need.  Plaintiffs do not (and cannot) allege that any defendant supervisor had notice of a serious medical need of any plaintiff. See *A.H. v. St. Louis County,* 891 F.3d 721 (8th Cir. 2018); cf. *Martz v. Barnes,* 787 Fed. Appx. 356 (8th Cir. 2019).

All federal claims against defendant supervisors must be dismissed on the basis of qualified immunity.

**5.     Plaintiffs fail to state any actionable state law claims against defendant supervisors, because none participated in any tortious conduct toward plaintiffs and in any event are entitled to official immunity; in addition, the state law conspiracy claim is barred by the state law application of the intracorporate conspiracy doctrine.**

Plaintiffs assert claims for battery, false arrest, false imprisonment, abuse of process, malicious prosecution, negligent infliction of emotional distress, conversion, and conspiracy.

The claims of intentional tort against defendant supervisors all fail as a matter of law. First, none of these defendants personally inflicted any injury on plaintiffs or seized any property from plaintiffs.  They are not the employers of any of the individual officer defendants who are claimed to have inflicted such personal injuries. Unless an officer of a municipal employer personally engaged in tortious conduct, that officer cannot be liable individually for a subordinate employee's torts. E.g., *Davis-Bey v. Mo. Dept. of Corrections,* 944 S.W.2d 294 (Mo.App.W.D. 1997).

Even assuming that some of the defendant supervisors can be viewed as having instigated plaintiffs' arrests, the claims of battery, abuse of process, malicious prosecution, infliction of emotional distress and conversion are defective.

Battery requires intended and actually bodily contact with the plaintiff. *Geiger v. Bowersox,* 974 S.W.2d 513 (Mo.App.E.D. 1998). No plaintiff alleges that any defendant supervisor intended to and did make contact with a plaintiff. No claim for battery is stated against the defendant supervisors. In addition, given that there was probable cause for the mass arrest, these defendants are not liable on the state law claim of battery by reason of Mo.Rev.Stat. §§563.046, 563.074.

Abuse of process is not actionable unless process is actually issued and unless the defendant makes use of process in an unauthorized manner. Even if the defendant had an evil motive or purpose, if the defendant merely prosecutes an action in the usual course, using process within its regular and legitimate function, there is no abuse of process. *Duvall v. Lawrence,* 86 S.W.3d 74, 85 (Mo.App.E.D. 2002). Here, there is no allegation that any of defendant supervisors personally procured any process against any plaintiff or proceeded in any manner outside the usual course of a municipal ordinance proceeding. Thus, no defendant supervisor is liable for abuse of process, regardless of the supervisor's subjective attitude toward plaintiffs' conduct.

Assuming that a municipal ordinance prosecution is a criminal proceeding, actions for malicious prosecution based on such proceedings are not favored. *Baker v. St. Joe Minerals Corp.,* 744 S.W.2d 887 (Mo.App.E.D. 1988). At a minimum, such a claim requires that a prosecution be commenced. E.g., *Chicago G.W.R. Co. v. Robinson,* 243 F.2d 389 (8th Cir. 1957). Here, no prosecution of plaintiffs was ever commenced. ¶¶115-16, Ex. H. In addition, malicious prosecution on the basis of a criminal prosecution requires facts showing actual malice, i.e., instigation of the prosecution for a purpose other than bringing the offender to

18

justice. *Copeland v. Wicks,* 468 S.W.3d 886 (Mo.banc 2015). Plaintiffs do not plausibly allege facts showing malice on the part of defendant supervisors.

The claim of infliction of emotional distress relies on the identical conduct alleged in the battery claim. Such repackaged claims of assault or battery in the guise of infliction of emotional distress are not permissible. *State ex rel. Halsey v. Phillips,* 576 S.W.3d 177 (Mo.banc 2019). It is not a matter of election or alternative pleading: a claim for infliction of emotional distress will not lie when the conduct is assault or battery or another traditional tort.

Conversion is inapplicable to the defendant supervisors, as the amended complaint plausibly alleges no facts showing that any of them actually seized anything from any plaintiff. In addition, except for plaintiff Harris, the amended complaint alleges no actual deprivation of property of any plaintiff by anyone. See *Aldridge v. Francis,* 503 S.W.3d 314 (Mo.App.E.D. 2016); *Carter v. White,* 241 S.W.3d 357 (Mo.App.S.D. 2007); *Grothe v. Helterbrand,* 946 S.W.2d 301 (Mo.App.S.D. 1997).

Finally, defendant supervisors are also entitled to official immunity regarding all of plaintiffs' state law claims, including conspiracy. Regardless of immunity, however, the conspiracy claim is insufficient on its face to state a claim. Again, there are no plausible allegations of any agreement by these defendants to engage in any illegal conduct. of anyone's property. Further, Missouri applies the intracorporate conspiracy doctrine: a corporation and its agents or employees cannot conspire. See *John Deere Co. v. Short,* 378 S.W.2d 496 (Mo. 1964); *Hedrick v. Jay Wolfe Imports I, LLC,* 404 S.W.3d 454 (Mo.App.W.D. 2013).

## Conclusion

19

For the foregoing reasons, the amended class action complaint against defendant supervisors must be dismissed.

Respectfully submitted,
JULIAN L. BUSH
CITY COUNSELOR
/s/ Robert H. Dierker
Robert H. Dierker 23671(MO)
Associate City Counselor
dierkerr@stlouis-mo.gov
Brandon Laird 65564(MO)
Associate City Counselor
Abby Duncan 67766(MO)
Assistant City Counselor
Megan Bruyns 69987(MO)
Assistant City Counselor
Amy Raimondo 71291(MO)
Assistant City Counselor
1200 Market St.
City Hall, Rm 314
St. Louis, MO 63103
314-622-3361
Fax 314-622-4956

ATTORNEYS FOR DEFENDANTS
