IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALICIA STREET, et al., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 4:19-CV-02590-CDP |
| LT. COL. LAWRENCE O'TOOLE, et al., | ) ) ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION MOTION TO DISMISS DEFENDANTS O'TOOLE, DEEKEN AND CITY OF ST. LOUIS**

Defendants claim that Plaintiffs have failed to state numerous claims against Defendants' O'Toole, Deeken, and the City, focusing primarily on a conspiracy claim.[1] The only claims pleaded against Defendant City are Count VI for *Monell* liability under 42 U.S.C. § 1983, the state law claims (Counts VII-XIII) under a theory that the City waived sovereign immunity and is thus vicariously liable, and Count XVI for Procedural Due Process. The only claim against Defendants O'Toole and Deeken is Count XVII for vicarious liability under the Charter of the City of St. Louis.

**I.      Plaintiffs have pleaded a *Monell* claim against the City.**

A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an "action pursuant to official municipal policy" or misconduct so pervasive among non-policymaking employees of the municipality "as to constitute

---

[1] A scrivener's error may have contributed to this confusion. Counts IV and Count XIV are brought against all "Defendant Officers." In footnote 1, "Defendant Officers" are incorrectly defined as being "those officers identified in Paragraphs 6, 8-10." That should have read "those officers identified in Paragraphs 9-11." As properly written, "Defendant Officers" excludes Lt. Col. O'Toole. Plaintiffs apologize for the error.

1

a 'custom or usage' with the force of law." *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 691 (1978). A municipality has "custom liability" under *Monell* when the plaintiff establishes:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) The plaintiff['s] injury by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson Cty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (citations omitted).

The Eighth Circuit has recognized, however, that prior to discovery, a plaintiff "may not be privy to the facts necessary to accurately describe or identify" the policies or customs which caused the deprivation of their constitutional right. *Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d 842, 867 (D. Minn. 2015) (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)). Thus, the Court has held a plaintiff is not required to identify the full scope of an alleged custom or policy to survive a motion to dismiss. *Id.* A plaintiff need only include "allegations, reference or language from which one could *begin to draw* an inference that the conduct complained of resulted from an unconstitutional policy or custom." *Teague v. St. Charles Cty.*, 708 F. Supp. 2d 935, 940 (E.D. Mo. 2010) (citing *Crumpley–Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (emphasis added).

Further, a municipality is liable under *Monell* for failure to train its employees when its failure evidences a deliberate indifference to its residents' constitutional rights, and the training deficiencies caused the deprivation of the plaintiff's constitutional rights. *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citing *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)). Similarly, a municipality is liable under *Monell* for failure to supervise its employees when

2

its failure evidences a deliberate indifference to or tacit authorization of violations of residents' rights, and the plaintiff's constitutional rights are violated as a result. *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998) (citing *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994)).

Courts in this jurisdiction have denied the City's motions to dismiss *Monell* claims in numerous cases based out of the same event. *See Alston v. City of St. Louis*, No. 4:18-CV-01569, (E.D. Mo. July 3, 2019), Doc. No. 53 at 6-7 (citing *Laird v. City of Saint Louis, Missouri*, 4:18-cv-01567, 2019 WL 2647273 at *6 (E.D. Mo. June 27, 2019)); *see also Rose v. City of St. Louis, Missouri,* 4:18-cv-1568 RLW, 2019 WL 4602829, at *10-11 (E.D. Mo. Sept. 23, 2019).

While Plaintiffs will likely have more specific facts after discovery, the facts in the Complaint state a plausible claim for relief under *Monell*. To begin, the Complaint alleges Defendant City of St. Louis (hereinafter "the City") has a long history of responding with excessive force to protesters who are invoking their First Amendment rights when protesting the actions of the SLMPD. Specifically, Plaintiffs allege that at least as early as 2014 the City was involved in a minimum of three incidents where SLMPD indiscriminately used chemical agents against protesters without warning, without giving individuals an opportunity to comply with any instructions, without mitigating the impact of the use of chemical agents, and without ensuring a safe means of egress for people attempting to comply with SLMPD instructions. (ECF No. 13, ¶¶ 34-36).

