IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALICIA STREET, et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 4:19-CV-02590-CDP |
| ) | |
| LT. COL. LAWRENCE O'TOOLE, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS LEYSHOCK AND OTHER SUPERVISORY OFFICERS**

Lt. Col. Gerald Leyshock was the incident commander on the night of September 17, 2017. He was in charge of the entire operation. Underneath him, numerous lieutenants and sergeants each had command of various groups of officers. At 11:30 PM, people quietly milled about at the intersection of Washington and Tucker. None of these people were engaged in any criminal behavior, much less violence. Despite this, Leyshock and the other supervisors ordered the mass arrest of everyone in that vicinity. Compliant persons were pepper sprayed indiscriminately and many were beaten. The only purpose for these arrests was to terrorize these 120 citizens because some of the arrested persons had the gall to protest the police and stamp out any future protests before they started.

In their Motion to Dismiss, Defendant Leyshock and the other Defendants identified in Paragraph 9 of the First Amended Complaint have set forth a self-serving distortion of Plaintiffs' factual allegations. Their recitation of the facts ignores the allegations in Plaintiffs' First Amended Complaint, which must be accepted as true, and instead focuses on the counternarrative they intend to put forward. Defendants are certainly entitled to put forward their view of the evidence in a motion for summary judgment, but, in this Motion, Defendants are required to establish that the

Court cannot grant Plaintiffs relief on the facts pleaded in the First Amended Complaint. Because Plaintiffs properly pleaded their claims, the Motion should be denied.

## FACTS

Plaintiffs incorporate by reference the factual recitation in their Opposition to Defendants' Motion to Dismiss Defendants Bain, et al. ("Line Officers") at 1-4.

## ARGUMENT

**I.  Plaintiffs Pleaded Sufficient Facts to State Plausible Claims for § 1983 Conspiracy.**

Plaintiffs sufficiently pleaded facts that, accepted as true, state claims against the Supervisory Officers for their personal violations of Plaintiffs' First, Fourth, Fifth, and Fourteenth Amendment rights, as well as claims for conspiracy to violate those rights, that are "plausible on [their] face." *Iqbal*, 556 U.S. at 678. Specifically, the Complaint alleges that Defendant Leyshock was the incident commander during the events of September 17, 2017 and approved the plan to restrict the movements of individuals who were attempting to leave the vicinity of Washington Avenue and Tucker Boulevard and to arrest everyone present, regardless of their actions, which included Plaintiffs. Doc. No. 13, ¶¶ 9, 46, 55. Defendant Sachs, who was in direct command and responsible for deploying tactical units, testified under oath that he and Defendant Leyshock decided to effectuate a mass arrest at Washington and Tucker, where Plaintiffs were located. *Id*. at ¶¶ 46, 55; Doc. No. 13-5 at 70. Defendant Sachs's own testimony states that he developed the plan to amass SLMPD officers in such a manner that citizens would be unable to exit and that Defendant Leyshock approved that plan. Doc. No. 13, ¶ 55.

Thus, Defendants Leyshock and Sachs were directly involved in planning and approving the illegal kettling, knowing that it would result in the violation of individuals' First Amendment rights and would likely result in unreasonable arrests without probable cause in violation of the Fourth Amendment. In addition, given that SLMPD had a long history of indiscriminately using

chemical agents against protesters without warning, without giving individuals an opportunity to comply with any instructions, without mitigating the impact of the use of chemical agents, without ensuring a safe means of egress for people attempting to comply with SLMPD instructions, and without complying with the terms of a federal consent decree the City of St. Louis had previously agreed to, Defendants Leyshock and Sachs should have been aware of a "substantial risk of serious harm" from their orders. Doc. No. 13, ¶¶ 35-38.

Further, the remaining Supervisory Officers were all physically present at the illegal kettling location and were responsible for implementing the conspiracy to illegally kettle and arrest peaceful protesters. Doc. No. 13, ¶ 9, 50, 52, 53, 57, 63-65, 67, 80, 92. The only way for the kettle to work was for all the Supervisory Officers to simultaneously execute Leyshock and Sach's plan and order the officers under their command to participate in the mass arrest. That is the very essence of a conspiracy.

