**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| ALICIA STREET, et al., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Cause No. 4:19-CV-02590-CDP |
| | ) |
| LT. COL. LAWRENCE O'TOOLE, et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**MOTION TO DISMISS OF DEFENDANTS BAIN et al. ("LINE OFFICERS")**

In their Motion to Dismiss, Defendant James Bain and the other Defendants identified in Paragraph 10 of the First Amended Complaint have set forth a self-serving distortion of Plaintiffs' factual allegations. Their recitation of the facts ignores the allegations in Plaintiffs' First Amended Complaint, which must be accepted as true, and instead focuses on the counternarrative they intend to put forward. Defendants are certainly entitled to put forward their view of the evidence in a motion for summary judgment, but, in this Motion, Defendants are required to establish that the Court cannot grant Plaintiffs relief on the facts pleaded in the First Amended Complaint. Because Plaintiffs properly pleaded their claims, the Motion should be denied.

**FACTS**

Following the announcement of the *Stockley* verdict, public protests began at multiple locations in St. Louis and surrounding communities. Doc. No. 13 ¶ 21. In response to the protests and in contrast to their course when citizens are not protesting police misconduct, officers with the St. Louis Metropolitan Police Department (hereinafter "SLMPD") donned military-like tactical dress, helmets, batons, full-body riot shields, and pepper spray. *Id.* ¶ 24. 29. The police response was intended to terrorize citizens and deter First Amendment-protected messages the SLMPD

opposed. *Id.* ¶ 29. On September 17, 2017, the SLMPD arrested Plaintiffs, 123 people, to advance that goal. *Id.* ¶ 94.

As Defendants admit, protestors engaged in a "peaceful demonstration" at police headquarters on September 17, 2017. Doc. No. 24 at 3; Doc. No. 13 ¶¶ 140, 141, 143. Later that day, a handful of individuals broke windows and flowerpots on the 900, 1000, and 1100 blocks of Olive Street, but no officers reported any violence or property destruction after 8:30 pm. *Id.* ¶¶ 44, 58, 120; Doc. No. 13-9 at 37. Nevertheless, Defendants Gerald Leyshock and Timothy Sachs approved the plan to arrest everyone within the vicinity of Tucker Boulevard and Washington Avenue *three hours later*. Doc. No. 13 at ¶¶ 46, 55; Doc. No. 13-5 at 70.

Defendant Brian Rossomanno gave a dispersal order before 10:00 pm, but the order did not specify how far civilians had to move in order to comply; even Defendant Sachs was unsure Doc. No. 13 ¶ 121; Doc. No. 13-9 at 8-9. Defendant Sachs could not even hear the order. Doc. No. 13 ¶ 51. The vague, inaudible dispersal order was merely a pretense for the illegal arrests of peaceful citizens, as the SLMPD had already decided to arrest everyone in the vicinity of Tucker and Washington at about 10:00 pm, not because of any illegal activity by the eventual arrestees, but because SLMPD had decided to punish these people for the actions of others hours and days before. *Id.* ¶¶ 29, 50, 121, 122. Worse, Defendants Rossomanno, Randy Jemerson, and Matthew Karnowski directed civilians to Washington and Tucker for that purpose. *Id.* ¶¶ 50, 53, 121, 122. The mass arrest occurred at 11:30 pm – 40 minutes after the last dispersal order – and three or four blocks away from the dispersal order, and despite the fact that the civilians present at Washington and Tucker were calm, not engaged in any violent activity, and had not been involved with the earlier property destruction. *Id.* ¶¶ 45, 84, 122, 123.

At approximately 11:15 pm or 11:20 pm, Defendant Bain and the other officers identified in Paragraph 10 of the First Amended Complaint (hereinafter "Defendant Line Officers"), began forming the lines that would encircle Plaintiffs in a kettle. *Id.* ¶ 57. Three lines were comprised of

Defendant Line Officers all wearing military-like tactical dress, including helmets, and carrying long wooden batons or full-body riot shields. *Id.* ¶ 63. A fourth line of Defendant Line Officers carried bicycles. *Id.* ¶ 65. Each line approached the intersection of Washington Avenue and Tucker Boulevard. *Id.* ¶ 66. Without further instruction or warning, Defendant Line Officers surrounded downtown residents, business patrons, protestors, observers, and members of the press, cutting off all routes of egress - including via any sidewalk - and prohibiting the people trapped inside from leaving. *Id.* ¶ 67. As they approached, Defendant Line Officers banged their batons in unison, causing a foreboding and terrifying sound, akin to a war march. *Id.* ¶ 68. Multiple people approached Defendant Line Officers requesting to be let through, but Defendant Line Officers merely screamed, "Get back!" *Id.* ¶ 70. Defendant Line Officers wielding bicycles aggressively jabbed at Plaintiffs, using their bicycles as battering rams. *Id.* ¶ 79. Defendant Line Officers did not allow any of the compliant and peaceful citizens to leave the area. *Id.* ¶ 108.

