UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALICIA STREET, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 4:19-cv-2590 CDP |
| ) | |
| LT.COL. LAWRENCE O'TOOLE,  et al., ) | |
| ) | |
| Defendants. ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS O'TOOLE, DEEKEN AND CITY OF ST. LOUIS**

Plaintiffs have now clarified that they did not intend to attempt to state any claims against defendants O'Toole, Deeken and the City of St. Louis, except for count VI against the City (a §1983 claim), counts VII-XIII against the City (state law claims), count XVI against the City (§1983 due process claim), and count XVII against defendants Deeken and O'Toole (novel state law vicarious liability theory).  Plaintiff's Memorandum in Opposition to Motion to Dismiss [ECF 33], p. 1 and n. 1.  Thus, plaintiffs have forsworn a conspiracy claim against defendants O'Toole, Deeken and the City.  Defendants O'Toole, Deeken and the City appreciate the clarification.  If these proceedings continue in some form, these defendants assume that a suitable amendment to the complaint will be proffered.

In the meantime, these defendants will confine this reply memorandum to the issues that warrant further argument.

**1.      Plaintiffs rely on pre-*Twombly/Iqbal* cases in an effort to buttress their "custom" and "failure to train" claims against the City, but the complaint on its face--**

**including the extensive *Ahmad* materials--does not state a plausible claim of a routine City practice of conducting unconstitutional mass arrests.**

Plaintiffs argue in substance that their amended complaint passes muster because it is hard for a plaintiff to know in advance what an actionable §1983 claim against a city could be. Their reasoning (as well as the case they cite, *Sagehorn v. Independent Sch. Dist. No. 728,* 122 F.Supp.3d 822 (D.Minn. 2015)) is wholly at war with the Supreme Court's demands that complaints allege sufficient facts to establish "facial plausibility." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

In this case, plaintiffs allege two distinct injuries:  unlawful arrest, and the use of excessive force in making arrests. Albeit this Court in *Ahmad* found a likelihood that the City practiced an unlawful custom in utilizing "chemical agents" to disperse "peaceful" protesters and another in providing insufficient dispersal orders in cases of unlawful assemblies or traffic blockades, this Court did not make any findings or reach any conclusions on the *Ahmad* record about any custom or failure to train in regard to the conduct of a mass arrest. It is a mass arrest that is the fulcrum of plaintiffs' claims for damages in this case, and plaintiffs plead no facts--and point to nothing in the portions of the *Ahmad* record included in the complaint--that plausibly shows any sort of custom or routine practice of making illegal mass arrests or of using excessive force when doing so. Neither this Court in *Ahmad* nor the orders in the *Templeton* case--which involved St. Louis County and the State of Missouri as well--addressed anything like a custom of illegal mass arrests.

Defendants need not reiterate the "rigorous" standards of culpability and causation that are supposed to obtain in §1983 claims against municipalities. Suffice it to say that plaintiffs' amended complaint alleges exactly one mass arrest in the City of St. Louis as of September

2017--the one complained about here. With no allegations whatever of a prior history of illegal mass arrests and concomitant use of excessive force, it is pellucid that plaintiffs have not pleaded a plausible claim of municipal liability. See *Szabla v. City of Brooklyn,* 486 F.3d 385 (8th Cir. 2007)(*en banc*).

**2. The *Ahmad* preliminary injunction did not enjoin enforcement of any statute or ordinance regarding traffic obstruction or unlawful assemblies, and plaintiffs' due process claim in count XVI does not state a claim for relief, in that there are no facts alleged demonstrating any lack of fair notice or other constitutional defect in any ordinance.**

Plaintiffs quote liberally from this Court's opinion in granting a preliminary injunction in *Ahmad*. However, this Court did not hold any City ordinance to be unconstitutional, nor did this Court enjoin enforcement of any ordinance. The Court enjoined what it conceived to be a "custom" of enforcing the City's traffic blockage and unlawful assembly ordinances in an unconstitutional manner, by utilizing "chemical agents" on "peaceful" protesters without warning, and by give vague and inadequate dispersal orders. *Ahmad v. City of St. Louis,* 2017 U.S.Dist.LEXIS 188478 (E.D.Mo. 2017) at *43ff. The Court did not question the facial validity of either the traffic blockage or the unlawful assembly ordinances (both of which closely resemble state statutes, compare Mo.Rev.Stat. §§574.010.1(2), 574.040 & 574.060 with R.C.St.L. §§15.52.010 & 17.16.275).

