UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ALICIA STREET, et al.,                    )
                                          )
    Plaintiffs,                         )
                                          )
v.                                        )     No. 4:19-cv-2590 CDP
                                          )
LT.COL. LAWRENCE O'TOOLE,  et al.,        )
                                          )
    Defendants.                         )

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS LEYSHOCK AND OTHER SUPERVISORY OFFICERS**

Plaintiffs' memorandum in opposition [ECF 38] to the defendant supervisory officers' motion to dismiss [ECF 21] requires a brief response.  Like plaintiffs, defendant supervisors seek to avoid needless repetition of arguments advanced in other memoranda.

Facts

In light of plaintiffs' arguments, defendant supervisors consider it appropriate to supplement their previous statement of facts, with appropriate citations to the amended complaint and its exhibits.

It is undisputed that defendants Leyshock and Sachs made the decision to arrest the crowd that was milling about at Tucker and Washington.  Amended complaint [ECF 13] ¶¶46, 55.  The amended complaint and its exhibits show that, when Leyshock and Sachs made the decision to arrest, the following facts were known or had been reliably reported to them:  a large crowd was milling about the intersection of Tucker and Washington, ECF 13-7 [Ex. G], ECF 13-5 [transcript] pp.24-25; the crowd at Tucker and Washington had moved there from Tucker and Locust, where assaults and threats had been directed at police within the hour, ECF 13-5, pp.

192-93; that crowd included persons wearing masks and goggles, ECF 13-5, p. 12, 18; that crowd included persons who had been observed engaging in vandalism and other disorderly activity downtown in the past several hours, *id.*, pp. 28, 138; that crowd had disregarded repeated orders to disperse, *id.,* pp. 12, 197, also ECF 13-4, p. 85; and similar crowds had resorted to violence on the two preceding nights, see ECF 13-6, ¶25-30, ECF 13-5, pp. 5-6; ECF 13-9 (*Ahmad* order), p. 6.

**1.     Plaintiffs fail to refute defendant supervisors' entitlement to qualified immunity in regard to the conspiracy claims.**

Plaintiffs misapprehend the argument of defendants regarding qualified immunity as a bar to the conspiracy claims in this case.  Every claim of a civil rights conspiracy necessarily alleges that a defendant conspired to and did violate a plaintiff's civil rights.  The point is not whether defendants knew that it was illegal to violate civil rights; nor is the point that the intracorporate conspiracy doctrine does not apply to §1983 conspiracies; nor that an exception to the intracorporate conspiracy doctrine might be applied in this case.  Rather, the point is that defendant supervisors could not know in 2017 that an agreement with other City officers, to do anything, could constitute an actionable conspiracy under §1983, because of the unsettled law of intracorporate conspiracy under §1983; and so the conspiracy claims are barred by qualified immunity.

Defendants' argument is encapsulated in the recent opinion in *Haliw v. City of South Elgin*, 2020 U.S. Dist. LEXIS 47329 (N.D.Ill. 2020), in which a plaintiff sought to impose liability under §1983 on police officers for conspiracy to falsely arrest and prosecute him.  The district court there discussed the application of the intracorporate conspiracy doctrine in §1985 cases by the Seventh Circuit, the extension of the doctrine to §1983 cases by other Circuits, and

the basic principle of qualified immunity that §1983 liability cannot be imposed when the illegality of a defendant's conduct has not been placed "beyond debate."  See 2020 U.S.Dist.LEXIS at *11-*12.  Here, as in the Eighth Circuit, the intracorporate conspiracy doctrine has been recognized in §1985 actions, but not in §1983 actions.  Nationally, the law is unsettled (as discussed in defendants' other memoranda in this case).  Qualified immunity necessarily bars plaintiffs' conspiracy claims against defendant supervisors.

     **2.**     **Plaintiffs fail to refute the application of qualified immunity to the decision to effectuate a mass arrest, because, under the circumstances then known to defendant supervisors, there was at least arguable probable cause to conduct a mass arrest.**

Plaintiffs accuse defendants of distorting the factual predicate of their amended complaint, but plaintiffs cannot import the *Ahmad* record wholesale and expect this Court simply to disregard undisputed facts reflected in that record.

This Court previously found fault with the City in connection with the September 17 mass arrest on the basis of evidence of "customs" of utilizing "chemical agents" to disperse peaceful protests without warning, and failing to provide adequate prior warnings and directions to disperse when declaring unlawful assemblies or enforcing traffic obstruction ordinances. Prior to this Court's order in *Ahmad*, no court in this Circuit had found any illegality in regard to the form of dispersal orders that were given in cases of unlawful assemblies, nor had any court held that a traffic obstruction ordinance could not be enforced without prior warning or specifically tailored orders to disperse.

