UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ALICIA STREET, et al.,                )
                                      )
    Plaintiffs,                       )
                                      )
v.                                    )   No.  4:19-cv-2590 CDP
                                      )
LT.COL. LAWRENCE O'TOOLE, et al.,     )
                                      )
    Defendants.                       )

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS BAIN et al. ("LINE OFFICERS")**

In their quest to persuade this Court to turn the law of §1983 liability inside out, plaintiffs resolutely adhere untenable positions of pleading and liability under §1983.  In plaintiffs' view, any police officer who relies on his superiors' judgment as to the propriety of a mass arrest can plausibly be alleged to have violated each and every arrestee's Fourth Amendment rights, just because plaintiffs allege that the superiors' judgment was wrong.  Similarly, plaintiffs consider that a plausible claim based on excessive force can be stated against 300 officers even though the face of plaintiffs' own pleadings, including exhibits, demonstrates that the vast majority of the officers never had any personal contact with any arrestee and could not possibly have intervened to prevent any use of force against any particular plaintiff.  Withal, plaintiffs contend that *any* use of force in executing an allegedly illegal arrest is *per se* an actionable claim under the Fourth Amendment, wholly apart from the arrest itself.  In the course of arguing these untenable positions, plaintiffs demonstrate why, at a minimum, the defendant line officers are entitled to qualified immunity.

1

This reply will limit its scope to the arguments that seem most to warrant response. Defendants of course adhere to all arguments advanced for dismissal in their initial memorandum.

## Facts

Plaintiffs point to the inadvertent omission of citations to the record in defendants' prior memorandum (ECF 24 at p. 4), to advance a bizarre argument that counsel's statement of facts somehow demonstrates defendants' animus toward plaintiffs. Memo. Opp. MTD [ECF 39], p. 5 at n. 1. The argument is nonsensical, but defendants recognize their oversight and hereby supplement the prior statements with citations to plaintiffs' pleading and exhibits:

CDT officers are police officers who are specially trained and equipped to police civil disorder situations. They wear standard protective equipment, including helmets and face shields. ECF 13-5, pp. 58-60; see also 13-6. For present purposes, it is reasonable to infer that all or almost all of the defendant line officers were CDT officers. ECF 13-5, pp. 199ff. These officers had been subjected to assaultive behavior during mass protests in the City beginning on September 15, 2017. ECF 13-4, pp. 307-08; ECF 13-5, pp. 117-18, 162, 177; see also ECF 13-6. They were deployed to control a virtual riot at the Mayor's home on the night of September 15. ECF 13-4, pp. 261, 292ff.; ECF 13-5, pp. 158ff.; ECF 13-9 at p. 6. They were again deployed to assist St. Louis County and University City police when vandalism and assaults occurred after dark on September 16. ECF 13-5, pp. 183-84. Over 30 officers were injured during the weekend of September 15-17. [Defendants concede that this number does not appear in pleadings and exhibits in this case, but the record contains references to injuries to numerous officers, as this Court found. ECF 13-9, pp. 3, 6.]

Defendants also note several anomalies in plaintiffs' rendition of the facts as alleged. First, they allege that defendant officers' protective equipment was donned as a "disguise," but plaintiffs' own masks and goggles were worn only for protection and had to be seen as such by defendant officers.  Second, they make blanket assertions that all defendants used force against all plaintiffs, but the video included in their pleadings, ECF 13-7 (Ex. G), limited as it is, shows without question that only a few officers deployed pepper spray.  The exhibits incorporated in the amended complaint likewise show that the use of pepper spray during the incident was always by means of a large capacity "streamer" or "fogger," not routinely carried by line officers. See this Court's *Ahmad* findings, ECF 13-9, pp. 15-16; ECF 13-5, pp. 40, 54, 101, 205-06, 220.

