UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ALICIA STREET, et al.,                                  )
                                                        )
                Plaintiffs,                             )
                                                        )
        vs.                                             )        Case No. 4:19 CV 2590 CDP
                                                        )
LAWRENCE O'TOOLE, et al.,                               )
                                                        )
                Defendants.                             )

## MEMORANDUM AND ORDER

Five named plaintiffs filed this putative class action arising out of the mass

arrest "kettling" incident that occurred in the City of St. Louis on September 17,

2017.  Their First Amended Complaint names as defendants the City of St. Louis,

the then-acting Chief of Police Lawrence O'Toole, the Director of Public Safety

Charlene Deeken, and more than three hundred individual police officers.

Plaintiffs bring their claims under 42 U.S.C. §1983 and Missouri state law.  They

make specific factual allegations against only a handful of the individual

defendants, although most of the seventeen counts are brought against either all

defendants or all defendant police officers; most of the factual allegations are made

against "defendants."  All defendants have filed motions to dismiss.

I conclude that all claims against the several hundred defendants against

whom no specific allegations are made must be dismissed without prejudice.  I will

also dismiss the punitive damages claims against the City, the § 1983 claims of deliberate indifference to serious medical needs, and the state law claims for abuse of process, malicious prosecution, conversion, and failure to intervene.  I decline to exercise supplemental jurisdiction over the novel state-law claim that the St. Louis City Charter imposes vicarious liability for all actions of the police on September 17, 2017 and will dismiss that claim without prejudice.

## **Factual Background**[1]

### *A. The Protests and Mass Arrests*

On Friday, September 15, 2017, the Circuit Court of the City of St. Louis issued its verdict in *State of Missouri v. Stockley*,[2] prompting anti-police demonstrations and protests in the City of St. Louis and surrounding areas. Although most of the protests were peaceful, officers of the St. Louis Metropolitan Police Department (SLMPD) amassed at several protest sites wearing military-like tactical dress and armed with riot gear.  As the protests continued throughout the weekend in different city locations, there were multiple instances of police use of chemical agents such as pepper spray to disperse crowds.

---

[1] These facts are taken from plaintiff's First Amended Complaint and are assumed as true for purposes of defendants' motions to dismiss.
[2] Case No. 16220CR02213-01 (Mo. 22nd Jud. Cir. Sept. 25, 2017).  After a bench trial, Police Officer Jason Stockley was found not guilty of the first-degree murder of Anthony Lamar Smith.

On the evening of Sunday, September 17, 2017, protesters had gathered in downtown St. Louis.  After property damage was found in one area of downtown, police began blocking roads and directing civilians to the intersection of Washington Avenue and Tucker Blvd.  Plaintiffs allege that defendants Lt. Timothy Sachs and Lt. Col. Gerald Leyshock planned to "kettle" or gather everyone into that intersection, not allow anyone in the area to leave, and arrest them all.  They allege that supervisory defendants Sgt. Scott Boyher, Sgt. Matthew Karnowski, Sgt. Randy Jemerson and Lt. Brian Rossomanno supervised and directed line officers under their command to form lines of officers blocking each of the four streets leading to the intersection in anticipation of the mass arrests. They allege that defendants knew or should have known that this action would result in the arrests of people without probable cause.

Shortly after 11:00 p.m. and without warning, the four lines of officers began to converge and plaintiffs were informed that they were all under arrest. Plaintiffs allege that the protesters had not been engaged in any violence or illegal behavior before the incident, and many of the gathered people were residents of the area, members of the press, and others peacefully watching the protests.  Plaintiffs allege that they instantly put their hands in the air to surrender, and that they all attempted to get to the ground when ordered to do so.  Regardless, SLMPD officers indiscriminately sprayed members of the crowd with pepper spray and

3

kicked and beat those in the crowd, most of whom were not resisting in any way. Officers then tightly handcuffed every individual with plastic zip ties and the approximately 120 arrestees[3] were transported to the St. Louis City Justice Center (CJC), where they all remained confined without receiving medical assistance for their injuries.  Plaintiffs were released 12-24 hours later.

Upon release, all were given summonses showing they had been charged with "failure to disperse" and instructing them to appear at St. Louis City Municipal Court on October 18, 2017.  On October 13, 2017, the St. Louis City Counselor's office withdrew the summonses.  None of the plaintiffs were subsequently charged.

B. *Named Plaintiffs' Allegations*

The named plaintiffs offer similar accounts of the night in question.  Plaintiff Alicia Street alleges that she observed and participated in several peaceful marches throughout downtown St. Louis on the day of September 17, 2017.  Around 11:00 p.m. she arrived at the intersection of Tucker and Washington and saw that officers were beginning to block the streets.  She attempted to leave, but officers ordered her to move back towards the center of the intersection.  When the mass arrest began, Street got on the ground as ordered; she could taste pepper spray, so she

_____

[3] These arrestees form the putative class in this case.

4

asked defendant Jemerson, whom she knew, if she could put on a facemask she was carrying.  An unknown officer standing behind him then jabbed Street with a baton, knocking her glasses off.  She was then restrained with a painful plastic zip tie, transported to the CJC, and released from custody approximately twelve hours later.  Her glasses were returned when she was released from custody.

Plaintiff Ronald Harris was observing the protests in downtown St. Louis with his three cousins.  Around 10:30 P.M., they began following a small group of protesters heading north along Tucker.  Harris noticed the police lines forming and attempted to leave the area; officers prevented him from leaving and ordered him to turn around.  As the arrest unfolded, Harris got on his stomach on the pavement as ordered; however, unknown officers then stood on his back and neck while simultaneously spraying him with a continuous stream of pepper spray.  He was then tightly handcuffed with a plastic zip tie and officers removed his cell phone from his hand and threw it on the ground.  Throughout the process, officers insulted him and made derogatory comments about "activists."  Harris was transported to the CJC, remained tightly handcuffed for several hours, and was released about twelve hours later.  Harris had bruises on his back and neck, cuts on his wrists from the cuffs, and permanent intermittent numbness in his hands.

Plaintiff Fudail McCain was socializing with friends and family members at the intersection of Tucker and Washington when he noticed the growing police

presence in the area and chanting from SLMPD officers.  He did not observe any criminal acts or hear any dispersal orders that would have indicated that anything was amiss.  When the lines of police officers began converging, he attempted to leave and was ordered to turn back around.  McCain got on the ground and was sprayed several times with pepper spray.  He was cuffed with a painful plastic zip tie, brought to the CJC, and released twelve hours later.