The above actions by the City led a federal judge in the Eastern District of Missouri to enter a temporary restraining order—almost three years *before* the assault on Plaintiffs— preventing the City from enforcing any rule, policy, or practice that grants law enforcement officials the authority or discretion to utilize "chemical agents" "for the purpose of dispersing groups of individuals who are engaged in peaceful, non-criminal activity." (ECF No. 13, ¶ 38;

3

ECF No. 13, Exhibit B, Temporary Restraining Order in *Templeton v. Dotson*, No. 4:14-cv-02019, at *3 (E.D. Mo. Dec. 11, 2014)).

Plaintiffs' Complaint also refers to and includes the subsequent settlement agreement entered into by the City relating to use of force on protesters as an exhibit. (ECF No. 13, ¶ 39). In that settlement agreement, the City agreed to remedy the violations outlined in the temporary restraining order. (ECF No. 13, Exhibit C, Settlement Agreement in *Templeton v. Dotson*, No. 4:14-cv-02019, at *1-2 (E.D. Mo. Mar. 25, 2015). The City agreed to not enforce any rule, policy, or practice that grants law enforcement officials the authority or discretion to use chemical agents for the purpose of dispersing groups of individuals engaged in non-criminal activities or "for the purpose of frightening them or punishing them for exercising their constitutional rights." (ECF No. 13, ¶ 39; ECF No. 13, Exhibit C at 1-2).

Further, the Complaint alleges that, less than two months after entering into the consent decree, SLMPD began to violate its terms by indiscriminately using chemical agents against peaceful, non-criminal protesters without warning. (ECF No. 13, ¶¶ 40-42). This statement is supported in the Complaint by transcript testimony from *Ahmad v. St. Louis*, No. 4:17-cv-02455, at 69 (E.D. Mo. Oct. 18, 2017). (ECF No. 13, Exhibit E at 82, 88, 103). The *Ahmad* case arose out of police misconduct from the same week of protests in which SLMPD officers assaulted Plaintiffs. This Court concluded that the *Ahmad* plaintiffs were likely to prevail on their claim that the City "has a custom or policy of using chemical agents without warning on citizens engaged in expressive activity that is critical of police or who are recording police in retaliation for the exercise of their first amendment rights." (ECF No. 13, ¶ 127(g); ECF No. 13, Exhibit I, Memorandum and Order of Preliminary Injunction, *Ahmad v. St. Louis*, No. 4:17-cv-02455 (E.D. Mo. Nov. 15, 2017). The activity that led to this Court's conclusion that the City has a custom of unconstitutional

4

misconduct in *Ahmad* is the same activity Plaintiffs allege happened to them on September 17, 2017. (ECF No. 13, ¶¶ 129-275).

These facts from the temporary restraining order, settlement agreement, and preliminary injunction provide sufficient evidence to comply with pleading requirements. The facts contained in Plaintiffs' Complaint show the City has a policy or practice of using excessive force, chemical agents, and unconstitutional seizures against non-violent citizens exercising their First Amendment Rights. Further, given that SLMPD continued to violate citizens' constitutional rights even after the City was subject to a temporary restraining order – not to mention its voluntary entry into a settlement agreement – it is reasonable for the Court to infer that the City was aware of the need to train, supervise, and discipline its officers regarding these practices. That SLMPD continued to participate in the same unfettered, unconstitutional activity, despite the court order and settlement agreement, is evidence of both the City's deliberate indifference to these constitutional violations and its failure to provide adequate training and supervision on these issues. As a direct result of the City's failures, Defendant Officers violated Plaintiffs' constitutional rights.