All of the Supervisory Officers are experienced police officers. They all knew that no probable cause existed to arrest these peaceful citizens that night. Yet, they all decided *en masse* to arrest them. They all knew that there was no justification to use chemical munitions and to beat the citizens. Some of the Supervisory Officers, such as Sgt. Karnowski and Lt. Kiphart, actively and egregiously used chemical munitions on peaceful citizens. The other Supervisory Officers stood by and did nothing to stop the violence inflicted by the police onto these innocent civilians.

They all made the decision to participate in these unconstitutional arrests. They either actively engaged in the riotous behavior against innocent citizens, directed officer under their command to engage in riotous behavior, and/or stood by and did nothing as other officers violated the constitutional rights of the Plaintiffs. The Supervisory Officers are all liable for the damage SLMPD officers inflicted that night.

**II.     Defendant Supervisory Officers Are Not Entitled to Qualified Immunity Because the Intracorporate Conspiracy Doctrine Is Inapplicable to Plaintiffs' § 1983 Conspiracy Claims.**

Defendant Supervisory Officers are not entitled to qualified immunity on Plaintiffs' § 1983 conspiracy claims, because they violated Plaintiffs' constitutional rights to be free from unreasonable seizure, excessive force, and deliberate indifference to their medical needs, and those rights were clearly established in September 2017. A warrantless arrest is unreasonable and violates the Fourth Amendment if it is not supported by probable cause. *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (citing *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011)). Moreover, the right to be "'free from excessive force in the context of an arrest is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures.'" *Nance v. Sammis*, 586 F.3d 604, 611 (8th Cir. 2009) (quoting *Samuelson v. City of New Ulm*, 455 F.3d 871, 877 (8th Cir. 2006)). Additionally, an arrestee or pretrial detainee's right to medical treatment is clearly established. *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, (1976)), *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012) (citing *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 905 n. 3 (8th Cir.1999)).

Further, qualified immunity does not shield unconstitutional behavior simply because officers decide to violate citizens' rights as a group instead of violating citizens' rights individually. Defendant Supervisory Officers argue, "Plaintiffs have no basis in fact for believing that defendants supervisors were party to a conspiracy. They were doing a difficult job in extremely difficult circumstances." Doc. No. 28 at 6. This is patently absurd. The only way the mass arrest could work is if the Supervisory Officers simultaneously ordered the other officers to form four walls, to order the officers to refuse to allow any person to exit, and to then have officers move in and trap Plaintiffs allowing officer to use chemical munitions on, beat, and arrest Plaintiffs without

4

probable cause. The action of the mass arrest is by its very nature a conspiracy. Without each party agreeing to plan and take part in it, the mass arrest could not have happened, much like a square with three sides is not a square at all.

More importantly, the Eighth Circuit has made several rulings on police officers' liability for § 1983 conspiracy, establishing that a reasonable officer would know that he cannot conspire with his fellow officers to violate a plaintiff's rights. *See Small v. McCrystal*, 708 F.3d 997, 1010 (8th Cir. 2013) (denying officers qualified immunity for § 1983 conspiracy to arrest the plaintiff without probable cause and in retaliation for protected speech). *See also Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999) (upholding dismissal of the plaintiff's conspiracy claim on a motion for judgment as a matter of law because the plaintiff lacked sufficient evidence to prove the unconstitutional conduct giving rise to the claim).

In fact, the Eighth Circuit has specifically found SLMPD officers unentitled to qualified immunity for § 1983 conspiracy. *See S.L. ex rel. Lenderman v. St. Louis Metro. Police Dept. Bd. of Police Com'rs*, 725 F.3d 843, 854 (8th Cir. 2013) (upholding denial of a motion for summary judgment by several SLMPD officers upon its finding of sufficient evidence that the officers conspired to conceal violations of an arrestee's constitutional rights and, in doing so, violated the arrestee's clearly established rights). *See also Burbridge v. City of St. Louis, Missouri*, 4:17-CV-02482-SRC, 2019 WL 7020183, *10 (E.D. Mo. Dec. 20, 2019) (denying SLMPD officers' motion for summary judgment for § 1983 conspiracy upon its finding that the plaintiff, another victim of the instant kettling, produced sufficient evidence to submit the claim to a jury). The Eighth Circuit has held, "'The question of the existence of a conspiracy to deprive the plaintiffs of their constitutional rights should not be taken from the jury if there is a possibility the jury could infer from the circumstances a 'meeting of the minds' or understanding among the conspirators to

5

achieve the conspiracy's aims.'" *Small*, 708 F.3d at 1010 (8th Cir. 2013) (quoting *White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008); *Larson by Larson v. Miller*, 76 F.3d 1446, 1458 (8th Cir.1996)).