Almost instantly and in unison, Plaintiffs put their hands in the air as a sign of peaceful surrender and got on the ground. *Id.* ¶¶ 81, 83. Even though Plaintiffs were not acting violently or aggressively, a group of Defendant Line Officers indiscriminately and repeatedly doused them with pepper spray, without warning. *Id.* ¶ 84. Many of the Defendant Line Officers kicked, beat, and dragged many Plaintiffs. *Id.* ¶ 85. Universally, Defendant Line Officers used tight, plastic zip ties, which inflicted significant pain on Plaintiffs. *Id.* ¶ 93.

Some Plaintiffs had been wearing goggles because they rightfully anticipated the indiscriminate deployment of chemical agents, based on the SLMPD's well known pattern and practice of using chemical agents against peaceful protestors. *Id.* ¶ 87. Others found paper masks on the ground or other objects in order to protect themselves as it became apparent that SLMPD was preparing to effectuate illegal and likely violent arrests. *Id.* ¶ 88. In response, some Defendant Line Officers roughly removed the goggles and then sprayed some of those individuals directly in the face. *Id.* ¶ 89. No Defendant Line Officers or any other city officials provided Plaintiffs with

3

medical care or gave them anything to wash the chemical agents out of their eyes, off their bodies, or off their clothes, at any time between Plaintiffs' arrests and their releases from the St. Louis City Justice Center. *Id.* ¶ 106.

Instead, many Defendant Line Officers screamed derogatory and homophobic epithets at Plaintiffs as they were being arrested. *Id.* ¶ 90. During and after the arrests, Defendant Line Officers high fived each other; smoked celebratory cigars; took selfies on their personal phones with Plaintiffs, against Plaintiffs' will; and chanted "Whose Streets? Our Streets!" *Id.* ¶ 95. As evidenced by abhorrent text messages exchanged prior to the kettling between several Defendant Line Officers, they were celebrating their successful execution of their plan to abuse people for exercising their First Amendment rights. *Id.* ¶ 30.

The torment did not end there, as upon their release from jail, Plaintiffs received summonses showing that they had been charged with "failure to disperse" and instructing them to appear at St. Louis City Municipal Court on October 18, 2017. *Id.* ¶ 107. In letters dated October 13, 2017, the City informed Plaintiffs that the charges against them had been dropped, but the City left open the possibility of resuming prosecution at any point. *Id.* ¶ 115. To date, no Plaintiffs have been prosecuted for the events of September 17, 2017. *Id.* ¶ 116.

## ARGUMENT

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). A plaintiff is only required to plead enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  Courts must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000).

In actions against law enforcement, "officers are entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the plaintiffs, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation, such that a reasonable officer would have known that his actions were unlawful." *Bernini v. City of St. Paul*, 665 F.3d 997, 1002 (8th Cir. 2012). "A plaintiff need not show that the 'very action in question ha[d] previously been held unlawful,' but he must establish that the unlawfulness was apparent in light of preexisting law." *Chambers v. Pennycook*, 641 F.3d 898, 908 (8th Cir. 2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In other words, we must ask whether the law at the time of the events in question gave the officers 'fair warning' that their conduct was unconstitutional." *Pennycook*, 641 F.3d at 908 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741, (2002)). An officer cannot claim qualified immunity if she knew or reasonably should have known that her action would violate the plaintiff's constitutional rights. *Engleman v. Deputy Murray*, 546 F.3d 944, 947 (8th Cir. 2008) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)).

I.     **Defendant Line Officers Have Not Established That Plaintiffs Have Not Stated Claims for Relief Because Defendant Line Officers Have Not Limited Their Arguments to the Facts Pleaded by Plaintiffs.**

In reviewing a motion to dismiss, not only must the Court view all the facts pleaded by Plaintiffs as true, but the Court must make all reasonable inferences in Plaintiffs' favor. *Ashley County,* 552 F.3d at 663. Defendant Line Officers do not limit their arguments to the facts as pleaded by Plaintiffs and explicitly ask the Court to make inferences against Plaintiffs, using exhibits attached to the First Amended Complaint.[1] The mere inclusion of these exhibits in the pleadings, particularly Exhibits D and E (Doc. Nos. 13-4, 13-5), transcripts from a hearing

---

[1]     In a paragraph bearing no citations whatsoever, Defendant Line Officers specifically ask to the Court to make an inference in their favor. Doc. No. 24 at 4. Interestingly, that paragraph only serves to illuminate Defendant Line Officers' animus towards Plaintiffs by creating the reasonable inference that Defendant Line Officers sought retribution for incidents that occurred days prior to the kettling.

involving the kettling at issue in this cause, does not make all statements made during that hearing uncontested facts in the First Amended Complaint. "Where a plaintiff attaches to the complaint a document containing unilateral statements made by a defendant, where a conflict exists between those statements and the plaintiff's allegations in the complaint, and where the attached document does not itself form the basis for the allegations, Rule 10(c) 'does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact.'" *Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008). *See also N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 456 (7th Cir. 1998) (holding that letters containing a defendant's self-serving statements were not reliable enough to refute the plaintiff's allegations, because "[a] party that has sought to abridge another's constitutional rights would be unlikely to call attention to its actions by directly stating that prohibiting the group from exercising its constitutional rights was the purpose behind a policy."). Defendant Line Officers' self-serving recitation ignores Plaintiffs factual allegations, as pleaded in the First Amended Complaint, and the Motion should be denied.