Whatever the merits of this Court's preliminary conclusions in *Ahmad,* these defendants submit that plaintiffs do not state a cognizable claim of a due process violation in regard to the

3

validity of the City's ordinances.[1]  See *Burbridge v. City of St. Louis,* 2019 U.S. Dist. LEXIS 219483 (E.D.Mo. 2019); see also *Powell v. Ryan,* 855 F.3d 899 (8th Cir. 2017).

**3.    The City Charter provision cited by plaintiffs in count XVII does not create a private right of action against defendants O'Toole and Deeken and, in any event, plaintiffs' novel theory of vicarious liability is an unprecedented state law theory, entirely unsuitable for the exercise of this Court's supplemental jurisdiction.**

Plaintiffs' memorandum in opposition does little to demonstrate why, as a matter of state law, the City can create liabilities by charter that are contrary to state law.  Although plaintiffs acknowledge Missouri law precluding vicarious liability of government officers for acts of subordinates, Memorandum [ECF 33] at p. 12, they clearly misunderstand Missouri law relating to the authority of constitutional charter cities.  The City simply has no authority, by Charter or otherwise, to revise state law on the liability of government officers or any other citizen.  *Yellow Freight Systems, Inc. v. Mayor's Commission,* 791 S.W.2d 382 (Mo.banc 1990).  Similarly, plaintiffs point to no authority for the proposition that a local government can enact a law affecting principles of liability under §1983.  The Supreme Court has repeatedly emphasized that there is no vicarious liability under §1983.  To conclude that a city charter provision adopted in 1914 somehow alters the meaning and application of §1983 is insupportable.

Plaintiffs cite a City Counselor's opinion from 1962 [ECF 33-1] as authority for their interpretation of article VIII, §5 of the City Charter.  However, that opinion was dealing with the ordering of the hierarchy of City government, in an effort to demonstrate why a plan to reorganize the municipal court was contrary to the Charter.  Far from assisting plaintiffs'

---

[1] Defendants assume that this Court can and will take judicial notice of the text of the ordinances in question, notwithstanding plaintiffs' failure to plead the full text.

4

argument, it actually sheds some light on the true purpose of §5. Given the subject matter of article VIII of the Charter, it would seem that the potential liability created by the Charter provision with regard to appointing authorities is a liability to the City for any loss suffered by the City. Hence the proviso that an appointing authority may require an appointee to provide a fidelity bond or other security "to secure himself." Section 5 follows Section 4, which provides in general for the bonding of City employees.

It must be recalled that the current City Charter was adopted in 1914, prior to the adoption of civil service reform by adoption of article XVIII of the Charter in 1941. At that time, it was prudent for the City to impose some check on appointing authorities in the matter of hiring incompetent or corrupt employees. Article VIII, §5 obviously was intended to deter appointing authorities from hiring persons whose misconduct would import liability to the City. Hence, §5 declares that appointing authorities are responsible for their appointees' conduct, and should require bonds from appointees in order to protect themselves. By this device, the City Charter extends to appointing authorities the traditional duty of employees to indemnify the City for loss due to their negligence. See *State ex rel. Algiere v. Russell,* 223 S.W.2d 481, 483 (Mo.banc 1949).

Thus, the most natural reading of §5 is that it is intended to impose liability on department heads *to the City* when their appointees cause loss to the City. It is not intended--and certainly has never been applied in over 100 years--to impose vicarious liability on department heads to third persons for acts or omissions of appointees causing damage to such third persons.