The long and the short of it is that on September 17, 2017, none of the defendant supervisors can be found, under the circumstances, to have knowingly or incompetently violated clearly established law in effecting the mass arrest of plaintiffs.  The amended complaint on its

face shows that an unruly crowd (if not a mob) had been engaging in vandalism and disorderly conduct in downtown St. Louis after dark for several hours.  Although property damage was not reported after 8:30 p.m., the crowd indisputably continued to engage in threatened assaults on police officers both in confrontations with bicycle officers and in confrontations with other officers at Tucker and Locust.  Lt.Col. Leyshock had wanted to arrest the members of the crowd when they became disorderly at Tucker and Locust, but there were insufficient officers on the scene at the time (owing no doubt to defendants' clever conspiratorial move in actually withdrawing riot-equipped police from the area to trick the crowd into believing that no arrests would be made).  By the time sufficient officers were assembled, the crowd had disregarded repeated orders to disperse[1] and was still congregated at or near Tucker and Washington.  Members of the crowd still sported masks and goggles.  Even though the scene was peaceful when police moved in, there was no guarantee that it would have remained so.

Defendant supervisors concede that the mass arrest could have been conducted more efficiently.[2]  However, inefficiency is not the same as unconstitutionality.  The mass arrest was at worst reasonably unreasonable, given the facts and circumstances known or knowable to the defendant supervisors.[3]  Again, it is not decisive that plaintiffs dispute certain facts.  What is

---

[1] Whether some plaintiffs did not hear orders to disperse is irrelevant. E.g., *Johnson v. McCarver,* 942 F.3d 405, 410 (8th Cir. 2019).
[2] Plaintiffs, after excoriating defendants for relying on parts of their exhibits that do not suit them, then inject allegations outside the record about the defendants' inefficiency in helping them identify police officers to sue, see Memorandum [ECF 38] at p. 7.  There is, of course, no constitutional standard for police reports, e.g., *A.J. v. Tanksley,* 94 F.Supp.3d 1061, 1071 (E.D.Mo. 2015)(citing cases).  Plaintiffs' inability to identify police officers who are claimed to have used force is no excuse for filing a complaint that blatantly skirts the desiderata of acceptable pleading in federal court--and drags officers into court based on resentment and not facts.
[3] Plaintiffs quarrel with defendants' reliance on cases such as *Kelsay v. Ernst,* 933 F.3d 975 (8th Cir. 2019)(*en banc*), in connection with defendants' immunity against the wrongful arrest claims, arguing that those case relate to the use of force.  The cases were cited for the proposition that it

decisive is what facts were known or reported to defendants Leyshock and Sachs.  There is no dispute that warnings were given.  There is no dispute that vandalism had occurred earlier.  There is no dispute that it was reported by officers on the scene that the crowd threatened police at Tucker and Locust.  There is no dispute that violence had erupted on two previous nights by crowds that included persons wearing masks and goggles.

Defendant supervisors are entitled to qualified immunity in regard to the plaintiffs' illegal arrest claims because, on September 17, 2017, it was not clearly established that a mass arrest, under the facts and circumstances then obtaining, was violative of the Fourth Amendment.  See *Garcia v. Doe,* 779 F.3d 84 (2nd Cir. 2015).  The only resemblance this case bears to the incident described in *Barham v. Ramsey,* 434 F.3d 565 (D.C.Cir. 2006), is that both involved a decision to make a mass arrest.  But in *Barham,* the police commander ordered a mass arrest of a large group present in a park, not on the streets, because of disruptive behavior and street blockage some time earlier, without giving any dispersal orders whatever and at a point at which the commander knew that many other persons had entered and left the park.  By contrast, in this case defendants Leyshock and Sachs were acting only after numerous orders to disperse had been given, and were planning to arrest persons actually engaged in traffic disruption, who reasonably appeared to be acting as a unit and whose members had recently threatened officers and were in some cases wearing masks and goggles.

Hindsight aside, the violative nature of the defendant supervisors' particular conduct, viewed from the perspective of a reasonable officer on the scene, was not clearly established; hence, qualified immunity applies. E.g., *Mullenix v. Luna,* 136 S.Ct. 305 (2019).

---

the touchstone of immunity against a Fourth Amendment claim is the objective reasonableness of the officers' conduct under the circumstances.  See also *New v. Denver,* 787 F.3d 895 (8th Cir. 2015).

5

**3.    Plaintiffs have failed to refute defendant supervisors' entitlement to qualified immunity in regard to claims of excessive force.**

At the outset, defendants note an error in their prior memorandum [ECF 28] at p. 15, in which they refer to "this Court," when the references should have been to the Eighth Circuit. Obviously, defendants' argument was and is that the Eighth Circuit has not clearly established whether there is a *de minimis* threshold for excessive force claims.  Here, as with intracorporate conspiracy, the issue is not whether the force used by a given officer as to any plaintiff exceeded a *de minimis* threshold; rather, the issue is whether the defendant supervisors, as reasonable officers, under the circumstances, could have believed that the use of pepper spray on September 17, 2017, was anything more than a *de minimis* use of force and so not a constitutional violation.