Argument

**1.     Plaintiffs fail to refute defendant line officers' entitlement to qualified immunity on the claims of unlawful arrest.**

The Eighth Circuit has provided a complete answer to plaintiffs' contention that defendant line officers are not entitled to qualified immunity in *Ehlers v. City of Rapid City,* 846 F.3d 1002, at 1010 (8th Cir. 2017)(citations in original):

> Generally, an assisting officer is entitled to rely on the probable cause determination of the arresting officer and may receive qualified immunity as long as the reliance is reasonable. *Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005) (finding that an officer assigned to operate a battering ram had no constitutional duty to verify the supervising officer's decision to execute a no-knock entry based on "the settled principle that law enforcement officers may rely on information provided by others in the law enforcement community, so long as the reliance is reasonable"); *see also Mitchell v. Shearrer*, 729 F.3d 1070, 1073 (8th Cir. 2013) (noting that "[t]here is no evidence to suggest that [the assisting officers] were involved in the decision to arrest [the plaintiff] or that they knew or should have known that the seizure was unlawful"). Other circuits likewise do not require assisting officers to have independent probable cause in order to receive qualified immunity. *See Stearns v. Clarkson*, 615 F.3d 1278, 1286 (10th Cir. 2010); *Brent v. Ashley*, 247 F.3d 1294, 1305-06 (11th Cir. 2001); *Liu v. Phillips*, 234 F.3d 55, 57-58 (1st Cir. 2000).

In order to defeat qualified immunity of defendant line officers in connection with plaintiffs' arrests, in light of the law as delineated in *Ehlers,* plaintiffs must point to well-pleaded facts of record that plausibly show defendants' reliance on their superiors was unreasonable. They have not done so. The allege only formulae and conclusions. They repeatedly assert that the arrest "plan" was conceived and put in motion by Lt.Col. Leyshock and Lt. Sachs. They do not (and cannot) allege that every individual line officer participated in the decision and knew that the reports on which Leyshock and Sachs proceeded were in fact wrong. Instead, plaintiffs attempt to paper over their factual shortcomings with pejoratives about defendants' animus toward plaintiffs and their purpose to "terrorize" them. None of this is remotely plausible, and, in any event, defendants' subjective motives are irrelevant. Although this Court in *Ahmad* found fault (at the preliminary injunction stage) with the way in which dispersal orders were issued, it is impossible to attribute knowledge of such deficiencies to the line officer defendants on September 17, 2017.

Plaintiffs cannot cite a single case involving a mass arrest in which each and every participating officer was liable for the arrest. On the contrary, the closest parallel would seem to be *Garcia v. Doe,* 779 F.3d 84 (2nd Cir. 2014). *Garcia* involved a mass arrest for blocking traffic, followed by a class action claiming some 40 officers (including unidentified officers) violated the plaintiffs' constitutional rights. The Second Circuit reversed a denial of qualified immunity on a complaint that, like plaintiffs' here, included video and photographs, and in the face of a contention, as here, that the police failed to issue adequate dispersal orders before the arrest. To be sure, *Garcia* does not address the question of reasonable reliance on superiors' judgments or orders, but it serves to demonstrate beyond cavil that the illegality of the line

officer defendants' participation in the mass arrest at issue was not "beyond debate." *Ashcroft v. al-Kidd,* 561 U.S. 731, 740 (2011).[1]

Qualified immunity must be assessed with regard to each officer's conduct individually. Plaintiffs can allege nothing with regard to any individual officer that shows that such an officer had superior ability to assess all of the facts and circumstances under which Lt.Col. Leyshock and Lt. Sachs acted, such that no reasonable officer would rely on the judgment of these superior officers. All First and Fourth Amendment claims against defendant line officers premised on illegal arrest must be dismissed on the basis of qualified immunity.

### 2. Plaintiffs fail to refute defendant line officers' entitlement to qualified immunity on the conspiracy claims.

Plaintiffs argue, "Defendant Line Officers make the patently absurd argument that they are entitled to qualified immunity because they did not know it was unconstitutional for them to conspire to violate Plaintiffs' rights." Memorandum [ECF 39], p. 7. In plaintiffs' world, incantation of the magic words "conspire to violate Plaintiffs' rights" forecloses the defense of qualified immunity on the conspiracy claims against the line officers. The problem with plaintiffs' argument is that it rests on the sort of high level of generality that is irrelevant to the issue of qualified immunity.[2]

---

[1] *Vodak v. City of Chicago,* 639 F.3d 738 (7th Cir. 2011), in which multiple individual officers were sued in a mass arrest situation, reversed a judgment on qualified immunity. However, in that case, the Seventh Circuit did not address the issue of subordinate officers' reliance on superiors' judgments, but focused on whether the First Amendment rights of the arrested protesters were clearly established. *Vodak* has not been approved by the Eighth Circuit and is in conflict with *Garcia,* supra, further buttressing defendant line officers' argument that their actions took place in the ambit of unsettled law.