Plaintiff Ashley Theis was observing protests and was recording police activity in downtown St. Louis on the evening of September 17, 2017.  An unknown SLMPD supervisor told Theis she could record officers at the Olive and Tucker intersection if she joined a group of press and media personnel gathered on the sidewalk, so she joined that group.  As the night wore on, Theis became frightened of the SLMPD officers chanting and beating their batons against their shields, so she attempted to leave the area to get to her friends' nearby car; officers threatened her with pepper spray, prevented her from leaving, and directed her back toward the middle of the Tucker and Washington intersection.  When the lines of officers converged, she was knocked to the ground, pepper sprayed, roughly zip-tied, and trampled by officers walking around her, injuring her foot and ankle.  Upon arrival at the CJC she informed a nurse that she has lupus and that the pepper spray covering her skin, face, and eyes was causing extreme pain and discomfort.  The nurse made no effort to clean the pepper spray off or

otherwise assist Theis for the 24 hours that she spent in jail.  Theis continues to

suffer from anxiety and depression, as well as ongoing pain in her foot, arm, and

eyes.

Plaintiff Nicole Warrington observed several protests throughout St. Louis

on the day in question.  That evening, she was recording police activity with a

small group of other observers near Tucker and Washington when she noticed the

growing police presence in the area.  At around 11:25 P.M., Warrington attempted

to leave between a gap in the lines of SLMPD officers, but unknown officers

stopped her and pushed her back towards the center.  When the police yelled that

everyone was under arrest, Warrington got on the ground and felt pepper spray on

her back and legs.  An SLMPD officer took her backpack and cellphone, stopping

it from recording.  She was then arrested, transported to the CJC, and confined for

12 hours; she had marks and numbness on her hands and wrists for weeks and

sought counseling.

### C. Plaintiffs' Claims

Plaintiffs bring their Amended Complaint in seventeen counts.  Counts I –

VI are brought under 42 U.S.C. § 1983. The first four counts are brought against

"all defendant officers" and allege violations of plaintiffs' First Amendment rights

to assembly, association, speech, and press (Count I); Fourth Amendment rights to

be free from excessive force (Count II) and from unlawful seizures (Count III); and

conspiracy to deprive plaintiffs of their civil rights (Count VI).  Count V is brought against "all defendants" and alleges they were deliberately indifferent to plaintiffs' serious medical needs.  Count VI seeks to impose municipal liability of the City of St. Louis for the underlying § 1983 violations alleged in the earlier counts. Plaintiffs additionally assert Missouri state law claims for battery (Count VII); false arrest (Count VIII); false imprisonment (Count IX); abuse of process (Count X); malicious prosecution (Count XI); negligent infliction of emotional distress (Count XII); conversion (Count XIII); civil conspiracy (Count XIV); and failure to intervene (Count XV).  Count XVI raises a challenge that two St. Louis City Ordinances (Count XVI) violate due process, both facially and as applied.  Finally, Count XVII brings a novel claim based on the St. Louis City Charter against defendants O'Toole and Deeken only, alleging that they are vicariously liable for both the § 1983 and the state-law violations committed by the individual officers.[4]

### Legal Standards

*A.  Rule 12(b)(6)*

Rule 12(b) (6) of the Federal Rules of Civil Procedure allows for dismissal if a party fails to state a claim upon which relief can be granted.  To survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as

---

[4] In their brief opposing one of the motions to dismiss, plaintiffs state that Count XVII is the only count brought against defendants O'Toole and Deeken. ECF 33 at pg. 1 fn. 1.

true, to state a claim to relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must allege facts with enough specificity "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Additionally, though a complaint need not contain detailed factual allegations, "[c]ourts must not presume the truth of legal conclusions couched as factual allegations." *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)). "Courts should dismiss complaints based on 'labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Id.* (citing *Twombly*, 550 U.S. at 555).

B. *Section 1983 Liability*

Plaintiffs are required to plead direct, personal involvement in constitutional misconduct in order to state a claim under 42 U.S.C. § 1983: "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 677. Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Because liability for damages under § 1983 is personal, "each defendant's conduct must be

independently assessed. Section 1983 does not sanction tort by association."
*Smith v. City of Minneapolis*, 754 F.3d 541, 547–48 (8th Cir. 2014) (citing
*Heartland Acad. Cmty. Church v. Waddle*, 595 F.3d 798, 805–06 (8th Cir. 2010)
(citation and internal quotation marks omitted)); *see also S.M. v. Krigbaum*, 808
F.3d 335, 340 (8th Cir. 2015).

Relatedly, a municipality cannot be held liable under 42 U.S.C. § 1983 on a
*respondeat superior* theory—that is, a municipality cannot be held liable solely
because it employs a tortfeasor. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690
(1978). In order to state a proper claim for §1983 liability against the City, the
plaintiffs must show that a constitutional violation resulted from 1) an official
municipal policy; 2) an unofficial custom; or 3) a deliberately indifferent failure to
train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th. Cir.
2016).

### C. Qualified Immunity

"Qualified immunity shields a governmental official from suit under § 1983
if his 'conduct does not violate clearly established statutory or constitutional rights
of which a reasonable person would have known.'" *Kelsay v. Ernst*, 933 F.3d 975,
979 (8th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).
When a defendant asserts qualified immunity, the burden falls on plaintiffs to
prove: "(1) the facts, viewed in the light most favorable to the plaintiffs,

demonstrate the deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation."  *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1155 (8th Cir. 2014) (citation omitted).  In order for the right to be clearly established, "existing precedent must have placed the constitutional question beyond debate" so that "a reasonable official would understand that what he is doing violates that right."  *Id*. (citing *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 989 (8th Cir. 2015) (quotations omitted)).

## Discussion

*A.  Individual Defendants Against whom no Specific Allegations are Made*

Plaintiffs make specific allegations only against Acting Chief of Police Lawrence O'Toole, Director of Public Safety Charlene Deeken, Lt. Brian Rossomanno, Lt. Colonel Gerald Leyshock, Lt. Timothy Sachs, Sgt. Randy Jemerson, Sgt. Matthew Karnowski and Lt. Scott Boyher.  As to all other defendants there are no individual allegations.  All claims against the individual defendants against whom no specific allegations are made will be dismissed.