Plaintiffs acknowledge that this Court previously rejected a failure to train claim in *Laney v. City of St. Louis*, No. 4:18-cv-01575-CDP. *Laney,* ECF No. 34 at 13-14. However, the Court did so because it found that the plaintiff in that case had not made any factual allegations concerning a failure to train or supervise. In this case, Plaintiffs pleaded that Defendant City had notice that its use of force training and officer supervision were inadequate and likely to result in constitutional violations, based on multiple incidents of excessive force against protestors in October 2014, November 2014, July 2015, August 2015, and September 2017. (ECF No. 13 ¶ 326). Moreover, Plaintiffs pleaded that after the *Templeton* settlement and the incidents that gave

5

rise to it, Defendant City did not initiate or require comprehensive retraining of its officers, despite repeated, similar constitutional violations perpetrated by SLMPD officers after that settlement and before the incident at issue in this case. (ECF No. 13 ¶ 328). Thus, even though the City had a history of unconstitutional use of chemical munitions, resulting in the City entering into a consent agreement modifying the ways in which it used chemical munitions during protests, the City utterly failed to conduct any training of its officers to implement this agreement. The City cannot possibly implement a modification of its chemical munitions policy if it fails to train its officers about the policy. These officers were thus using the same unconstitutional tactics as they had in previous protests, leading directly to the predictable, unconstitutional use of chemical munitions against Plaintiffs in this incident.

In *Laney*, this Court applied Eighth Circuit precedent and found that the plaintiff sufficiently pleaded a *Monell* custom and policy claim. *Laney*, ECF No. 34 at 10-12. Plaintiffs in this case assert similar custom and policy facts as the plaintiff in *Laney*. As this Court held in *Laney*, Plaintiffs "need not identify the specific unconstitutional policy to survive the City's motion to dismiss." *Id.* at 12 (citing *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004)). They must "allege facts from which one 'could begin to draw an inference' that the conduct complained of resulted from the existence of an unconstitutional policy or custom." *Id.* (citing *Doe ex rel. Doe v. School Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)).

Defendants rely on a recent district court decision in *Mahdi v. Bush*, No. 4:19-CV-00183-SRC, 2019 WL 6020907, at *4 (E.D. Mo. Nov. 14, 2019). In *Mahdi*, the court adopted a Fifth Circuit case and dismissed a *Monell* claim stemming from an unlawful arrest and held that the plaintiff had to establish a custom and policy by showing that the number of police misconduct

6

claims was statistically significant enough to constitute a custom. Plaintiffs respectfully suggest that Fifth Circuit case relied upon in *Mahdi* is not the law in this Circuit and that the Court should follow the Eighth Circuit precedent it previously cited in *Laney*. Plaintiffs also note that, unlike in *Mahdi*, they have pointed to specific allegations of police misconduct related to excessive force, generally, and protests about police misconduct, specifically.[2]

Even if *Mahdi* is deemed correct regarding excessive force claims, generally, Plaintiffs have pleaded sufficient facts regarding a custom and practice of excessive force against protestors. Plaintiffs have alleged that the SLMPD specifically uses excessive force and unconstitutional actions when the protests are aimed at the actions of the SLMPD. In fact, Plaintiffs pleaded 10 specific times in 15-day period where SLMPD police officers deployed chemical agents, *without warning,* against individuals observing, recording, or participating in protest activity related to the *Stockley* verdict. (ECF No. 13 at ¶ 27). Plaintiffs also pleaded facts concerning five other occasions where SLMPD officers deployed chemical agents and/or used excessive force, *without warning,* against individuals observing, recording, or participating in protest activity. *Id.* at ¶¶ 34, 35, 39-41. The world of protests against the SLMPD for police brutality is finite. The examples Plaintiffs pleaded meet the Eighth Circuit standard and the anomalous *Mahdi* standard.

Thus, the facts alleged in the Complaint are sufficient to allege the existence of a continuing, widespread, and persistent pattern of unconstitutional misconduct by the City's employees. Plaintiffs therefore pleaded sufficient facts to state a plausible claim for *Monell* liability against the City, and the motion to dismiss Count VI should be denied.