Moreover, Defendant Supervisory Officers offer no authority for the application of the intracorporate conspiracy doctrine to § 1983 conspiracy claims and solely rely on *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), a conspiracy case under 42 U.S.C. § 1985.[1] Defendant Supervisory Officers offer no authority to establish that § 1983 and § 1985 conspiracy claims must be analyzed the same way. Moreover, the rationale in *Ziglar* suggests that the intracorporate conspiracy doctrine is inapplicable to § 1983 conspiracy claims.

Instead of belaboring the court with repetitive arguments, Plaintiffs incorporate the discussion of the intracorporate conspiracy argument in their Opposition to Defendants' Motion to Dismiss Defendants Bain, et al. ("Line Officers") at 6-10. For these reasons, the Motion should be denied.

### III. Plaintiffs Stated Claims for Illegal, Retaliatory Arrest, Application of Excessive Force and Denial of Medical Care.

Defendant Supervisory Officers claim that the illegal retaliatory arrest, excessive force, and denial of medical care claims must be dismissed for failure to state a claim. Doc. No. 28 at 8-9. It is well established in the Eighth Circuit that supervisors are liable where they personally participated in a constitutional violation, or when they knew about unconstitutional conduct and facilitated, approved, condoned, or turned a blind eye to such conduct. *Wagner v. Jones*, 664 F.3d 259 (8th Cir. 2011) (citing *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 761 (8th Cir. 2003))

---

[1] Defendant Supervisory Officers also cite *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *Plumhoff v. Rickard*, 134 S.Ct. 2012 (2014), and *Hanson v. Best*, 915 F.3d 543 (8th Cir. 2019), which do not involve the intracorporate conspiracy doctrine.

6

(citations and internal quotes omitted); *see also Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (finding tacit authorization or failure to sufficiently supervise the offending actions of an employee sufficient for supervisor to be liable). Further, a supervisor can be found liable under § 1983 "for deliberate indifference if he is aware of 'a substantial risk of serious harm,' even if he is not aware that the harm has, in fact, occurred." *Kahle v. Leonard*, 477 F.3d 544, 551–52 (8th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842, (1994)).

Plaintiffs understand that under normal circumstances, liability under 42 U.S.C. § 1983 is personal, not vicarious. The police officers that night intentionally attempted to circumvent a finding of personal liability by wearing masks to conceal their identities and utterly failing to properly document what happened that night. Defendants compounded this problem by failing to conduct any viable investigation or inquiry to identify which officers laid hands on which Plaintiffs. The documentation and investigation of this event has been so astoundingly poor that, almost three years after the event, Defendants cannot even provide a comprehensive list of which officers were actually on duty at Washington and Tucker that night. Plaintiffs have described in detail the various atrocities inflicted upon them by the members of the SLMPD. Those same officers, through their attorneys, now put Plaintiffs through yet another indignity by mockingly complaining that each cannot identify which masked officer pepper sprayed them or pressed down on them with a boot. This is not a situation where a plaintiff is attempting to find liable a police chief sitting at his desk with no knowledge that one of his police officers was unlawfully beating a suspect. Each and every Supervisory Officer named was on the scene that night, actively participating in the arrests, pepper spraying, and beating of Plaintiffs. Whether they unleashed the pepper spray or used their own boots is irrelevant when the officers under their command did so at their behest and while executing their plan, as the supervisors watched with approval.

Each officer involved that night actively participated in each arrest. Each person was seized when they were boxed in on all sides of Washington and Tucker, and each Supervisory Officer that ordered their officers to create the kettle is thus liable for each unlawful arrest. Defendants Leyshock and Sachs are responsible for ordering the mass arrest. All of the other Defendant Supervisors were on the ground and instructed the officers under their command to either form the line or to effectuate those arrests.