## II. Defendant Line Officers Are Not Entitled to Qualified Immunity Because the Intracorporate Conspiracy Doctrine Is Inapplicable to Plaintiffs' § 1983 Conspiracy Claims.

Defendant Line Officers are not entitled to qualified immunity on Plaintiffs' § 1983 conspiracy claims, because they violated Plaintiffs' constitutional rights to be free from unreasonable seizure, excessive force, and deliberate indifference to their medical needs, and those rights were clearly established in September 2017. A warrantless arrest is unreasonable and violates the Fourth Amendment if it is not supported by probable cause. *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (citing *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011)). Moreover, the right to be "'free from excessive force in the context of an arrest is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures.'" *Nance v. Sammis*, 586 F.3d 604, 611 (8th Cir. 2009) (quoting *Samuelson v. City of New Ulm*, 455

F.3d 871, 877 (8th Cir. 2006)). Additionally, an arrestee or pretrial detainee's right to medical treatment is clearly established. *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, (1976)), *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012) (citing *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 905 n. 3 (8th Cir.1999)).

Despite this clearly established law, Defendant Line Officers argue that a reasonable officer would somehow not know that "obeying orders of the incident commander to encircle and arrest plaintiffs amounted to an actionable conspiracy." Doc. No. 24 at 4-5. Defendant Line Officers ignore the fact that they were present at the time of Plaintiffs' arrests and, therefore, could not simply "'assum[e] that proper procedures ... ha[d] already been followed.'" *Perry v. Woodruff County Sheriff Dep't by & through Barker*, 858 F.3d 1141, 1146 (8th Cir. 2017) (quoting *White v. Pauly*, 137 S.Ct. 548, 552 (2017)).

Further, qualified immunity does not shield unconstitutional behavior simply because officers decide to violate citizens' rights as a group instead of violating citizens' rights individually. Defendant Line Officers argue that they did not know it was unconstitutional to work together to violate Plaintiffs' rights because they work for the same department. Doc. No. 24 at 5. Defendant Line Officers make the patently absurd argument that they are entitled to qualified immunity because they did not know it was unconstitutional for them to conspire to violate Plaintiffs' rights. Defendant Line Officers do not cite any authority for this proposed, massive expansion of qualified immunity protection. More importantly, the Eighth Circuit has made several rulings on police officers' liability for § 1983 conspiracy, establishing that a reasonable officer would know that he cannot conspire with his fellow officers to violate a plaintiff's rights. *See Small v. McCrystal*, 708 F.3d 997, 1010 (8th Cir. 2013) (denying officers qualified immunity for § 1983 conspiracy to arrest the plaintiff without probable cause and in retaliation for protected speech). *See also Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999) (upholding dismissal of the plaintiff's

conspiracy claim on a motion for judgment as a matter of law because the plaintiff lacked sufficient evidence to prove the unconstitutional conduct giving rise to the claim).

In fact, the Eighth Circuit has specifically found SLMPD officers unentitled to qualified immunity for § 1983 conspiracy. *See S.L. ex rel. Lenderman v. St. Louis Metro. Police Dept. Bd. of Police Com'rs*, 725 F.3d 843, 854 (8th Cir. 2013) (upholding denial of a motion for summary judgment by several SLMPD officers upon its finding of sufficient evidence that the officers conspired to conceal violations of an arrestee's constitutional rights and, in doing so, violated the arrestee's clearly established rights). *See also Burbridge v. City of St. Louis, Missouri*, 4:17-CV-02482-SRC, 2019 WL 7020183, *10 (E.D. Mo. Dec. 20, 2019) (denying SLMPD officers' motion for summary judgment for § 1983 conspiracy upon its finding that the plaintiff, another victim of the instant kettling, produced sufficient evidence to submit the claim to a jury). The Eighth Circuit has held, "'The question of the existence of a conspiracy to deprive the plaintiffs of their constitutional rights should not be taken from the jury if there is a possibility the jury could infer from the circumstances a 'meeting of the minds' or understanding among the conspirators to achieve the conspiracy's aims.'" *Small*, 708 F.3d at 1010 (8th Cir. 2013) (quoting *White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008); *Larson by Larson v. Miller*, 76 F.3d 1446, 1458 (8th Cir.1996)).

Moreover, Defendant Line Officers offer no authority for the application of the intracorporate conspiracy doctrine to § 1983 conspiracy claims and solely rely on *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), a conspiracy case under 42 U.S.C. § 1985.[2] Defendant Line Officers offer no authority to establish that § 1983 and § 1985 conspiracy claims must be analyzed the same way. Moreover, the rationale in *Ziglar* suggests that the intracorporate conspiracy doctrine is inapplicable to § 1983 conspiracy claims.