Even if §5 will bear the construction placed on it by plaintiffs, the use of the term "appointees" in §5 must be construed under state law in its plain and ordinary sense, e.g., *State v. Honeycutt,* 421 S.W.3d 410 (Mo.banc 2013), as limited to persons actually appointed by the

5

department head.  The section does not speak in terms of "subordinates," or "persons under supervision," or the like.  The term "appointee" has a simple dictionary meaning:  one who is "appointed," i.e., named or designated for a job.  See *Ballentine's Law Dictionary* "appoint"; see also *dictionary.com* "appoint."  Under the plain language of the section, therefore, department heads are answerable only for the misconduct of their appointees, not someone else's.  Under this construction, defendants Deeken and O'Toole cannot be liable for the misconduct of anyone, as both were merely "acting" officers and plaintiffs do not (and cannot) allege that they in fact appointed any other defendant.

The foregoing discussion highlights that plaintiffs entirely overlook the serious issue of whether their novel Charter claim is properly subject to this Court's supplemental jurisdiction.  The statute, 28 U.S.C. §1367, expressly authorizes a district court to decline to exercise supplemental jurisdiction over a claim if the claim raises a novel or complex issue of state law.  §1367(c)(1).  While the decision is discretionary, it is well established that supplemental jurisdiction need not be exercised to resolve complex and unsettled questions of state law, even if the federal claims are ongoing.  See, e.g., *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912 (9th Circ. 2001); *Williams v. VanBuren Township,* 925 F.Supp. 1231 (E.D. Mich. 1996); C. 13D Wright, et al., *Federal Practice & Procedure:  Jurisdiction* §3567.3 at n. 61.

The meaning and application of the Charter section in question has *never* been determined by a state appellate court, and defendants cannot find that a state trial court has ever done so, either.  If this Court considers that *Yellow Freight* conclusively precludes plaintiffs' theory, then it must venture into the realm of home rule law in Missouri.  There are few issues in Missouri law that are more complex than the authority of constitutional charter cities to alter or expand general state law.  Countless Missouri cases have wrestled with drawing the line of

6

demarcation between "home rule" powers and state law preemption.  *Yellow Freight*, supra, is just one of many cases illustrating this point.  See also *Coop. Home Care v. City of St. Louis,* 514 S.W.3d 571 (Mo.banc 2017) and cases cited therein.   Whatever the proper construction of the cited Charter provision may be, whether it can be construed as plaintiffs desire, is an unsettled state law issue; and, if it is construed as plaintiffs desire, and if *Yellow Freight* does not compel the conclusion that it is preempted, then it also imports a further, complex question of state law.  Consequently, this Court should not undertake a resolution of that issue, and count XVII should be dismissed without prejudice.

Another reason militating in favor of dismissal of plaintiffs' novel Charter liability theory is that such a claim is not ripe unless and until plaintiffs prevail on their claims against defendants O'Toole and Deeken's subordinates.  If and when plaintiffs obtain a judgment against any of the other individual defendant police officers, plaintiffs can seek, if necessary, to enforce that judgment against defendants O'Toole and Deeken in state court.  That is the proper mechanism by which to determine the construction of the City Charter.  For reasons of comity and federalism, at a minimum, this Court should decline to exercise supplemental jurisdiction over count XVII.  Cf. *Railroad Comm. of Texas v. Pullman Co.,* 312 U.S. 496 (1941).

## Conclusion

For the foregoing reasons, the amended class action complaint against defendants City, O'Toole and Deeken must be dismissed.

                                Respectfully submitted,
                                JULIAN L. BUSH
                                CITY COUNSELOR
                                      /s/ Robert H. Dierker
                                    Robert H. Dierker 23671(MO)
                                    Associate City Counselor
                                    dierkerr@stlouis-mo.gov
                                    Brandon Laird 65564(MO)

                                        Associate City Counselor
                                        Abby Duncan 67766(MO)
                                        Associate City Counselor
                                        Amy Raimondo 71291(MO)
                                        Assistant City Counselor
                                        1200 Market St.
                                        City Hall, Rm 314
                                        St. Louis, MO 63103
                                        314-622-3361
                                        Fax 314-622-4956

                                        ATTORNEYS FOR DEFENDANTS