Defendants do not dispute that the various cases cited and discussed by plaintiffs show that, in this Circuit, the use of pepper spray *can* be excessive force if deployed against a non-violent, subdued and unresisting misdemeanant arrestee.  What is not established in this Circuit is that the use of pepper spray by some officers in the process of a mass arrest is *per se* the use of more than *de minimis* force and therefore a Fourth Amendment violation for which every officers in the vicinity can be liable.  For example, in *Peterson v. Kopp,* 754 F.3d 594, at 601 (8th Cir. 2014), the Eighth Circuit opined:

> Though we agree the use of force here may have been unreasonable, and acknowledge that [plaintiff] described being pepper sprayed as a painful experience, [plaintiff] has not presented sufficient evidence that he suffered more than *de minimis* injury. Viewing the facts in the light most favorable to [plaintiff], he was sprayed directly in the face with pepper spray for just a few seconds, and suffered some pain, discomfort, and peeling under his eyes for several days after the incident. He did not seek medical care and his injuries resolved themselves without medical intervention. We do not make light of the use of pepper spray nor ignore the discomfort and skin irritation [plaintiff] endured; nonetheless, we have not held that the use of pepper spray necessarily causes more than *de minimis* injury.

Plaintiffs assert that *Chambers v. Pennycook,* 641 F.3d 898 (8th Cir. 2011), discussed in *Peterson,* provides the springboard to the conclusion that no showing of more than *de minimis* injury is required in order to establish a Fourth Amendment violation on the part of officers who are not themselves deploying pepper spray.[4]  Certainly *Chambers* holds that, in some circumstances, a use of force may be excessive even if it causes no more than *de minimis* injury. That does not, however, resolve the question presented here, because the law remains unsettled in this Circuit as to whether reasonable police officers could believe that, under the circumstances of the mass arrest here, the use of pepper spray was the use of *de minimis* force, not amounting to unconstitutional excessive force.  Plaintiffs acknowledge as much when they level the bizarre argument that the law in the Circuit on this point was settled in 2017, but became unsettled in 2019 with the decision in *Robinson v. Hawkins,* 937 F.3d 1128 (8th Cir. 2019), and so defendants can be liable for acts in 2017 even though they could not be liable now.

Defendants also note that the claims of excessive force by handcuffing warrant qualified immunity because there is no Supreme Court or Eighth Circuit precedent establishing that handcuffing, with or without lawful arrest, is excessive force.  Defendant supervisors cannot reasonably be said to have known in 2017 that handcuffing an arrestee, even tight handcuffing, was constitutionally excessive force.

To the extent plaintiffs' claims of excessive force are premised on unlawful arrests, those claims do not rise to the level of independent constitutional violations, but are subsumed under

---

[4] To the extent defendants Rossomanno and Karnowski actually deployed pepper spray or directed that it be deployed, the individual targeted could have a claim, if the individual was a compliant, subdued misdemeanant arrestee, but it does not follow that those defendants are liable to any arrestee against whom pepper spray was deployed by other officers.  None of the named plaintiffs alleges that he or she was sprayed by any supervisory defendant.  Plaintiff Warrington apparently asserts a constitutional violation because the backs of her legs allegedly were sprayed, although she never saw anyone spraying her.

7

the claims of unlawful arrest. If defendant supervisors are immune on the arrest claims, they are necessarily immune to any claim that application of force was excessive by reason of the unlawful arrest alone.

**4. This Court's findings and conclusions in *Ahmad* do not control the determination of the qualified immunity issues in this case.**

Defendants acknowledge, as they must, that this Court preliminarily found and concluded that it was probable that the City practiced unconstitutional "customs" in enforcing unlawful assembly and traffic obstruction laws, by giving inadequate dispersal orders and by deploying pepper spray without warning to disperse otherwise peaceful protesters. The latter "custom" is irrelevant here, since the claims arise from use of pepper spray incident to actual arrests, not dispersal. The former "custom" is also irrelevant, because, prior to this Court's order in *Ahmad,* no court had ever identified such an unconstitutional "custom" of the City through its division of police. Thus, defendant supervisors here could not have known that arresting plaintiffs after they failed to disperse could be unconstitutional, due to the inadequacy of the dispersal orders actually given. (Notably, this Court did not find that City police gave *no* dispersal orders: it found that the police gave untimely, vague and contradictory dispersal orders. ECF 13-9, p. 40.)

Defendant supervisors also note that, in *Ahmad,* this Court had no occasion to decide any questions of qualified immunity, as the only defendant was the City and the only relief sought was equitable.

Conclusion

For the foregoing reasons, the amended class action complaint against defendant supervisors must be dismissed.

Respectfully submitted,
JULIAN L. BUSH

8

CITY COUNSELOR
/s/ Robert H. Dierker
Robert H. Dierker 23671(MO)
Associate City Counselor
dierkerr@stlouis-mo.gov
Brandon Laird 65564(MO)
Associate City Counselor
Abby Duncan 67766(MO)
Assistant City Counselor
Amy Raimondo 71291(MO)
Assistant City Counselor
1200 Market St.
City Hall, Rm 314
St. Louis, MO 63103
314-622-3361
Fax 314-622-4956

ATTORNEYS FOR DEFENDANTS