[2] Defendants do not concede that plaintiffs have stated a viable conspiracy claim against them even if qualified immunity is inapplicable. A conspiracy claim requires an agreement to violate someone's specific constitutional right. The amended complaint alleges a conclusion that there

Defendant line officers' entitlement to qualified immunity on plaintiffs' conspiracy claims does not depend on the recognition of the intracorporate conspiracy doctrine in this case.  It is the very uncertainty about applying the rule in §1983 cases in this Circuit that compels dismissal of the conspiracy claims on the basis of qualified immunity.  Every claim of conspiracy under §1983 entails alleging that the defendants conspired to violate the plaintiff's rights.  What plaintiffs doggedly refuse to admit is that, in September 2017, it was not clearly established that police officers employed by the same police department would become members of a §1983 conspiracy by obeying directions of their superiors to assist in a mass arrest.

None of the cases from the Eighth Circuit cited by plaintiffs addresses the issue of qualified immunity with reference to the intracorporate conspiracy doctrine, in the context of an alleged §1983 conspiracy.  This action is the equivalent of *Ziglar v. Abbasi,* 137 S.Ct. 1843 (2017), but in the §1983 context.  While defendants' research discloses relatively few cases that have directly considered this issue, at least one district court has recognized that the unsettled state of the law warrants application of qualified immunity to a claim of conspiracy to effect an unconstitutional arrest.  See *Haliw v. City of South Elgin*, 2020 U.S. Dist. LEXIS 47329 (N.D.Ill. 2020), discussing authority extending the intracorporate conspiracy doctrine to §1983 conspiracy claims, and observing (at *11), "In light of these extensions of the intracorporate conspiracy doctrine to § 1983, and absent controlling authority to the contrary, it cannot be said that the law is clearly established on this point. That is, reasonable officers would not necessarily know that a conspiracy amongst employees of a single municipality can violate the Constitution (no matter what the underlying substantive right is at stake)."

---

was an "agreement," because the defendant line officers assisted in arresting plaintiffs, but the facts pleaded simply do not give rise to a plausible claim of an agreement to violate plaintiffs' rights, as discussed in the prior memorandum in support of these defendants' motion to dismiss.

6

Plaintiffs attempt to evade the application of qualified immunity to defendant line officers by arguing that the intracorporate conspiracy doctrine would not apply to plaintiffs' claim anyway, because plaintiffs have alleged in formulaic terms that the actions of the officers come within the self-interest or exceeding authority exceptions to the doctrine. That is irrelevant. Even if exceptions could be applied, the illegality of the defendants' conduct was not beyond debate in 2017. Of course, the exceptions do not apply. Plaintiffs cannot have it both ways: if the officers were acting as officers, i.e., "under color of law," then they were acting within the scope of their employment; if not, then there is no actionable §1983 claim. *Monroe v. Pape,* 365 U.S. 167 (1961). Similarly, the allegations of the line officers' personal stake in the supposed conspiracy are fatuous. Whatever the officers' subjective motivations may have been (and it is inconceivable that plaintiffs can plausibly read the mind of each and every defendant), there is no plausible allegation of any personal benefit likely to accrue to the line officers from merely obeying superior orders.

In sum, plaintiffs' §1983 conspiracy claims against defendant line officers must be dismissed.

**3.    Plaintiffs fail to refute defendant line officers' entitlement to qualified immunity on the excessive force claims.**

Plaintiffs insist that they plausibly allege a claim of excessive force against each and every line officer, even though the amended complaint as a whole, including video, plausibly alleges only that *some* officers used pepper spray against *some* plaintiffs, without (as this Court found in *Ahmad*) warning to anyone. This Court's findings in *Ahmad* noted the apparent indiscriminate use of pepper spray only by a single officer against the crowd that was being arrested. ECF 13-9, p. 15. Even that usage of pepper spray was of short duration. In any event,

7

the fact that pepper spray allegedly was used in an unconstitutional manner at the mass arrest does not foreclose the application of qualified immunity to defendant line officers.