The Eighth Circuit instructs that the conduct of each defendant must be assessed independently in § 1983 actions, *see Smith*, 754 F.3d at 547, but the only facts plaintiffs have alleged in this case about each individual is that each defendant was employed by the SLMPD "during the events of September 17,

11

2017."[5]  ECF 13 at ¶¶ 9-11.  Defendants cannot be held liable merely because they were employed by the SLMPD on the night some members of that department may have violated plaintiffs' rights—liability under § 1983 requires proof of a causal link between *each* defendant and the *specific wrongs* that defendant committed. Put differently, asserting broad, sweeping allegations that a group of defendants committed constitutional misconduct is not sufficient to satisfy plaintiffs' pleading obligations as to each defendant within that group.  *See, e.g. Crew v. Minor*, No. 2:18CV27 CAS, 2018 WL 4922218, at *8 (E.D. Mo. Oct. 10, 2018) (dismissing § 1983 claim asserted against a group of police officers where plaintiff failed to specify each defendants' direct responsibility).  Absent specific and plausible factual allegations, plaintiffs' claims are merely legal conclusions couched as factual allegations.  *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true . . . the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations").  Moreover, plaintiffs' vague allegations fail to provide each defendant with "fair notice of

---

[5] Plaintiffs admit that they still do not have an accurate or comprehensive list of the officers involved in the kettling and mass arrest, and they admit that many of these defendants may have been on duty in other locations.  This is not necessarily plaintiffs' fault—plaintiffs allege that many defendant officers wore tactical gear and masks to conceal their identities, and that the SLMPD failed maintain accurate police reports from that evening.

what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at

545.  Accordingly, all claims against the defendants against whom no specific

allegations are made must be dismissed under Rule 12(b)(6), Fed. R. Civ. P.

### B. Direct § 1983 Claims against Rossomanno, Leyshock, Sachs, Jemerson, Karnowski and Boyher (Counts I, II, III, & V:  First, Fourth, Eighth, and Fourteenth Amendment Violations)

Plaintiffs allege that defendant Sachs planned and defendant Leyshock

approved the plan to arrest everyone who was in the vicinity of Washington

Avenue and Tucker Boulevard. ¶ 55.  They allege that Rossomano and Jemerson

directed people into the area, knowing that they would be arrested and knowing

that there was not probable cause to arrest them.  ¶ 50, 56.  Plaintiffs also allege

that defendants knew it was likely that the unjustified use of force would be used. ¶

56.  All of the named plaintiffs allege that they were arrested without probable

cause and that excessive force was used in their arrest.  In particular, they allege

that defendant Karnowski indiscriminately pepper sprayed the crowd, including

spraying plaintiffs and other members of the crowd who were not resisting.   ¶ 82.

Plaintiffs allege that defendants Boyher and Karnowski supervised a line of

officers who used bicycles to push people into the intersection and directed officers

to use force against and arrest members of the class. ¶ 80.  Plaintiffs further allege

that defendant Rossomanno stood within arms' length of SLMPD officers under

his command and directed them to pepper spray and beat non-resisting plaintiffs

during the course of the mass arrest.  ¶ 92.  They allege that defendant Jemerson

stood nearby while an SLMPD officer under his command struck plaintiff Street

with a baton and knocked her glasses off as she lay on the ground.  ¶ 153.

For the reasons that follow, the allegations are sufficient to state claims for

violations of § 1983 for violating plaintiffs' constitutional rights to be free from the

use of excessive force as alleged in Count II and to be free from unreasonable

searches and seizures as alleged in Count III.[6]  Defendants are not entitled to

qualified immunity because these allegations, when taken as true for purposes of

their motion to dismiss, sufficiently show that these defendants violated plaintiffs'

clearly established rights.

In determining whether a particular use of force was excessive, the

court must consider whether it was "objectively reasonable under the

circumstances, 'rely[ing] on the perspective of a reasonable officer present at

the scene rather than the '20/20 vision of hindsight.'"  *Perry v. Woodruff*

*Cty. Sheriff Dep't by & through Barker*, 858 F.3d 1141, 1145 (8th Cir. 2017)

(quoting *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012) (citation

omitted)).  Supervisory officers may be held liable only "1) if the supervisor

---

[6] Count I alleges that these actions were taken in retaliation for their First and Fourteenth Amendment rights to assembly, association, free speech, and a free press.  Defendants' various motions do not offer any specific qualified immunity or other challenges to Count I.

directly participated in the constitutional violation; 2) if the supervisor failed

or refused to intervene when a constitutional violation took place in his

presence; 3) if the supervisor's failure to train or supervise the employee

caused the constitutional violation; or 4) if the supervisor created a policy or

custom under which the constitutional violation occurred." *B.J.G. ex rel.*

*McCray v. St. Charles City Sheriff,* No. 4:08CV1178 CDP, 2010 WL

1838414, at *3 (E.D. Mo. May 6, 2010) *aff'd sub nom. B.J.G. ex rel McCray*

*v. St. Charles County Sheriff,* 400 F. App'x 127 (8th Cir. 2010); *see also*

*Aldridge v. City of St. Louis,* No. 4:18CV1677 CAS, 2019 WL 1695982, at

*6 (E.D. Mo. Apr. 17, 2019).

At the time of this event, it was "clearly established that force is least

justified against nonviolent misdemeanants who do not flee or actively resist arrest

and pose little or no threat to the security of the officers or the public." *Brown v.*

*City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009).  It was also clearly

established that it is unreasonable to use pepper spray on a non-resisting, non-

fleeing individual suspected of a non-violent misdemeanor. *Tatum v. Robinson*,

858 F.3d 544, 548-550 (8th Cir. 2017); *see also Johnson v. Carroll*, 658 F.3d 819,

828 (8th Cir. 2011) (defendants' actions in macing and throwing a non-violent,

non-threatening suspected misdemeanant to the ground were unlawful); *Krout v.*

*Goemmer*, 583 F.3d 557, 566 (8th Cir. 2009) ("[T]he use of . . . gratuitous force

against a suspect who is handcuffed, not resisting, and fully subdued is objectively unreasonable under the Fourth Amendment.").  In light of this Eighth Circuit precedent, defendant Karnowski's deployment of pepper spray against a non-resisting individual was not objectively reasonable, nor was the use of force which defendants Boyher, Rossomanno, and Jemerson allegedly supervised and directed. Accordingly, defendants are not entitled to qualified immunity on plaintiffs' excessive force claim.