---

[2] Plaintiffs also note that the *Mahdi* court based its finding on an assumption that police misconduct information is available to the general public. Plaintiffs note that numerous police records, including internal affairs files and civilian complaints, are not subject to the Missouri Sunshine Law and are only available in discovery. *See* § 610.100, RSMo.

## II. Plaintiffs pleaded a procedural due process claim against the City.

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *Ahmad v. City of St. Louis*, No. 4:17-cv-2455-CDP, ECF No. 57 at 32-33 (citing *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012)). "A statute or ordinance violates the Due Process Clause if it fails to give fair warning that the allegedly violative conduct was prohibited." *Ahmad*, ECF No. 57 at 33 (citing *Stahl v. City of St. Louis, Mo.*, 687 F.3d 1038, 1040 (2012) (internal quotation marks and citation omitted)). "Such a law offends due process because it 'may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits.'" *Id.* "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.*

As the Court emphasized in *Ahmad*, "[t]he Due Process Clause's proscription against vague regulations is stronger when the regulation in question implicates the First Amendment."

> "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Fox Television Stations, Inc.*, 567 U.S. at 253-54. That is so because "[s]peech is an activity particularly susceptible to being chilled, and regulations that do not provide citizens with fair notice of what constitutes a violation disproportionately hurt those who espouse unpopular or controversial beliefs." *Stahl*, 687 F.3d at 1041. "Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109 (internal quotation marks and citations omitted). An ordinance which accords to police "the full discretion . . . to determine" whether a violation has occurred "entrusts lawmaking to the moment-to-moment judgment of the policeman on his beat, . . . furnishes a convenient tool for harsh and discriminatory enforcement by prosecuting officials against particular groups deemed to merit their displeasure, . . . and confers on police a virtually unrestrained power to arrest and charge persons with a violation." *Kolender*, 461 U.S. at 357-58.

*Ahmad*, ECF No. 57 at 33-34.

8

In *Ahmad*, the Court found that the plaintiffs were "likely to prevail on their claim that defendant's custom or policy is to permit any officer to declare an unlawful assembly in the absence of the force or violence requirement of St. Louis City Ordinance 17.16.275 and Mo. Rev. Stat. § 574.060, in violation of plaintiffs' First and Fourth Amendment rights." *Id.*, ECF No. 57 at 36. Similarly, in the present case, Plaintiffs seek an order declaring that these ordinances are vague on their face and as applied. Plaintiffs have sufficiently stated a claim under Count XVI.

### III. Plaintiffs have pleaded state law claims against the City.

As Defendants concede, this Court has already addressed the sovereign immunity argument in *Laney* and found that the facts alleged by Plaintiffs in this case, which are similar to those in *Laney*, were sufficient to state a claim. *Laney*, ECF No. 34 at 16-17 (citing *Fortenberry v. City of St. Louis*, No. 4:18-CV-01937-JCH, 2019 WL 1242671, at *7 (E.D. Mo. Mar. 18, 2019) and *Aldridge v. City of St. Louis, Mo.*, No. 4:18-CV-1677 CAS, 2019 WL 1695982, at *4 (E.D. Mo. Apr. 17, 2019)). In the instant case, Defendants do not argue that Plaintiffs have not sufficiently pleaded the elements of Plaintiffs' state law claims. Defendants argue that sovereign immunity bars Counts VII-XIII against the City.[3] However as Plaintiffs correctly pleaded, the City waived sovereign immunity for itself and, thereby, waived sovereign immunity for Defendant Supervisors. *See Montin v. Moore*, 846 F.3d 289, 292 (8th Cir. 2017) (citing *Alden v. Maine*, 527 U.S. 706, 712–13 (1999)).