Each officer actively participated in the use of excessive force and denial of medical care. While they formed the wall around the innocent civilians, some of the Supervisory Officers actively used force against the arrestees, including Defendant Karnowski, who pepper sprayed numerous people with their hands in the air and Defendant Rossomanno who directed which arrestees should be pepper sprayed by pointing at them immediately before other officers sprayed them without cause. Each Supervisory Officer stood and watched as innocent civilians were cuffed, pepper sprayed, and beaten. If they did not actually shoot the pepper spray or lay hands on the civilians, they acquiesced to the abuse by standing silently and doing nothing to stop it. For a final indignity, none of the Supervisory Officers ensured that any of the civilians received adequate medical care. They each had a duty to the persons arrested that night to ensure that those pepper sprayed or beaten were given basic medical care, and each of them failed to provide that care.

Defendants claim that the police had probable cause to arrest Plaintiffs. They base this on a distorted, one-sided view of the supposed facts on the ground. They claim that "the amended complaint shows that the following facts were known or had been reliably reported to them":

> a large crowd was milling about the intersection of Tucker and Washington; that crowd included persons wearing masks and goggles; that crowd included persons who had been involved in disorderly activity downtown in the past several hours; that crowd had disregarded repeated efforts to disperse; at least some members of that crowd had assaulted or threatened officers; and that similar crowds had resorted to violence on the two preceding nights.

Doc. No. 28 at 9.

Plaintiffs contest each and every one of these allegedly unsupported statements. Indeed, this Court reviewed and analyzed video taken by Jonathan Ziegler, one of the kettling arrestees, in the forty-five minutes up to and including the mass arrest and determined that the facts were very different from those Defendants now claim:

> Video footage of the intersection taken by Jonathan Ziegler around this time period and introduced as Plaintiffs' Exhibit 10 shows police continuing to block traffic with police cars and bike officers. It also shows some vehicular traffic moving through the intersection after the final dispersal order was given. A group of four to five individuals can be seen sitting on Tucker, and scattered individuals are, at times, walking or standing in the closed streets. This video does not show a large crowd congregating in the streets. The video shows some people shouting taunts at police officers. No violent activity by protesters can be observed on the video. Some people are wearing or carrying masks and/or goggles, but most are not. The scene appears calm and most people appear relaxed.

Doc. No. 13-9 at 10-11.

Defendants are free to offer their distorted and self-serving recitation of the supposed facts at the summary judgment stage, but they are not appropriate here. Plaintiffs sufficiently pleaded facts that, accepted as true, state claims against Defendant Supervisory Officers for their personal violations of Plaintiffs' First, Fourth, and Fourteenth Amendment rights, as they were present and either directing or observing the constitutional violations committed by the officers under their command. The Amended Complaint presents sufficient facts that Defendant Supervisory Officers knew about unconstitutional conduct and facilitated, approved, condoned, or turned a blind eye to such conduct. *Wagner*, 664 F.3d at 259. At the least, these facts create reasonable inferences in favor of Plaintiffs, such that these claims should not be dismissed at the pleadings stage.

**IV.      Defendants Are Not Entitled to Qualified Immunity for Illegal, Retaliatory Arrest.**

Instead of belaboring the court with repetitive arguments, Plaintiffs incorporate the discussion of qualified immunity in their Opposition to Defendants' Motion to Dismiss Defendants Bain, et al. ("Line Officers"). Doc. No. 13-18.

In the present case, Defendant Supervisory Officers identify no facts evidencing that they observed those arrested in the September 17, 2017 kettling acting as a unit. Taking the evidence in the light most favorable to Plaintiffs, the citizens arrested in the kettle did not act as a unit to violate the law. As Plaintiffs pleaded, the arrestees included "self-admitted protestors, residents who merely lived in the area, people visiting businesses in the area, reporters, documentarians, a homeless person, and an even an undercover SLMPD officer." Doc. No. 13 at ¶ 74. This disparate group of people was the farthest thing from a unit.