---

[2]     Defendant Line Officers also cite *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which does not involve the intracorporate conspiracy doctrine.

In *Ziglar*, the U.S. Supreme Court notes that the intracorporate conspiracy doctrine is applicable to § 1985 conspiracy claims because "[w]hen two agents of the same legal entity make an agreement in the course of their official duties . . . as a practical and legal matter their acts are attributed to their principal." *Ziglar*, 137 S. Ct. at 1867. Conversely, in § 1983 cases, "local governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employee' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal citations omitted).

Further, in *Ziglar*, the Court found that communications amongst the defendants warranted the application of the intracorporate conspiracy doctrine because "the discussions were the preface to, and the outline of, a general and far-reaching policy." 137 S. Ct. at 1867. In essence, a *Ziglar* policy is one that is universally applied. In the present case, the coordination of Plaintiffs' arrests and the force against Plaintiffs was not a result of a *Ziglar* policy. These constitutional violations resulted from animus and specific, contemporaneous plans to punish Plaintiffs for First Amendment activity deemed critical of the SLMPD.

In fact, the Eighth Circuit has held that, while a government entity generally cannot conspire with itself under § 1985, there is an exception if its agents acted "beyond the scope of their authority" at the time of the conspiracy. *Barstad v. Murray County*, 420 F.3d 880, 887 (8th Cir. 2005) (citing *Garza v. City of Omaha*, 814 F.2d 553, 556 (8th Cir.1987). Several courts have held that allegations of police misconduct or excessive force are not protected because the purpose of the intracorporate conspiracy doctrine is to shield corporations from liability for "routine, collaborative business decisions," finding that "conspiracies and cover-ups are not the product of routine police department decisions-making." *Pinell v. City of Gerald, Mo.,* 2018 U.S. Dist. LEXIS 45957, at *24 (E.D. Mo. Mar. 21, 2018); *Golden v. Moutray,* 2018 U.S. Dist. LEXIS 62828, at *11 (E.D. Mo. Apr. 13, 2018).

Here, even assuming *arguendo* that the doctrine applies to § 1983 conspiracy, Defendant Line Officers cannot be considered to have been acting within the scope of their employment or conducting routine activities, making the intracorporate conspiracy doctrine inapplicable to the facts of the present case. Additionally, in the § 1985 context, the Eighth Circuit has held, "While it is true that a corporation cannot conspire with itself, an intracorporate conspiracy may be established where individual defendants are also named and those defendants act outside the scope of their employment for personal reasons." *Garza*, 814 F.2d at 556. Officers within the same agency are liable for conspiracy when they act in the interests of their personal animosities and biases. *Id.* at 557. Defendant Line Officers are individually named defendants who, due to personal animosities, acted outside of their employment to terrorize and punish Plaintiffs for protected activity deemed critical of the SLMPD. Doc. No. 13 ¶¶ 30, 31, 68, 90, 95, 96, 98.

Finally, courts in this circuit have repeatedly denied motions to dismiss based on the intracorporate conspiracy doctrine in § 1983 cases. *Powers v. City of Ferguson*, 229 F.Supp.3d 894, 897 (E.D. Mo. 2017); *Golden,* 2018 U.S. Dist. LEXIS 62828, at *11; *Anzaldua v. Northeast Ambulance & Fire Prot. Dist.,* 2014 U.S. Dist. LEXIS 14568, at *8 (E.D. Mo. Feb. 5, 2014) (aff'd in part, rev'd in part on other grounds and remanded, 793 F.3d 822 (8th Cir. 2015)). Courts have held that, because of the standard of review on motions to dismiss, "the interests of justice are not best served by considering the intracorporate conspiracy doctrine at this pre-evidentiary stage" in § 1983 conspiracy cases. *Golden*, 2018 WL 1784395 at *11 (citing *Powers*, 229 F. Supp. 3d at 904–05; *Anzaldua*, 2014 WL 46234, at *8.

Quite simply, the Defendant Line Officers are trying to argue, without authority, that an officer deserves qualified immunity for an act, which if done by himself would not render him immune, merely because said officer performs the unconstitutional act with his fellow officers. This is simply untrue. And, as other judges in this district held in proceedings related to the present

case, given the early stage of this litigation and the lack of discovery, the Court should defer analysis of this doctrine to the summary judgment stage. *See Alston v. City of St. Louis*, No. 4:18-CV-01569, (E.D. Mo. July 3, 2019), Doc. No. 53 at 7-8 (citing *Laird v. City of Saint Louis, Missouri*, 4:18-cv-01567, 2019 WL 2647273 at \*4-5 (E.D. Mo. June 27, 2019)). *See also Rose v. City of St. Louis, Missouri,* 4:18CV1568 RLW, 2019 WL 4602829, at \*5 (E.D. Mo. Sept. 23, 2019). For these reasons, the Motion as to Plaintiffs' § 1983 conspiracy claims should be denied.

## III.    Plaintiffs' Missouri Civil Conspiracy Claims Are Not Barred by the Intracorporate Conspiracy Doctrine, and Defendant Line Officers Are Not Entitled to Official Immunity for Those Claims.