"'A police officer who fails to act to prevent the use of excessive force may still be held liable where (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'" *Nance v. Sammis,* 586 F.3d 604, 612 (8th Cir. 2009), quoting *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008). The key to the general principles of bystander officer liability lies in the first element: the defendant officer must have had reason to know that excessive force would be or was being used. In the case at bar, plaintiffs signally fail plausibly to allege that defendant line officers had such knowledge. The excessive force claims against the line officers could be dismissed on that basis; but there is another reason for dismissal that plaintiffs do not successfully refute: qualified immunity. It was not clearly established in 2017 that the use of pepper spray in and of itself constituted more than *de minimis* use of force, amounting to constitutionally excessive force.

Defendants do not quarrel with plaintiffs' proposition that the Eighth Circuit has held that the application of pepper spray can sometimes amount to excessive force. That is not the issue. The issue is whether defendant line officers who did not themselves apply pepper spray can be held liable on the premise that they failed to prevent its improper use, when they could reasonably have believed in 2017 that the simple use of pepper spray was nothing more than a *de minimis* use of force, not necessarily implicating the Fourth Amendment. In this connection, plaintiffs wholly fail even to attempt to distinguish *Wright v. United States,* 813 F.3d 689 (8th Cir. 2015), holding that, if a reasonable police officer could have believed that as long as he did not cause more than *de minimis* injury to an arrestee, his actions would not run afoul of the

8

Fourth Amendment.  *Wright* involved use of a taser.  Pepper spray is unquestionably a lesser type of force than a taser.

Here, it is not--and was not in 2017--the law in this Circuit that the use of pepper spray *ipso facto* is excessive force or causes more than *de minimis* injury.  Certainly some plaintiffs have alleged significant reactions to pepper spray, but, again, the amended complaint as a whole--including the copious testimony in *Ahmad*--fails to show that defendant line officers knew or had reason to know that the use of pepper spray by some of the arresting officers was excessive or causing more than *de minimis* injury to anyone.

Still less is it plausible that defendant line officers knew that handcuffing, even tight handcuffing, by arresting officers amounted to unconstitutionally excessive force as a matter of law.  Plaintiffs attempt to skirt this truism by contending that *any* use of force on an arrestee is excessive force if the arrest is illegal.  While the law on this point does not seem to be clear in this Circuit, defendants submit that a separate claim of excessive force cannot be asserted on the strength only of the illegality of the arrest. E.g., *Derowitsch v. Granger*, 783 Fed. Appx. 979 (11th Cir. 2019).  In any event, reasonable police officers in line officer defendants' position could have believed that handcuffing arrestees amounted to nothing more than *de minimis* force, especially in light of *Robinson v. Hawkins,* 937 F.3d 1128 (8th Cir. 2019).

Qualified immunity should be applied to plaintiffs' claims of excessive force against defendant line officers, and the amended complaint should be dismissed as to those claims.

## Conclusion

Defendant line officers reiterate that counts I-V and XV (§1983 claims) should be dismissed with prejudice at plaintiffs' cost, including reasonable attorney's fees.  Counts VII-XIV

(state law claims) should be dismissed either with prejudice, or without prejudice pursuant to 28 U.S.C. §1367(c).

                                                     Respectfully submitted,

                                                     JULIAN L. BUSH
                                                     CITY COUNSELOR

                                                     /s/Robert H. Dierker 23671(MO)
                                                   Associate City Counselor
                                                   dierkerr@stlouis-mo.gov
                                                 Brandon Laird 65564(MO)
                                                 Associate City Counselor
                                                 Abby Duncan 67766(MO)
                                                 Associate City Counselor
                                                 Amy Raimondo 71291(MO)
                                                 Assistant City Counselor
                                                 1200 Market St.
                                                 City Hall, Rm 314
                                                 St. Louis, MO 63103
                                                 314-622-3361
                                                 Fax 314-622-4956

                                                 Attorneys for Defendants