Defendants argue that they had at least "arguable" probable cause to arrest plaintiffs, and so they are entitled to qualified immunity on the unlawful seizure claim.  *See White v. Jackson*, 865 F.3d 1064, 1074 (8th Cir. 2017).  But taking plaintiffs' allegations as true, as I must for purposes of this motion to dismiss, defendants had no reason to believe that the plaintiffs here were the persons who had caused property damage in a different part of downtown several hours earlier. "Probable cause exists when the totality of facts known at the time of the arrest would justify a reasonable person in believing that the individual has committed or is committing an offense."  *Baude v. City of St. Louis, et al.*, No. 4:19CV1564 RWS, ECF 44 pg. 10 (E.D. Mo. Aug. 8, 2020) (citing *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1009 (8th Cir. 2017)).

To the extent defendants rely on *Bernini v. City of St. Paul*, 665 F.3d 997, 1003 (8th Cir. 2012), to assert that they arguably believed the plaintiffs were part

16

of a *unit* that had violated the law, the argument fails.  Plaintiffs allege that the

individuals arrested at the intersection of Tucker and Washington had arrived there

either alone or in small groups, from different areas around the city, at different

times, with different purposes.  Many plaintiffs, including most of the named

plaintiffs, attempted to leave the area before the mass arrest and were prevented

from doing so.  Some who were arrested were directed into the kettle after a

dispersal order had allegedly been given.  Plaintiffs' allegations thus paint the

picture of a far more disparate, unrelated group than the organized, chanting mass

of individuals who were determined to be a "unit" in *Bernini*.  *Id.*

Moreover, unlike *Bernini*, defendants did not have any reasonable basis to

conclude that any plaintiff at the intersection was violating the law.  Plaintiffs

allege that the scene at the intersection was relatively calm—while a handful of

individuals continued to voice protests against the gathered SLMPD officers, most

individuals were simply milling about, socializing, and observing the waning

protests.  The only reports of violence or property damage that evening had

occurred several hours earlier and several blocks away from the intersection;

defendants had no reason to believe—and made no effort to determine—that any

of the arrested plaintiffs were responsible for that property damage.  Defendants

Sachs and Leyshock, who issued the order to arrest plaintiffs, and defendants

Boyher, Karnowski, Rossomanno, and Jemerson, each of whom are alleged to have

17

personally directed and overseen the unlawful arrests, are not entitled to qualified immunity at this motion to dismiss stage of the case.

Count V alleges that defendants were deliberately indifferent to plaintiffs' serious medical needs after their arrests. Plaintiffs variously allege that they were injured by pepper spray, by being thrown to the ground or beaten, and/or by being placed in overly tight restraints. They allege that they asked for medical care after they were taken to the CJC and while they were being held, but received none.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quotations and citation omitted). A pretrial detainee's right to medical treatment is similarly protected and is clearly established in this Circuit. *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009). "Deliberate indifference has both an objective and a subjective component." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir.2009). "The objective component requires a plaintiff to demonstrate an objectively serious medical need." *Id*. "The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." *Id*.

Even if plaintiffs' complaints of skin and eye irritation from pepper spray, cuts and bruises, and too-tight restraints were serious enough to constitute objectively serious medical needs, there is no allegation that any defendant knew

18

of such needs and disregarded them.  Only one of the named plaintiffs alleges that she requested medical attention while at the CJC, and none are alleged to have sought medical treatment for their injuries after their release from confinement. Plaintiff Harris allegedly told the officers who arrested him that his zip tie cuffs were too tight, and plaintiff Theis alleges that she asked the officers transporting her to the CJC for help to ease her discomfort from being pepper sprayed and zip-tied, and that she then requested care from a nurse at the CJC.  But plaintiffs have not sued any of the CJC staff, so their conclusory assertion that all the police officer defendants deliberately ignored constitutionally cognizable injuries defies plausibility.  Count V is dismissed in its entirety.

### C. Counts IV & XIV: Conspiracy to Deprive of Civil Rights under 42 U.S.C. § 1983 and Missouri State Law

In Counts IV and XIV, plaintiffs allege that the defendant officers are liable under § 1983 and under state law for conspiring to violate their civil rights. Plaintiffs' theory of liability can be traced as follows:  Defendants Leyshock, Sachs, Jemerson, and Rossomanno conspired to "design and implement" the kettling plan; defendants Boyher and Karnowski joined the conspiracy when they "directed officers under their control and supervision" to execute the kettling; the remaining mass of supervisors and officers then joined the conspiracy when they "agreed to participate" in the kettling, and these officers then committed overt acts in furtherance of the conspiracy by confining, arresting, and assaulting plaintiffs;

19

applying zip cuffs and deploying pepper spray; and maliciously initiating charges against plaintiffs.[7]

Defendants move to dismiss on several grounds.  They first contend that the intracorporate conspiracy doctrine bars conspiracy claims against police officers employed by the same municipality.  Alternatively, defendants argue that they are entitled to qualified immunity on the § 1983 conspiracy claim because the law regarding the application of the intracorporate conspiracy doctrine is unsettled and thus not "clearly established."  Defendants also argue that even aside from the intracorporate conspiracy doctrine, there is no precedent in the Eighth Circuit which clearly establishes that every officer involved in a mass arrest can be held liable for a conspiracy to commit an unlawful mass arrest.  Finally, defendants move to dismiss for failure to state a claim, asserting that plaintiffs have not alleged any facts showing a conspiratorial "agreement" between defendants Sachs and Leyshock, the defendants who allegedly developed the kettling plan, and the multitude of officers who effectuated the mass arrest.