Municipalities waive sovereign immunity by purchasing liability insurance that covers the plaintiff's claim. *State v. Rel. Bd. of Trustees of Cty. of Kansas Cty. Mem'l Hosp. v. Russell*, 843 S.W.2d 353, 360 (Mo. 1992). At the pleading stage, all a plaintiff must do is plead specific facts

---

[3] Defendants O'Toole and Deeken also claim that Plaintiffs failed to state a claim against them for these counts. As with the conspiracy counts, Plaintiffs did not bring those counts against Defendants O'Toole and Deeken.

9

demonstrating his claim falls within an exception to sovereign immunity. *See Parish v. Novus Equities Co.*, 231 S.W.3d 236, 242 (Mo. Ct. App. 2007) (citing *Hummel v. St. Charles Cty. R–3 Sch. Dist.*, 114 S.W.3d 282, 284 (Mo. App. 2003)).

Here, the Complaint alleges the City obtains insurance from, or is self-insured through, the Public Facilities Protection Corporation ("PFPC"), a not for profit corporation into which the City pays funds yearly. (ECF No. 38, ¶ 203-204). These statements alone, which must be accepted as true, are sufficient to state a plausible claim that the City has waived sovereign immunity. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Such an inference is supported by the City's own documentation. The City website's accounting page previously explicitly stated the PFPC is the City's self-insurance program. Indeed, City Counselor Julian Bush stated in a January 31, 2018 letter that the PFPC can be "properly thought to be self-insurance." *See* ECF Doc. 65, Exhibits A-D in *Faulk v. City of St. Louis*, No. 4:18-cv-0308-JCH (E.D. Mo. February 27, 2019).[4] Plaintiffs pleaded more than sufficient facts showing that the City obtains insurance from, or is self-insured through, the PFPC.[5]

Further, it is likely that more evidence regarding the City's insurance plan will be obtained during discovery. While Defendants are correct that the burden is on Plaintiffs to ultimately prove the existence of an insurance plan, the case law relied on by Defendants only applied that requirement at the *summary judgment* stage, after discovery was complete. *St. John's Clinic, Inc.*

---

[4] Further, as the City is well aware, the Articles of Incorporation for the PFPC identify the purpose of the corporation as being "to implement a program which will assure the continuing provision of municipal and governmental services by various public facilities and functions in the St. Louis metropolitan area which facilities are placed in jeopardy by escalating costs and exposures to exceed fiscal abilities." *See* ECF Doc. 65, Exhibits A, p. 1, in *Faulk v. City of St. Louis*, No. 4:18-cv-0308-JCH (E.D. Mo. February 27, 2019). This statement indicates the intent behind incorporating the PFPC was to create an insurance plan or self-insurance plan to cover the costs of judgments issued against the City of St. Louis.

*v. Pulaski Cty. Ambulance Dist.,* 422 S.W.3d 469, 471 (Mo. Ct. App. 2014); *Topps v. City of Country Club Hills,* 272 S.W.3d 409, 412 (Mo. Ct. App. 2008).

Thus, the motion to dismiss Counts V-XI and XIII should be denied, as Plaintiffs have adequately pleaded that the City waived sovereign immunity.

**IV.     Plaintiffs pleaded a vicarious liability claim against Defendants' Deeken and O'Toole.**

As Defendants acknowledge, Article VIII, Section 5 of the Charter of the City of St. Louis states that "[e]ach head of a department, office or division shall be responsible for the acts or omissions of officers and employees appointed by him, and may require bonds or other securities from them to secure himself." Plaintiffs recognize that this is a novel argument and that no court has addressed it. Defendants claim that the absence of a reported case weighs against Plaintiffs' interpretation. However, Defendants ignore that the more likely reason no such case law exists is that the City of St. Louis only recently wrested control of the St. Louis Metropolitan Police Department from the State of Missouri, so this issue has not been litigated. However novel this argument may be, the fact remains that the City Charter imputes personal liability of City employees to the head of each department, office or division employing those people. On September 17, 2017, Defendant Deeken was the Public Safety Director and Defendant O'Toole was the acting Chief of Police. Defendant Officers worked for Defendants Deeken and O'Toole during the events that give rise to the Complaint. Accordingly, under the City Charter, Defendants Deeken and O'Toole are personally liable for the acts of their employees.