Defendant Supervisory Officers made dispersal orders several blocks away and no less than 45 minutes before the kettling, making it unreasonable to assume those arrested in the kettle were cognizant of any potentially unlawful acts. *Id*. *See White v. Jackson*, 865 F.3d 1064, 1075–76, 1079-80 (8th Cir. 2017). Unlike the arrestees in *Berini*, those arrested in the September 17, 2017 kettling, were not a unit throwing rocks or feces at police or engaging in any violence or disobedience. The instant arrestees were not chanting in unison. The instant arrestees were not part of an organized crowd. Many of the instant arrestees were simply residents or patrons of businesses on Washington Avenue who were completely uninvolved in the evenings' earlier events. Unlike the officers in *Berini*, Defendants arrested *everyone* near Washington and Tucker and made no attempt to whittle down the group of arrestees to the people they believed had engaged in unlawful conduct. *See Carr v. Dist. of Columbia*, 587 F.3d 401, 407 (D.C. Cir. 2009) (holding particularized probable cause requires officers to "have grounds to believe all arrested persons were a part of the

unit observed violating the law."). *See also Barham v. Ramsey*, 434 F.3d 565, 575 (D.C. Cir. 2006) (finding no evidence arrestees were acting as a unit when there was a significant time lag between the criminal acts and the arrests, civilians flowed freely in and out of the area, and the officers made no attempt to distinguish between the illegal actors and law-abiding individuals). More than two and a half years later, the City of St. Louis has not identified or charged a single person arrested in the kettling for any property destruction or violent acts occurring on September 17, 2017.

Without particularized probable cause to support Plaintiffs' arrests or a reasonable belief that citizens arrested in the kettling were acting as a unit observed violating the law, Defendant Supervisory Officers did not have probable cause to arrest Plaintiffs. Thereby, Defendant Supervisory Officers seized Plaintiffs without probable cause in violation of Plaintiffs' clearly established Fourth Amendment rights.

Defendant Supervisory Officers argue that, even if Defendants Leyshock and Sachs mistakenly believed they had probable cause, the mistake was reasonable because they believed that it was "important to control a chaotic and potentially combative scene and prevent escalation of disorder."[2] Doc. No. 28 at 13. But in the Court's decision to grant a preliminary injunction in another case concerning the September 17, 2017 kettling, *Ahmad v. City of St. Louis*, the Court reviewed and analyzed the aforementioned video taken by Jonathan Ziegler and determined that police were blocking traffic, small groups were scattered around the closed intersection, they were calm and relaxed, and there was no violence. Doc. No. 13-9 at 10-11. People were simply milling about in small groups at various areas in and around the intersection. The property damage

---

[2] Defendants cite *Kelsey v. Ernst*, 933 F.3d 975 (8th Cir. 2019) (en banc) and *Rudley v. Little Rock P.D.*, 935 F.3d 651 (8th Cir. 2019), without pincites, for the purported purpose of establishing Defendants Leyshock and Sachs's reasonable beliefs that they had probable cause to arrest everyone at Washington and Tucker. Doc. No. 28 at 13. However, those cases concern the reasonableness of force, not seizure. *Kelsey*, 933 F.3d 977; *Rudley*, 935 F.3d at 652.

11

occurred many hours before the mass arrest and at a different location, and Defendant Supervisory Officers cite no reason to believe those arrested were involved or the property damage would resume. Moreover, Defendant Supervisory Officers were present at the time of Plaintiffs' arrests and, therefore, could not simply rely on orders and "'assum[e] that proper procedures ... ha[d] already been followed.'" *Perry*, 858 F.3d at 1146 (quoting *Pauly*, 137 S.Ct. at 552).

V.     **Defendants Are Not Entitled to Qualified Immunity for Excessive Force.**

"Police officers undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a *lawful* seizure." *Pennycook*, 641 F.3d at 907 (citing *Graham v. Connor,* 490 U.S. 386, 396 (1989)) (emphasis added). Courts "look to the specific circumstances, such as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Peterson*, 754 F.3d at 600. (quoting *Graham,* 490 U.S. at 396). "'[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public.'" *Small*, 708 F.3d at 1005 (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009)). "The dispositive question is whether the officer's conduct was objectively reasonable under the circumstances, as judged from the perspective of a reasonable officer on the scene at the time the force was applied." *Pennycook*, 641 F.3d at 907.

Although discovery has yet to begin and Plaintiffs have not yet been obliged to produce medical evidence to establish the severity of their injuries, Defendants have argued that Plaintiffs' injuries are *de minimis*. Doc. No. 28 at 16. Defendants further argue that they are entitled to qualified immunity "because, at the time of the mass arrest (and still) it was not clearly established that pepper spray, handcuffing, or isolated baton or other strikes were anything other than *de*

12

*minimis* uses of force, such defendant supervisors reasonably believed that such force did not amount to a constitutional violation." *Id.* at 14-15. This is incorrect.