The intracorporate conspiracy doctrine does not bar Plaintiffs' state law conspiracy claims because the general rule does not apply to Plaintiffs' claims. Defendant Line Officers are not entitled to official immunity because they acted with malice and in bad faith.

### A. Plaintiffs' Missouri Civil Conspiracy Claims Are Not Barred by the Intracorporate Conspiracy Doctrine.

In Missouri, as a general rule, "a principal cannot conspire with one of its own agents." *Wiles v. Capitol Indem. Corp.*, 75 F. Supp. 2d 1003, 1005 (E.D. Mo. 1999) (citing *Metts v. Clark Oil and Refining Corp.*, 618 S.W.2d 698, 702 (Mo.App.1981)). "'An exception to this general rule exists when an employee has an independent personal stake in achieving the object of the conspiracy.'" *Secure Energy, Inc. v. Coal Synthetics*, 4:08CV01719 JCH, 2009 WL 10694916, at \*7 (E.D. Mo. June 8, 2009) (quoting *Metts v. Clark Oil & Refining Corp.*, 618 S.W.2d 698, 702 (Mo. App. E.D. 1981)). Citing *John Deere Co. v. Short*, 378 S.W.2d 496 (Mo. 1964), Defendant Line Officers argue that Missouri "unequivocally follows the intracorporate conspiracy doctrine," (Doc. No. 24 at 6), but the doctrine is not applicable to the facts of the present case.[3] In *John Deere*,

---

[3]     Defendant Line Officers also cite *Hedrick v. Jay Wolfe Imports I, LLC*, which involved an anti-trust claim, not a civil conspiracy claim. 404 S.W.3d 454, 460 (Mo. App. W.D. 2013).

the court noted that the counter-plaintiff only sued John Deere Co., itself, for conspiracy, *by and through its agents*, and held that John Deere Co. could not conspire with itself. 378 S.W.2d at 501.

In the present case, the exception to the general rule allows Plaintiffs to sue the City of St. Louis and Defendant Line Officers for conspiracy because Defendant Line Officers had independent, personal stakes in achieving the goal of the conspiracy: terrorizing and punishing Plaintiffs. Doc. No. 13 ¶¶ 30, 31, 68, 90, 95, 96, 98. *See US Polymers-Accurez, LLC v. Kane Int'l Corp.*, 4:17-CV-2371 RLW, 2018 WL 4491168, at *6 (E.D. Mo. Sept. 19, 2018). *See also Secure Energy, Inc. v. Coal Synthetics*, 4:08CV01719 JCH, 2009 WL 10694916, at *7 (E.D. Mo. June 8, 2009). Alternatively, the general rule is inapplicable to Defendant Line Officers' liability in Plaintiffs' state conspiracy claim because Plaintiffs sued Defendant Line Officers in their individual capacities, not as agents of the City of St. Louis. Doc. No. 13 ¶ 10. Defendant Line Officers conspired with their fellow officers to violate Plaintiffs' rights; the general rule does not prohibit claims for conspiracy among agents, for which liability is not imputed to the principal. Thus, the Motion should be denied.

**B. Defendant Line Officers Are Not Entitled to Official Immunity for Plaintiffs' Missouri Civil Conspiracy Claims.**

Officers may be entitled to official immunity for claims related to discretionary, rather than ministerial acts, performed within the scope of their authority. *Southers v. City of Farmington, Mo.*, 263 S.W.3d 603, 610 (Mo. banc 2008); *Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002). An act that requires an officer to exercise reason and judgment to determine a course of action is discretionary. *Green v. Denison*, 738 S.W.2d 861, 865 (Mo. banc 1987). Because Defendant Line Officers unconstitutionally seized and abused Plaintiffs, they were not acting within the scope of their authority, which disentitles them to official immunity. However, assuming *arguendo* that Defendant Line Officers were acting within the scope of their authority, official immunity "'does not apply to discretionary acts done in bad faith or with malice.'" *Davis v. White*, 794 F.3d 1008,

12

1013 (8th Cir. 2015) (quoting *Blue v. Harrah's North Kan. City, LLC*, 170 S.W.3d 466, 479 (Mo. App. 2005)). "'A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.'" *Davis*, 794 F.3d at 1013 (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. banc 1986)). "Bad faith" means "'conscious wrongdoing'" or "'breach of a known duty through some ulterior motive.'" *Id.*

Defendant Line Officers acted in bad faith or with malice. An officer of reasonable intelligence would recognize that arresting and consciously or intentionally injuring law-abiding citizens for the exercise or perceived exercise of their First Amendment rights is a violation of her duties as an officer. Defendant Line Officers unconstitutionally seized Plaintiffs to deter criticism of the SLMPD. Doc. No. 13 ¶¶ 25, 29. Defendant Line Officers indiscriminately pepper sprayed, dragged, and struck Plaintiffs, even though Plaintiffs were not resisting. *Id.* ¶¶ 84, 85, 89. Defendant Line Officers exchanged text messages about their excitement at the prospect of attacking Plaintiffs, they banged their batons and shields in a menacing war march, they screamed homophobic and other derogatory remarks at Plaintiffs, they exchanged high-fives and chants in celebration of their misconduct, and then they took cheerful photographs to commemorate their success. *Id.* ¶¶ 30-31, 68, 90, 95, 96. Defendant Line Officers' egregious misconduct establishes that they are not entitled to official immunity for Plaintiffs' state conspiracy claim or any other state law claims. The Motion should be denied.