The intracorporate conspiracy doctrine generally "allows corporate agents acting within the scope of their employment to be shielded from constituting a

---

[7] Dismissal of the other officers does not affect whether the remaining defendants can be held liable for conspiring with one another and with other officers who are no longer defendants.

conspiracy[.]" *Myers v. Starke*, 420 F.3d. 738, 742 (8th Cir. 2005).  Although the

Eighth Circuit has extended the doctrine to claims under 42 U.S.C. § 1985, *see L.L.*

*Nelson Enterprises, Inc. v. Cty. of St. Louis,* 673 F.3d 799, 812 (8th Cir. 2012), it

has not addressed whether the doctrine applies to claims of § 1983 conspiracy.  For

this reason, courts in this district have generally declined to apply the

intracorporate conspiracy doctrine at the motion to dismiss stage.  *See, e.g.,*

*Newbold v. City of Saint Louis*, No. 4:18CV1572 HEA, 2019 WL 3220405, at *6

(E.D. Mo. July 16, 2019) (collecting cases).  I echo their reasoning and will decline

to apply the intracorporate conspiracy doctrine in the absence of guidance from the

Eighth Circuit.

Next, defendants contend that the Eighth Circuit's silence on the

applicability of the intracorporate conspiracy doctrine to § 1983 claims renders the

law in this Circuit so unsettled that SLMPD officers could not have reasonably

known that they could be subject to § 1983 conspiracy liability—thus entitling

them to qualified immunity on all of plaintiffs' conspiracy claims.  *See, e.g.,*

*Baude*, No. 4:19CV1564 RWS, at pg. 25.  I respectfully disagree.  The Eighth

Circuit has consistently recognized § 1983 conspiracy claims against police

officers from the same police department if those police officers conspire to violate

clearly established constitutional rights.  *See, e.g., Small v. McCrystal*, 708 F.3d

997, 1010 (8th Cir. 2013) (affirming the denial of qualified immunity in a § 1983

conspiracy claim against two police officers alleged to have conspired to fabricate reports seeking arrest warrants); *S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs*, 725 F.3d 843, 852-54 (8th Cir. 2013) (affirming the denial of qualified immunity in a § 1983 conspiracy claim against SLMPD officers alleged to have conspired to prevent plaintiff from filing a § 1983 claim following her false arrest). Accordingly, on September 17, 2017, a reasonable SLMPD officer would have known that he or she could be subjected to § 1983 conspiracy liability by conspiring with other SLMPD officers to violate plaintiffs' clearly established constitutional rights. Defendants are not entitled to qualified immunity on plaintiffs' § 1983 claim by virtue of the intracorporate conspiracy doctrine.

As for plaintiffs' state law conspiracy claim, Missouri law recognizes that "[t]here can be no conspiracy between an agent and a principal." *Metts v. Clark Oil & Refining Corp.*, 618 S.W.2d 698, 702 (Mo. App. E.D. 1981). However, the Court finds no Missouri precedent supporting defendants' contention that the intracorporate conspiracy doctrine applies to bar conspiracy claims asserted against police officers sued in their individual capacities, and not as agents of their municipal employer. I will decline to dismiss the state law conspiracy claim on this basis as well.

In addition, Counts IV and XIV properly allege facts supporting the elements of conspiracy. In order to prove a § 1983 and Missouri state law

22

conspiracy, plaintiffs must show: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *Livers v. Schenck*, 700 F.3d 340, 360–61 (8th Cir. 2012); *see also Lenderman*, 725 F.3d at 850. "[P]laintiffs must allege 'specific facts' showing 'there was a mutual understanding, or a meeting of the minds' among the alleged conspirators." *Brown v. City of Pine Lawn,* No. 4:17CV1542 ERW, 2018 WL 950211, at *6 (E.D. Mo. Feb. 20, 2018) (quoting *Schwartz v. Pridy*, 874 F.Supp. 256, 258 (8th Cir. 1995) (citation omitted)); *White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008).

Plaintiffs allege that defendants Boyher, Karnowski, Rossomanno, and Jemerson participated in the conspiracy and committed overt acts in furtherance thereof, as they allegedly directed lines of officers to form the kettle around plaintiffs and use force against them in accordance with defendant Sachs' plan. Plaintiffs have thus satisfied their burden of alleging "specific facts showing . . . a meeting of the minds" relative to the conspiracy. *Brown*, 2018 WL 950211, at *6. I will deny the defendants' motion to dismiss Counts IV and XIV.

### D. Counts VII – XIII:  Tort Claims under Missouri State Law

Plaintiffs bring tort claims of battery, false arrest, false imprisonment, abuse of process, malicious prosecution, negligent infliction of emotional distress and

conversion against the individual officers and the City itself.  As threshold matters, the City invokes sovereign immunity as a reason to dismiss these counts as to it, and the other defendants invoke official immunity.  I conclude that both arguments must be rejected.

Sovereign immunity protects public entities from suit unless it is waived or an exception applies.  *Metro. St. Louis Sewer Dist. V. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 921-22 (Mo. 2016).  Missouri law provides an exception to sovereign immunity when a political subdivision purchases liability insurance to cover certain tort claims.  R.S.Mo. § 537.610.1; *see also Hammer v. City of Osage Beach*, 318 F.3d 832, 841 (8th Cir. 2003).  Plaintiffs must plead facts showing this exception applies.  *Epps v. City of Pine Lawn*, 353 F.3d 588, 594 (8th Cir. 2003).

In each of their state law claims, plaintiffs plead that the City obtains insurance from the Public Facilities Protection Corporation (PFPC), a not-for-profit corporation into which the City pays yearly funds; that the funds are later disbursed by the corporation to pay claims against the City; and that, alternatively, the City's relationship with the PFPC serves as a self-insurance plan because of language in the 2017 Comprehensive Annual Financial Report for the City of St. Louis stating that its "sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters."

*See, e.g.,* ECF 13 at ¶¶ 339-341.  The motion to dismiss the state law claims on the basis of sovereign immunity is denied.

Plaintiffs do not appear to dispute the City's contention that it cannot be held liable for punitive damages as a matter of law.  RSMo. § 537.610.3  The City is correct.  *See A.H. v. St. Louis Cty.*, No. 4:14CV2069 CEJ, 2015 WL 4426234, at *8 (E.D. Mo. July 17, 2015).  Accordingly, I will strike plaintiffs' requests for punitive damages against the City on the state law claims.