While the courts have never had occasion to address this issue, the City Counselor issued an opinion that confirmed that this Charter provision means that department heads are "personally responsible for the acts or omissions of the subordinates appointed by them." *See* Opinion No. 8753, attached as Exhibit A. Defendants split hairs, claiming that appointment is distinguishable

11

from employment. Under Defendants logic, the Charter provision would render department heads liable for the actions of persons they personally appointed but not liable for the actions that a predecessor appointed. That is not a sensible interpretation, and Defendants cite to no authority to support this claim. The more logical interpretation is that the Charter makes department heads liable for the actions of their employees.

Defendants claim that cities are not permitted to create causes of action. *Yellow Freight Sys., Inc. v. Mayor's Comm'n on Human Rights of City of Springfield*, 791 S.W.2d 382, 386 (Mo. banc 1990). In that case, the court considered whether a city could create its own municipal human rights commission to determine violations of its human rights ordinance. The court found that such an action was only vested in the power of the General Assembly. The City Charter provision, however, does not involve creating an entity to enforce its own ordinances in contravention of state law. Further, Defendants do not point to any authority barring it from promulgating such a Charter provision.

Plaintiffs recognize the holding that public officers are not responsible for acts of subordinate officials under state law. *See Davis-Bey v. Missouri Dep't of Correction*, 944 S.W.2d 294, 298 (Mo. App. 1997). Yet, that case does not prohibit a city from creating vicarious liability for municipal employees, as the City Charter has done. The drafters of the City Charter chose to include this provision. It has not been repealed, it is not barred by state or federal law, and no higher government entity has usurped this authority.

Finally, Defendants claim that application of this provision amounts to an impermissible waiver of sovereign immunity. However, the Charter does not impose liability on the City, only on the individual employees. The Charter provision imputes the individual liability of the individual employees onto the department head.

To the extent this implicates sovereign immunity, a municipality can specifically waive its immunity. *Topps v. City of Country Club Hills*, 272 S.W.3d 409, 414 (Mo. App. 2008). Plaintiffs note that in 1978, the Missouri General Assembly passed a provision creating certain statutory exceptions to common law sovereign immunity. § 537.600, RSMo. According to that statute, "[s]uch sovereign or governmental tort immunity *as existed at common law* in this state prior to September 12, 1977, *except to the extent waived*, abrogated or modified by statutes *in effect prior to that date*, shall remain in full force and effect." *Id.* (emphasis added). The City Charter was passed in 1914, well before the enactment of this statute. Thus, if the City Charter constitutes a waiver of sovereign immunity, such waiver existed prior to the enactment of § 537.600, RSMo.

Accordingly, Plaintiffs respectfully request the Court to deny Defendants' motion to dismiss Count XVII.

WHEREFORE, for the reasons stated above, Plaintiffs respectfully request the Court to deny Defendants' Motion to Dismiss in its entirety.

Date: May 13, 2020                      Respectfully submitted,

KHAZAELI WYRSCH LLC

/s/ James R. Wyrsch
James R. Wyrsch, 53197(MO)
Javad M. Khazaeli, 53735(MO)
Kiara N. Drake, 67129(MO)
911 Washington Avenue, Suite 211
St. Louis, MO 63101
(314) 288-0777
javad.khazaeli@kwlawstl.com
james.wyrsch@kwlawstl.com
kiara.drake@kwlawstl.com

and

CAMPBELL LAW LLC

Alicia Campbell, 59586(MO)
3407 Jefferson Avenue
St. Louis, MO 63118
P: 888.588.5043
F: 314.588.9188
alicia@campbelllawllc.com

Attorneys for Plaintiffs