First, since at least 2006, it has been the law in the Eighth Circuit that an officer violates the Fourth Amendment when he subdues and handcuffs a suspect he knows was not resisting or threatening officers. *Perry*, 858 F.3d at 1146 (8th Cir. 2017) (citing *Smith v. Kansas City Police Dep't*, 586 F.3d 576, 582 (8th Cir. 2009)). Second, in *Burnikel v. Fong*, the Eighth Circuit found that it was clearly established, by at least 2013, "'that when a person is subdued and restrained with handcuffs, a 'gratuitous and completely unnecessary act of violence' is unreasonable and violates the Fourth Amendment.'" 886 F.3d 706, 711–12 (8th Cir. 2018) quoting *Blazek v. City of Iowa City*, 761 F.3d 920, 925 (8th Cir. 2014)). *See White v. Jackson*, 865 F.3d 1064, 1080 (8th Cir. 2017) (where the Eighth Circuit held that kicking and punching a restrained suspect was objectively unreasonable).

Third, in *Pennycook*, decided in 2011, the Eighth Circuit held that *de minimis* injury *is* sufficient to establish the use of excessive force. 641 F.3d at 908-909. *See Perry*, 858 F.3d at 1146. Plaintiffs had a clearly established right at the time of Defendants' unconstitutional conduct. *See Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir. 1999) (where the Eighth Circuit found that a small cut above the plaintiff's eyelid and small scrapes on the plaintiff's knee and calf constituted excessive force). *See also Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995) (where the Eighth Circuit found that bruising and facial lacerations constituted excessive force).

While the Eighth Circuit does admittedly state that *de minimis* injury may not be sufficient to establish a claim for excessive force in *Robinson v. Hawkins*, the *Robinson* court allowed that there are circumstances where "a *de minimis* injury does not preclude a claim of excessive force." 937 F.3d 1128, 1136 (8th Cir. 2019). Moreover, *Robinson* was not decided until two years after

13

September 2017. In September 2017, Defendants knew or should have known that the force they used on Plaintiffs was unconstitutional, even if they believed that force caused *de minimis* injury. Supposing the Court did apply *Robinson* as broadly as Defendants allege it applies, the *Robinson* facts are not analogous to Plaintiffs' injuries. In *Robinson*, the officers shoved the plaintiff and handcuffed her. 937 F.3d at 1136. "The injuries Robinson sustained as a result of the force were fairly minor, including some pain and bleeding from the wrists as a result of being handcuffed and pain in her shoulders from being pushed." *Id.* Plaintiffs in this case allege much more intrusive injuries, including those resulting from Defendants' punitive pepper spray deployments.

Instead of belaboring the court with repetitive arguments, Plaintiffs incorporate the discussion of Defendants' use of excessive force in their Opposition to Defendants' Motion to Dismiss Defendants Bain, et al. ("Line Officers") at 13-18. For these reasons, the Motion should be denied.

**VI.   Defendants Have Stated State Law Claims Against the Supervisory Defendants.**

Defendants argue that Plaintiffs have not alleged personal participation by all Defendant Supervisory Officers in the state claims.[3] Doc. No. 28 at 17-19. This is incorrect, as the First Amended Complaint does so allege, and, at this stage of the proceeding, the pleading must be accepted as true. The first footnote of the First Amended Complaint provides that Defendant Supervisory Officers, the officers identified in Paragraph 9, are part of the larger group of Defendant Officers. Thus, Defendant Supervisory Officers are alleged to have personally

---

[3]   Defendant Supervisory Officers also allege that Plaintiffs cannot bring claims for both battery and infliction of emotional distress. Doc. No. 28 at 19. However, that rule applies to claims for *intentional* infliction of emotional distress, not *negligent* infliction of emotional distress. *See K.G. v. R.T.R.*, 918 S.W.2d 795, 800 (Mo. banc 1996) ("While recovery for emotional distress caused by battery may be allowable as an element of damages in a battery action, there is no independent action for intentional infliction of emotional distress where the existence of the claim is dependent upon a battery."). Plaintiffs have no intentional infliction of emotional distress claims.