## IV.   Defendant Line Officers Are Not Entitled to Qualified Immunity for Plaintiffs' Unreasonable Seizure or Excessive Force Claims Because Plaintiffs' Rights Are Clearly Established.

Defendant Line Officers are not entitled to qualified immunity because Plaintiffs had clearly established rights to be free from unreasonable seizure in September 2017, and Plaintiffs had clearly established rights to be free from excessive force in September 2017.

### A.  Plaintiffs Had Clearly Established Rights to be Free from Unreasonable Seizure.

"Whenever an officer restrains the freedom of a person to walk away, he has seized that person." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (citing *U.S. v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). To gain the protection of qualified immunity, an officer must have at least arguable probable cause for the seizure. *Ulrich*, 715 F.3d at 1059 (citing *Borgman*, 646 F.3d at 523). Probable cause exists "'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Id.* Arguable probable cause exists when "'an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" *Id.* "'[C]learly established federal law does not prohibit a reasonable officer who arrives late to an ongoing police action ... from assuming that proper procedures ... have already been followed.'" *Perry v. Woodruff County Sheriff Dep't by & through Barker*, 858 F.3d 1141, 1146 (8th Cir. 2017) (quoting *White v. Pauly*, 137 S.Ct. 548, 552 (2017)).

Defendant Line Officers' cited support for the reasonableness of the arrest is unpersuasive. Defendant Line Officers primarily rely on *Bernini*, in which the Eighth Circuit analyzed probable cause in the context of a mass arrest and held the Fourth Amendment requires that, "the officers have grounds to believe all arrested persons were a part of the *unit* observed violating the law.'" 665 F.3d at 1003 (emphasis in original). In *Bernini*, officers were positioned to block protestors from marching into downtown St. Paul, Minnesota. 665 F.3d at 1001. At one of the intersections, 100 protestors stood across the sidewalk from that intersection's eleven officers who had just received reports that the group was involved in unlawful activity. *Id.* Fifteen protestors moved towards the officers and ignored the officers' orders to move back, only retreating after the officers fired rubber pellets. *Id.* After the fifteen protestors rejoined the larger group, members of the larger group propelled rocks and feces at the officers. *Id.*

Additional protestors joined the march as the officers pushed the protest away from downtown, and, by the time the officers had an opportunity to "gather the crowd," the group of

protestors was nearly 400-strong. *Id.* at 1001. After providing clear instruction over a loudspeaker that all in the area were under arrest, the officers directed the group to sit down and put their hands on their heads. *Id.* The officers immediately released 200 individuals whom they determined were not part of the earlier confrontation; the officers took the remaining 200 persons into custody. *Id.* Although the officers later determined that some of the 200 people arrested were not present at the earlier confrontation, the court held that the officers had arguable probable cause as to those people due to a reasonable, yet mistaken, belief that they had whittled out all of the innocent bystanders. *Id.* at 1005. The court further concluded that a reasonable officer would believe the 200 arrestees were acting as a unit because, after the violent confrontation at the intersection, the group remained intact, the group chanted in unison, and the group continued to move together as the police moved them away from downtown. *Id.* at 1003-04.

In the present case, Defendant Line Officers identify no facts evidencing that Defendants observed Plaintiffs acting as a unit. Plaintiffs did not act as a unit to violate the law. Defendants made dispersal orders several blocks away and no less than 45 minutes before the kettling, making it unreasonable to assume those arrested in the kettle were cognizant of any potentially unlawful acts. *Id*. *See White v. Jackson*, 865 F.3d 1064, 1075-76, 1079-80 (8th Cir. 2017).

Unlike the arrestees in *Berini*, Plaintiffs were not a unit throwing rocks or feces at police or engaging in any violence or disobedience. Plaintiffs were not chanting in unison. Plaintiffs were not part of an organized crowd. Many of the instant arrestees were simply residents or patrons of businesses on Washington Avenue who were completely uninvolved in the evenings' earlier events. Unlike the officers in *Berini*, Defendants arrested *everyone* near Washington and Tucker and made no attempt to whittle down the group of arrestees to the people they believed had engaged in unlawful conduct. *See Carr v. Dist. of Columbia*, 587 F.3d 401, 407 (D.C. Cir. 2009) (holding particularized probable cause requires officers to "have grounds to believe all arrested persons were a part of the unit observed violating the law."). *See also Barham v. Ramsey*, 434 F.3d

565, 575 (D.C. Cir. 2006) (finding no evidence arrestees were acting as a unit when there was a significant time lag between the criminal acts and the arrests, civilians flowed freely in and out of the area, and the officers made no attempt to distinguish between the illegal actors and law-abiding individuals). More than two and a half years later, the City of St. Louis has not identified or charged a single person arrested in the kettling for any property destruction or violent acts occurring on September 17, 2017. Doc. 13 ¶ 25.