The individual defendants assert the defense of official immunity to the state law claims.  "Official immunity . . . protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts."  *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. banc 2019) (citation and internal quotation marks omitted).  "An officer's decision to use force in the performance of his duties is discretionary."  *Quraishi v. St. Charles Cty.,*  No. 4:16CV1320 NAB, 2019 WL 2423321, at *11 (E.D. Mo. June 10, 2019) (citing *Boude v. City of Raymore*, 855 F.3d 930, 935 (8th Cir. 2017) (citation omitted)).  Official immunity does not apply to discretionary acts done in bad faith or with malice.  *Id*; *Green v. Lebanon R-III Sch. Dist.*, 13 S.W.3d 278, 284 (Mo. banc 2000)).

Plaintiffs allege that defendants acted with malice in carrying out the kettling and arrests. They cite the contrast between the SLMPD's militarized response to the *Stockley* protests and their response to protests that do not relate to police misconduct, inflammatory and disparaging remarks made by SLMPD officers before, during, and after the kettling, and the unnecessary use of force against non-resisting plaintiffs. These allegations sufficiently "describe a conscious abuse of official duty and power and an intent to injure that give rise to a reasonable inference of malice or bad faith, and are adequate to survive a motion to dismiss." *Aldridge,* 2019 WL 1695982, at *14.

The remaining defendants all also summarily argue that Counts VII through XIII alleging Missouri torts of battery, false arrest, false imprisonment, abuse of process, malicious prosecution, negligent infliction of emotional distress and conversion must be dismissed for failure to state a claim. I agree that plaintiffs have failed to state a claim against any of the remaining defendants for the counts alleging abuse of process, malicious prosecution, and conversion. I will therefore dismiss Counts X, XI, and XIII but will deny the motion as to the remaining counts.

As to battery (Count VII), plaintiffs allege that defendant Karnowski indiscriminately pepper sprayed them and that the other supervisors directed and supervised line officers to batter plaintiffs; plaintiffs thus properly allege the

unconsented touching required for that tort, and the facts necessary to sustain a claim for supervisory liability. *Quraishi,* 2019 WL 2423321, at *11. As to the false arrest and false imprisonment claims (Counts VIII and IX), plaintiffs allege that they were arrested without legal justification or probable cause and that they were restrained with zip ties and transported to jail. These allegations are sufficient for both claims, and the complaint sufficiently alleges that the remaining defendants either made the arrests or supervised or ordered them. *Day v. Wells Fargo Guard Serv. Co.,* 711 S.W.2d 503, 504–05 (Mo. 1986); *Brown v. City of Pine Lawn,* No. 4:17CV01542 ERW, 2018 WL 950211, at *7 (E.D. Mo. Feb. 20, 2018) (citing *Sastry v. City of Crestwood*, 4:10CV215, 2011 WL 2938163 (E.D. Mo. July 19, 2011)).

The result is different with regard to the claims of abuse of process and malicious prosecution (Counts X and XI). A claim for abuse of process requires the plaintiff to allege "1) the defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; 2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and 3) damage resulted." *Ritterbusch v. Holt*, 789 S.W.2d 491, 493 (Mo. banc 1990) (citations omitted); *see also Nitcher v. Does*, 956 F.2d 796, 799 (8th Cir. 1992). Under Missouri law, the elements of malicious prosecution are: "1) commencement of an earlier suit against plaintiff; 2) instigation of the suit by

defendant; 3) termination of the suit in plaintiff's favor; 4) lack of probable cause for the suit; 5) malice by defendant in instituting the suit; and 6) damage to plaintiff resulting from the suit." *State ex rel. Police Ret. Sys. of St. Louis v. Mummert*, 875 S.W.2d 553, 555 (Mo. 1994). Plaintiffs do not allege any facts that show that that any defendant had any role in the initiation of proceedings against any plaintiff. Although plaintiffs allege that every defendant "assisted in the filing of charges against plaintiffs," the factual allegations do not show that defendants' interactions with plaintiffs went beyond their arrests. There is no allegation that the defendants were involved in the issuance of formal charges.[8] Both Counts X and XI are dismissed.

Defendants argue that plaintiffs' claim for negligent infliction of emotional distress (Count XII) must be dismissed because the conduct which allegedly caused the emotional distress mirrors the conduct asserted in plaintiffs' battery claim, relying on *K.G. v. R.T.R.,* 918 S.W.2d 795, 799 (Mo. banc 1996), as quoted in *State ex rel. Halsey v. Phillips*, 576 S.W.3d 177 (Mo. banc 2019). While this may be true of claims for *intentional* infliction of emotional distress, plaintiffs only allege a *negligent* infliction claim, so *K.G.* and *Halsey* do not bar this claim.

---

[8] Although plaintiffs were given summonses to appear in court when they were released, they do not allege that defendants were involved in the issuance of those summonses. The summonses and all charges against plaintiffs were dismissed before any court appearances.

Negligent infliction of emotional distress claims require plaintiffs to plead and prove:  1) the defendants "realized or should have realized that their conduct involved an unreasonable risk of causing distress;" and 2) the plaintiff "suffered emotional distress or mental injury that is medically diagnosable and sufficiently severe to be medically significant." *Gordon v. City of Kansas City,* 241 F.3d 997, 1004 (8th Cir. 2001).  Assuming the truth of plaintiffs' allegations, defendants should have realized that their conduct before and during the kettling would distress plaintiffs.  Further, two of the named plaintiffs suffered lasting psychological damage that required counseling.  Accordingly, the motion to dismiss Count XII is denied.

I will grant the motion to dismiss as to conversion (Count XIII), because plaintiffs' claim that "SLMPD officers seized, discarded, or destroyed property owned by some Plaintiffs" is conclusory and provides no notice of who allegedly took what from whom.  Conversion is "any distinct act of dominion wrongfully exerted over one's property, in denial of his right or inconsistent with it." *In re Estate of Boatright*, 88 S.W.3d 500, 506 (Mo. Ct. App. 2002).  Plaintiff Street alleges that unknown defendant officers took her glasses when she was arrested, and that she was unable to see until she got them back when she was released. ECF 13 at ¶ 157.  Plaintiff Harris alleges officers removed his cellphone from his hand and threw it on the ground during his arrest, and that it was not returned.  ¶

172.   Plaintiff Warrington alleges officers picked up her cellphone off the ground to stop a recording, and that they "removed" her backpack, although she does not allege that either item was subsequently taken.  ¶ 263.  Plaintiffs do not assert any of these allegations against any specific defendant, and the allegations are not sufficient to support a claim against any of the remaining defendants for conversion.  Count XVIII is dismissed.