14

participated in the acts and omissions giving rise to the state law claims against them. *See e.g.*, Doc. No. 13 ¶¶ 67, 84, 85, 89, 93, 336, 345, 354.

On September 17, 2017, SLMPD officers took intentional steps to thwart findings of personal liability by concealing their identities and circumventing procedures to document their actions. To compound this problem, Defendants chose not to investigate which officers laid hands on each of the Plaintiffs. Defendant Supervisory Officers were on the scene that night. Whether they unleashed the pepper spray or used their own boots is irrelevant, because they watched their subordinates abuse Plaintiffs in execution of a malicious plan to terrorize 120 law-abiding citizens. As punishment for protected activity deemed critical of the SLMPD, Defendant Supervisory Officers and their subordinates arrested Plaintiffs without probable cause and then charged each of them with failure to disperse.[4] The First Amended Complaint describes Defendant Supervisory Officers' tortious conduct in detail. The Motion should be denied.

Next, Defendant Supervisory Officers argue that they cannot be liable for state law conspiracy because the claims are barred by the intracorporate conspiracy doctrine. *Id.* However, the intracorporate conspiracy doctrine does not bar Plaintiffs' state law conspiracy claims because the general rule does not apply to Plaintiffs' claims. Finally, Defendant Supervisory Officers argue that they are entitled to official immunity (Doc. No. 28 at 19), but Defendant Supervisory Officers' malice or bad faith, as alleged, disentitles them to official immunity. The Motion should be denied.

---

[4] Defendant Supervisory Officers cite *Duvall v. Lawrence*, 86 S.W.3d 74 (Mo. Ct. App. 2002), arguing that they are not liable for abuse of process because they did not "act outside the usual course" in initiating criminal charges against Plaintiffs. Defendant Supervisory Officers ignore that *Duvall* provides that "the test employed is whether the process has been used to accomplish some unlawful end . . . '"it is where the suit is brought for a collateral purpose that there is abuse of process."' 86 S.W.3d at 85 (citing R. *Rowland & Co., Inc. v. Smith*, 698 S.W.2d 48, 52 (Mo.App.1985)). As alleged, Defendant Supervisory Officers abused process because they unlawfully arrested Plaintiffs, initiating criminal charges against Plaintiffs for terroristic purposes.

### A. Plaintiffs' Missouri Civil Conspiracy Claims Are Not Barred by the Intracorporate Conspiracy Doctrine.

In Missouri, as a general rule, "a principal cannot conspire with one of its own agents." *Wiles v. Capitol Indem. Corp.*, 75 F. Supp. 2d 1003, 1005 (E.D. Mo. 1999) (citing *Metts v. Clark Oil and Refining Corp.*, 618 S.W.2d 698, 702 (Mo.App.1981)). "'An exception to this general rule exists when an employee has an independent personal stake in achieving the object of the conspiracy.'" *Secure Energy, Inc. v. Coal Synthetics*, 4:08CV01719 JCH, 2009 WL 10694916, at *7 (E.D. Mo. June 8, 2009) (quoting *Metts v. Clark Oil & Refining Corp.*, 618 S.W.2d 698, 702 (Mo. App. E.D. 1981)). Citing *John Deere Co. v. Short*, 378 S.W.2d 496 (Mo. 1964), Defendant Supervisory Officers argue that Missouri follows the intracorporate conspiracy doctrine, (Doc. No. 28 at 19), but the doctrine is not applicable to the facts of the present case.[5] In *John Deere*, the court noted that the counter-plaintiff only sued John Deere Co., itself, for conspiracy, *by and through its agents*, and held that John Deere Co. could not conspire with itself. 378 S.W.2d at 501.