Even if they did not zip tie Plaintiffs themselves, by encircling Plaintiffs in the kettle to prevent their egress, Defendant Line Officers restrained Plaintiffs' "freedom to walk away." *Garner*, 471 U.S. at 7 (citing *Brignoni-Ponce*, 422 U.S. at 878). Thus, Defendant Line Officers seized Plaintiffs. Without particularized probable cause to support Plaintiffs' seizures or a reasonable belief that Plaintiffs were acting as a unit observed violating the law, Defendant Line Officers did not have probable cause to seize Plaintiffs. Thereby, Defendant Line Officers seized Plaintiffs without probable cause in violation of Plaintiffs' clearly established Fourth Amendment rights. The Motion should be denied.

### B.  Plaintiffs Had Clearly Established Rights to be Free from Excessive Force.

"Police officers undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a *lawful* seizure." *Pennycook*, 641 F.3d at 907 (citing *Graham v. Connor,* 490 U.S. 386, 396 (1989)) (emphasis added). Courts "look to the specific circumstances, such as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Peterson*, 754 F.3d at 600. (quoting *Graham,* 490 U.S. at 396). "'[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public.'" *Small*, 708 F.3d at 1005 (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009)). "The dispositive question is whether the officer's conduct was objectively reasonable under the circumstances, as judged from the

perspective of a reasonable officer on the scene at the time the force was applied." *Pennycook*, 641 F.3d at 907. It is "clearly established that an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment." *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009) (citing *Krout v. Goemmer*, 583 F.3d 557, 2009 WL 3172180, at *5 (8th Cir. Oct. 6, 2009)).

First, since at least 2006, it has been the law in the Eighth Circuit that an officer violates the Fourth Amendment when he subdues and handcuffs a suspect he knows was not resisting or threatening officers. *Perry*, 858 F.3d at 1146 (8th Cir. 2017) (citing *Smith v. Kansas City Police Dep't*, 586 F.3d 576, 582 (8th Cir. 2009)). Second, in *Burnikel v. Fong*, the Eighth Circuit found that it was clearly established, by at least 2013, "'that when a person is subdued and restrained with handcuffs, a 'gratuitous and completely unnecessary act of violence' is unreasonable and violates the Fourth Amendment.'" 886 F.3d 706, 711–12 (8th Cir. 2018) quoting *Blazek v. City of Iowa City*, 761 F.3d 920, 925 (8th Cir. 2014)). *See White v. Jackson*, 865 F.3d 1064, 1080 (8th Cir. 2017) (holding that kicking and punching a restrained suspect was objectively unreasonable).

Third, in *Pennycook*, decided in 2011, the Eighth Circuit held that even *de minimis* injury is sufficient to establish the use of excessive force. 641 F.3d at 908-909. *See Perry*, 858 F.3d at 1146. Plaintiffs had a clearly established right at the time of Defendants' unconstitutional conduct. *See Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir. 1999) (holding that a small cut above the plaintiff's eyelid and small scrapes on the plaintiff's knee and calf constituted excessive force). *See also Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995) (holding that bruising and facial lacerations constituted excessive force).

The Eighth Circuit has also found short bursts of pepper spray unreasonable. In *Tatum v. Robinson*, the plaintiff attempted to steal from a retailer in April 2014. 858 F.3d 544, 546 (8th Cir. 2017). In *Tatum*, the officer approached the plaintiff and told him he was under arrest and ordered him to put his hands on a clothing rack. *Id.* The plaintiff did not comply and began to yell instead.

*Id.* The officer warned the plaintiff that he would pepper spray the plaintiff if the plaintiff did not calm down; fourteen seconds later, the officer sprayed the plaintiff for "one second." *Id.* The Eighth Circuit determined that, under *Graham*, the pepper spraying constituted excessive force, given that the plaintiff was not suspected of a severe crime, the plaintiff was not an immediate threat to anyone's safety, and the plaintiff was not actively resisting arrest. *Id.* at 548-49. Even if the officer could have used "*some* force" given the plaintiff's noncompliance, the court found that it was unreasonable for the officer to use pepper spray immediately, as it is "significant force" that causes "more than temporary pain." *Id.* The Eighth Circuit held that force was "least justified" against the plaintiff because the plaintiff was "a non-resisting, non-fleeing individual suspected of a completed, non-violent misdemeanor." *Id.* at 549.[4] *See LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000) (holding that "any reasonable officer would know that a continued use of the weapon or a refusal without cause to alleviate its harmful effects constitutes excessive force," where officers failed to administer aid by flushing pepper spray from a compliant arrestee's eyes).