### E.  Municipal Liability

In Count VI, plaintiffs allege that the City of St. Louis is liable under 42 U.S.C. §1983 for the individual officers' violations of plaintiffs' constitutional rights as alleged in the Counts I through V.  A municipality cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory—that is, a municipality cannot be held liable solely because it employs a tortfeasor.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  In order to state a proper claim for §1983 liability against the City, the plaintiffs must show that a constitutional violation resulted from 1) an official municipal policy; 2) an unofficial custom; or 3) a deliberately indifferent failure to train or supervise.  *Corwin v. City of Independence,* 829 F.3d 695, 699-700 (8th. Cir. 2016).

Plaintiffs allege that the following SLMPD policies, practices, or customs caused their constitutional injuries:

a.  SLMPD officers' routine use of excessive force when policing protests, especially those at which police brutality is being protested;

b.  SLMPD's policy or custom of issuing vague and even contradictory dispersal orders without giving an opportunity to comply;

c.  SLMPD's policy of arbitrarily declaring unlawful assemblies in the absence of any threat of force or violent activity that provides no notice to citizens of unlawful conduct;

d.  SLMPD's custom, policy, or practice of violating the Fourth Amendment by regularly conducting unreasonable seizures and arresting individuals without probable cause.

ECF 13 at ¶ 325.  Plaintiffs additionally allege that the SLMPD's failure to train and supervise its officers with respect to their use of force caused their constitutional injuries.  The City moves to dismiss, asserting that plaintiffs fail to adequately plead a plausible *Monell* claim under either an unconstitutional custom or failure to train theory.

In the context of §1983 *Monell* liability, the term "policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."  *Corwin,* 829 F.3d at 700 (internal quotation marks and citation omitted).  A "custom" refers to a practice that, although not formally approved as a policy, "is so widespread as to

have the force of law." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397,

404 (1997).  To plead a claim for "custom" liability, plaintiffs must show:  1) the

existence of a continuing, widespread, persistent pattern of unconstitutional

misconduct by the governmental entity's employees; 2) deliberate indifference to

or tacit authorization of such conduct by the governmental entity's policymaking

officials after notice to the officials of that misconduct; and 3) that they were

injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom

was a moving force behind the constitutional violation.  *Johnson v. Douglas Cty.*

*Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Plaintiffs allege that the defendant officers' constitutional violations during

the kettling and mass arrest are part of a pattern and practice of SLMPD officers

using excessive force and deploying chemical munitions without warning against

non-violent citizens protesting issues related to police brutality.  They reference

fifteen separate instances between October 2014 and September 2017 in which St.

Louis police used excessive force and deployed chemical agents against civilian

protestors and nearby observers.  These presumptively true factual allegations

reflect the existence of a pattern of unconstitutional misconduct with regard to

excessive force and use of chemical agents, and are sufficient for those claims to

withstand dismissal on the pleadings.  *See, e.g. Alston v. City of St. Louis*, No.

4:18CV1569, (E.D. Mo. July 3, 2019), Doc. No. 53 at 6-7 (*citing Laird v. City of*

*Saint Louis,* No. 4:18CV1567 AGF, 2019 WL 2647273 at *6 (E.D. Mo. June 27, 2019)); *Rose v. City of St. Louis, Missouri*, 4:18CV1568 RLW, 2019 WL 4602829, at *5 (E.D. Mo. Sept. 23, 2019).[9]   Plaintiffs also sufficiently allege that the City had notice of the past unconstitutional conduct by virtue of a settlement agreement the City entered into in March 2015 in *Templeton*.[10]   The Consent Decree in that case provided that the City would refrain from enforcing any rule, policy, or practice granting officials discretion to utilize chemical agents without warning or for the purpose of deterring citizens from exercising their constitutional rights, which mirrors some of the misconduct alleged in this case.  Plaintiffs' Amended Complaint further alleges that various policymakers had notice of the SLMPD's alleged misconduct.  Finally, plaintiffs plainly allege that the City's policies or customs were the moving force behind the alleged constitutional injuries they suffered.  As plaintiffs' allegations are sufficient to plead a custom or policy, the City's motion to dismiss Count VI is denied.

---

[9] *Burbridge v. City of St. Louis*, 430 F.Supp.3d 595, 620 (E.D. Mo. 2019), relied on by defendants, was decided on summary judgment and so is distinguishable from this motion to dismiss case.  It concluded that plaintiffs did not provide evidence sufficient to show a custom, and relied on the Fifth Circuit decision of *Webster v. Houston* 735 F.2d 838, 842 (5th Cir. 1984) (en banc)).  *Webster* appears to adopt a test which has not been adopted in the Eighth Circuit and which requires the conduct to have occurred some undefined, yet statistically significant number of times in the past.  I need not determine at this time if that is an appropriate evidentiary standard, as this motion to dismiss is directed to pleadings, not evidence.
[10] *Templeton v. Dotson*, No. 4:14CV2019 CEJ at pg. 3 (E.D. Mo. Dec 11, 2014).

Plaintiff's claim based on failure to train or supervise also survives dismissal.  This theory requires plaintiffs to plead facts sufficient to show that: 1) the City's police officer training and supervision practices were inadequate; 2) the City was deliberately indifferent to the rights of others in adopting these practices, such that the City's failure to train and supervise was a result of deliberate and conscious choices; and 3) the City's training and supervision deficiencies caused Plaintiff's constitutional deprivation.  *Ulrich v. Pope Cty.,* 715 F.3d 1054, 1061 (8th Cir. 2013).  Ultimately, plaintiffs must prove that the City "'had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation.'"  *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018) (quoting *Livers v. Schenck*, 700 F.3d 340, 356 (8th Cir. 2012)).

Plaintiffs again point to the *Templeton* settlement agreement, which memorialized several changes to the SLMPD's use of force and supervision procedures in order to prevent future constitutional injury.  Plaintiffs allege that SLMPD officers were not trained in procedures necessary to comply with the settlement agreement.  ECF 13 at ¶ 38.  Plaintiffs further allege facts which demonstrate that even after the *Templeton* consent decree, SLMPD officers repeatedly used excessive force against protestors in a similar manner as was challenged in *Templeton*.  ECF 13 at ¶ 326.  From these facts, a plausible inference could be drawn that the City failed to train and supervise its officers in proper use

of force procedures, that said failure was the result of a conscious and deliberate choice, and that the failure to train resulted in their constitutional injuries. The City's motion to dismiss Count VI as to plaintiffs' failure to train or supervise claim is denied.