In the present case, the exception to the general rule allows Plaintiffs to sue the City of St. Louis and Defendant Supervisory Officers for conspiracy because Defendant Supervisory Officers had independent, personal stakes in achieving the goal of the conspiracy: terrorizing and punishing Plaintiffs. Doc. No. 13 ¶¶ 30, 31, 68, 90, 95, 96, 98. *See US Polymers-Accurez, LLC v. Kane Int'l Corp.*, 4:17-CV-2371 RLW, 2018 WL 4491168, at *6 (E.D. Mo. Sept. 19, 2018). *See also Secure Energy, Inc. v. Coal Synthetics*, 4:08CV01719 JCH, 2009 WL 10694916, at *7 (E.D. Mo. June 8, 2009). Alternatively, the general rule is inapplicable to Defendant Supervisory Officers' liability in Plaintiffs' state conspiracy claims because Plaintiffs sued Defendant Supervisory Officers in

---

[5]  Defendant Supervisory Officers also cite *Hedrick v. Jay Wolfe Imports I, LLC*, which involved an anti-trust claim, not a civil conspiracy claim. 404 S.W.3d 454, 460 (Mo. App. W.D. 2013).

their individual capacities, not as agents of the City of St. Louis. Doc. No. 13 ¶ 10. Defendant Supervisory Officers conspired with their fellow officers to violate Plaintiffs' rights; the general rule does not prohibit claims for conspiracy among agents, for which liability is not imputed to the principal.

### B. Defendant Supervisory Officers Are Not Entitled to Official Immunity for Plaintiffs' State Law Claims.

Officers may be entitled to official immunity for claims related to discretionary, rather than ministerial acts, performed within the scope of their authority. *Southers v. City of Farmington, Mo.*, 263 S.W.3d 603, 610 (Mo. banc 2008); *Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002). An act that requires an officer to exercise reason and judgment to determine a course of action is discretionary. *Green v. Denison*, 738 S.W.2d 861, 865 (Mo. banc 1987). Because Defendant Supervisory Officers unconstitutionally seized and abused Plaintiffs, they were not acting within the scope of their authority, which disentitles them to official immunity. However, assuming *arguendo* that Defendant Supervisory Officers were acting within the scope of their authority, official immunity "'does not apply to discretionary acts done in bad faith or with malice.'" *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) (quoting *Blue v. Harrah's North Kan. City, LLC*, 170 S.W.3d 466, 479 (Mo. App. 2005)). "'A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.'" *Davis*, 794 F.3d at 1013 (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. banc 1986)). "Bad faith" means "'conscious wrongdoing'" or "'breach of a known duty through some ulterior motive.'" *Id.*

Defendant Supervisory Officers acted in bad faith or with malice. An officer of reasonable intelligence would recognize that arresting and consciously or intentionally injuring law-abiding citizens for the exercise or perceived exercise of their First Amendment rights is a violation of her

17

duties as an officer. Defendant Supervisory Officers unconstitutionally seized Plaintiffs to deter criticism of the SLMPD. Doc. No. 13 ¶¶ 25, 29. Defendant Supervisory Officers indiscriminately pepper sprayed, dragged, and struck Plaintiffs, even though Plaintiffs were not resisting. *Id.* ¶¶ 84, 85, 89. Defendant Supervisory Officers banged their batons and shields in a menacing war march, they screamed homophobic and other derogatory remarks at Plaintiffs, they exchanged high-fives and chants in celebration of their misconduct, and then they took cheerful photographs to commemorate their success. *Id.* ¶¶ 68, 90, 95, 96. Defendant Supervisory Officers' egregious misconduct establishes that they are not entitled to official immunity for Plaintiffs' state conspiracy claims or any other state law claims. The Motion should be denied.

## CONCLUSION

For the reasons stated above, Plaintiffs pleaded facts upon which relief can be granted. Plaintiffs respectfully request the Court deny Defendant Supervisory Officers' Motion in full.

| | |
|---|---|
| Date: May 13, 2020 | Respectfully submitted, |

                                                        KHAZAELI WYRSCH LLC

                                                        <u>/s/ James R. Wyrsch</u>
James R. Wyrsch, 53197(MO)
Javad M. Khazaeli, 53735(MO)
Kiara N. Drake, 67129(MO)
911 Washington Avenue, Suite 211
St. Louis, MO 63101
(314) 288-0777
james.wyrsch@kwlawstl.com
javad.khazaeli@kwlawstl.com
kiara.drake@kwlawstl.com

and

CAMPBELL LAW LLC

Alicia Campbell, 59586(MO)
3407 Jefferson Avenue
St. Louis, MO 63118
P: 888.588.5043
F: 314.588.9188
alicia@campbelllawllc.com

Attorneys for Plaintiffs