In the present case, Defendant Line Officers subjected Plaintiffs to "significant force" even though Plaintiffs were people against whom force was "least justified." Because Plaintiffs' arrests were not supported by probable cause, Defendant Line Officers were not authorized to use *any* force against them, including the application of hand restraints. By pepper spraying them without warning and despite their compliance, Defendant Line Officers violated Plaintiffs' clearly established rights. By applying zip ties tight enough to cause lasting pain, Defendant Line Officers violated Plaintiffs' clearly established rights. Every *Graham* factor weighed against the force Defendant Line Officers exacted on Plaintiffs: they were not suspected of a severe crime, Plaintiffs were not a threat to anyone's safety, and Plaintiffs were not actively resisting or attempting to flee.

---

[4] Ultimately, the *Tatum* court granted the officer qualified immunity after concluding that the plaintiff's right was not clearly established at the time. *Id.* at 551. Post *Tatum*, a reasonable officer would know that pepper spraying compliant, non-fleeing individuals suspected of low-level misdemeanors is unreasonable.

Further, Defendant Line Officers violated Plaintiffs' clearly established rights to be free from excessive force by failing to stop fellow officers from using excessive force on Plaintiffs. After seizing Plaintiffs in the kettle, Defendant Line Officers stood by and watched their fellow officers abuse Plaintiffs, instead of intervening to protect them.[5] *See Nance*, 586 F.3d at 612 (citing *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008)). Therefore, the Motion should be denied.

**V.      Plaintiffs' State Law Claims Should Not be Dismissed Because Defendant Line Officers Are Not Entitled to Qualified Immunity on Plaintiffs' Federal Claims, Plaintiffs Properly Alleged Their State Law Claims Against Defendant Line Officers, Defendant Line Officers Are Not Entitled to Official Immunity, and The Intracorporate Conspiracy Doctrine Does Not Apply to Non-Conspiracy Claims.**

Defendant Line Officers argue that Plaintiffs' state law claims should be dismissed under 28 U.S.C. §1367(c), for lack of supplemental jurisdiction. Doc. No. 24 at 8. However, because Defendant Line Officers are not entitled to qualified immunity for the federal claims for which Defendant Line Officers seek dismissal, discussed in Sections II and IV above, Plaintiffs' state law claims should not be denied under 28 U.S.C. §1367(c).

Defendants argue that Plaintiffs have not alleged "personal participation by all" Defendant Line Officers in the state claims. *Id.* at 7. Yet, the First Amended Complaint, which must be accepted as true, does so allege. The first footnote of the First Amended Complaint provides that Defendant Line Officers, the officers identified in Paragraph 10, are part of the larger group of Defendant Officers. Thus, Defendant Line Officers are alleged to have personally participated in

---

[5]      Defendant Line Officers cite *Robinson v. Payton*, 791 F.3d 824 (8th Cir. 2015) and argue that they did not know that their fellow officers were using excessive force on Plaintiffs or have sufficient time to stop it. Doc. No. 24 at 7. However, *Payton*, is inapposite. Unlike the officer in *Payton*, Defendant Line Officers were not preoccupied with a hysterical person who was attempting to interfere in the arrest of another person. 791 F.3d at 830. Defendant Line Officers stood by watching the uses of force against Plaintiffs and did nothing. *See Krout v. Goemmer*, 583 F.3d 557, 566 (8th Cir. 2009) (holding that officers failed to intervene by standing around, not saying anything, and not doing anything to prevent their counterparts from using excessive force for five minutes).

the acts and omissions giving rise to the state law claims against them. *See e.g.*, Doc. No. 13 ¶¶ 67, 84, 85, 89, 93, 336, 345, 354.

Defendant Line Officers argue that they are entitled to official immunity (Doc. No. 24 at 7), but, as discussed in Section III-B above, Defendant Line Officers' malice or bad faith disentitles them to official immunity. Finally, Defendant Line Officers argue that they cannot be liable for the state law claims because the claims are barred by the intracorporate conspiracy doctrine. *Id.* But, as discussed in Section III-A above, the intracorporate conspiracy doctrine does not apply to Plaintiffs' state conspiracy claims, and the doctrine has no bearing on Plaintiffs' non-conspiracy claims in Counts VII, VIII, IX, X, XI, XII, and XIII of the First Amended Complaint. The Motion should be denied.

## CONCLUSION

For the reasons stated above, Plaintiffs pleaded facts upon which relief can be granted. Plaintiffs respectfully request the Court deny Defendant Line Officers' Motion in full.

Date: May 13, 2020

Respectfully submitted,

KHAZAELI WYRSCH LLC

/s/ James R. Wyrsch
James R. Wyrsch, 53197(MO)
Javad M. Khazaeli, 53735(MO)
Kiara N. Drake, 67129(MO)
911 Washington Avenue, Suite 211
St. Louis, MO 63101
(314) 288-0777
javad.khazaeli@kwlawstl.com
james.wyrsch@kwlawstl.com
kiara.drake@kwlawstl.com

and

CAMPBELL LAW LLC

Alicia Campbell, 59586(MO)
3407 Jefferson Avenue
St. Louis, MO 63118
P: 888.588.5043
F: 314.588.9188
alicia@campbelllawllc.com

Attorneys for Plaintiffs