### F. Count XVI: Unconstitutionally Vague City Ordinances

Plaintiffs assert procedural due process claims against all defendants, alleging that two city ordinances which purportedly formed the bases of their arrests are unconstitutionally vague on their face and as applied to plaintiffs. Specifically, plaintiffs allege that St. Louis Ordinances 15.52.010 and 17.16.275 grant defendants unbridled discretion to subject citizens to arrest for protected constitutional activity without providing fair notice or an adequate opportunity to comply.

A statute or ordinance violates the Due Process Clause if it fails to give fair warning that the allegedly violative conduct was prohibited. *Stahl v. City of St. Louis,* 687 F.3d 1038, 1040 (8th Cir. 2012). "Such a law offends due process because it 'may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits.'" *Id*. (citation omitted)). When a law fails to provide sufficient guidance, it "entrusts lawmaking to the moment-to-moment judgment of the policeman on his beat, . . . furnishes a convenient tool for harsh and discriminatory enforcement by prosecuting officials against particular groups

deemed to merit their displeasure, . . . and confers on police a virtually

unrestrained power to arrest and charge persons with a violation." *Kolender v.*

*Lawson*, 461 U.S. 352, 360 (1983) (internal citations and quotation marks omitted).

Plaintiffs have plausibly alleged that both ordinances could be interpreted as

providing police officers with the discretion to arrest citizens for constitutionally-

protected conduct without providing fair notice to a reasonable person as to how to

comply with the law.[11]  Plaintiffs allege that defendants have relied on the

ordinances as a basis for the mass arrests and have alleged facts indicating that the

ordinances were arbitrarily enforced to plaintiff's constitutional injury.  ECF 14 at

¶¶ 423-25.  These allegations are sufficient to state a claim and so the City's

motion to dismiss Count XVI is denied.

G. *Claims Against Defendants O'Toole and Deeken based on City Charter*

In Count XVII, plaintiffs assert that defendants Deeken, the Director of

Public Safety, and O'Toole, the Acting Chief of Police, are vicariously liable for

all of the alleged misconduct of the individual defendants by virtue of Article VII,

Section 5 of the Charter of the City of St. Louis.  Section 5 reads:  "Each head of a

department, office or division shall be responsible for the acts or omissions of

---

[11] The Court may take judicial notice of the ordinances under Fed. R. Evid. 201; defendants' argument that the claim should be dismissed because plaintiffs did not include the text of the ordinances in their First Amended Complaint fails.

officers and employees appointed by him, and may require bonds or other

securities from them to secure himself."  Charter, Art. VII § 5.  Section 5 of the

Charter has been in effect since 1914.  Despite many cases filed since then alleging

police use of excessive force or other police misconduct, neither the parties nor the

Court can identify a single instance in which Section 5 has been held by a Missouri

court to impose vicarious liability for the acts of police officers such as is alleged

here.  Because this state-law claim raises novel and complex issues, I will exercise

my discretion and decline to consider it, as allowed by 28 U.S.C. § 1367(c)(1).

Plaintiffs' claim raises statutory construction issues and conflict-of-law

questions that would be more appropriately resolved first by Missouri state courts.

For example, defendants have asserted defenses that would require this Court to

assess 1) the intent of St. Louis officials when they drafted Section 5 in 1914; 2)

the precise contours of Missouri law regarding officials' vicarious liability; 3)

whether and to what extent Section 5 conflicts with Missouri law; 4) whether

Missouri law preempts the Charter; and 5) the effects of preemption on the validity

of the Charter itself.  *See Missouri Bankers Ass'n, Inc. v. St. Louis Cnty.*, 448

S.W.3d 267, 272 (Mo. banc 2014); *Coop. Home Care, Inc. v. City of St. Louis*, 514

S.W.3d 571, 578 (Mo. 2017).  This Court is not the proper forum to litigate

complex and unsettled questions of state law preemption over obscure municipal

ordinances.  I therefore decline to exercise supplemental jurisdiction over Count XVII and will dismiss the claim without prejudice.

## Conclusion

For the reasons set out above, all claims against the officers against whom no specific allegations were made are dismissed without prejudice.  Plaintiffs' deliberate indifference to medical needs claim (Count V) is dismissed in its entirety.  The state-law claims of abuse of process, malicious prosecution, and conversion (Counts X, XI and XIII) are also dismissed for failure to state a claim. The claims for punitive damages against the City of St. Louis are stricken, but the City's motion to dismiss is otherwise denied.  Finally, Count XVII, which is the only claim against defendants O'Toole and Deeken, is a novel claim based on state law and the City charter over which I decline to exercise jurisdiction under 28 U.S.C. § 1367(c)(1), so it is also dismissed without prejudice.

The claims and defendants remaining in this case are:

- Counts I, II, III, IV, XIV and XV against defendants Lt. Brian Rossomanno, Lt. Col. Gerald Leyshock, Lt. Timothy Sachs, Sgt. Randy Jemerson, Sgt. Matthew Karnowski and Lt. Scott Boyher;

- Count VI seeking to impose municipal liability on the City of St. Louis for the actions taken by the remaining individual defendants in Counts I, II, III and IV; and

- Counts VII, VIII, IX, XII and XVI against the City and defendants Rossomanno, Leyshock, Sachs, Jemerson, Karnowski and Boyher. Accordingly,

**IT IS HEREBY ORDERED** that the defendants' Motions to Dismiss [ECF 19, 21, 23, and 25] are **GRANTED in part and denied in part** as set forth herein; all defendants except for the City of St. Louis and individual defendants Leyshock, Sachs, Boyher, Rossomanno, Karnowski, and Jemerson are hereby **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that Counts V, X, XI, and XIII are dismissed in their entirety, with prejudice.

**IT IS FURTHER ORDERED** that all claims for punitive damages from the City of St. Louis are stricken.

**IT IS FURTHER ORDERED** that supplemental jurisdiction under 28 U.S.C. § 1367 over Count XVII is denied and Count XVII is dismissed without prejudice.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of February, 2021.

39