# United States Court of Appeals
*For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
www.ca8.uscourts.gov

July 27, 2022

Mr. Brandon David Laird
CITY COUNSELOR'S OFFICE
314 City Hall
1200 Market Street
Saint Louis, MO  63103-0000

   RE:  21-1524  Alicia Street, et al v. Gerald Leyshock, et al

Dear Mr. Laird:

  The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

  Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

               Michael E. Gans
               Clerk of Court

BNW

Enclosure(s)

cc:  Ms. Alicia Anne Campbell
   Mr. John E Campbell
   Ms. Catherine A. Dierker
   Ms. Abby Joe Duncan
   Mr. Javad Mohammed Khazaeli
   Mr. Gregory J. Linhares
   Mr. James R. Wyrsch

  District Court/Agency Case Number(s):   4:19-cv-02590-CDP

# United States Court of Appeals
## *For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

July 27, 2022

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

  RE:  21-1524  Alicia Street, et al v. Gerald Leyshock, et al

Dear Sir or Madam:

  A published opinion was filed today in the above case.

  Counsel who presented argument on behalf of the appellants and appeared on the brief was Brandon David Laird, of Saint Louis, MO. The following attorney(s) appeared on the appellants brief; Abby Joe Duncan, of Saint Louis, MO., Robert Henry Dierker, Jr., of Saint Louis, MO., Catherine A. Dierker, of Jefferson City, MO.

  Counsel who presented argument on behalf of the appellees and appeared on the brief was Javad Mohammed Khazaeli, of Saint Louis, MO. The following attorney(s) appeared on the appellee brief; James R. Wyrsch, of Saint Louis, MO., Alicia Anne Campbell, of Saint Louis, MO., Kiara N. Drake, formerly of Saint Louis, MO., John Campbell, of Saint Louis, MO.

  The judge who heard the case in the district court was Honorable Catherine D Perry. The judgment of the district court was entered on February 22, 2021.

  If you have any questions concerning this case, please call this office.

                Michael E. Gans
                Clerk of Court

BNW

Enclosure(s)

cc:  MO Lawyers Weekly

  District Court/Agency Case Number(s):  4:19-cv-02590-CDP

# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1524
_____

Alicia Street; Ronald Harris; Fudail McCain; Ashley Theis; Nicole Warrington, on behalf of themselves and a class of similarly situated persons,

*Plaintiffs - Appellees*,

v.

Gerald Leyshock, Lieutenant Colonel; Scott Boyher, Lieutenant; Timothy Sachs, Lieutenant; Randy Jemerson, Sergeant; Matthew T. Karnowski, Sergeant; Brian Rossomanno, Sergeant,

*Defendants - Appellants*,

City of St. Louis, Missouri,

*Defendant*.
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 12, 2022
Filed: July 27, 2022
_____

Before COLLOTON, KELLY, and KOBES, Circuit Judges.
_____

COLLOTON, Circuit Judge.

This is a third appeal to this court involving litigation arising from a police response to protest activity in St. Louis on September 17, 2017.  In this case, as in the others, plaintiffs allege that St. Louis police officers boxed civilians into a downtown intersection in a maneuver characterized as a "kettle."  Some persons caught in this kettle allegedly were beaten, pepper sprayed, handcuffed with zip-ties, and arrested.  This court has issued two decisions in cases brought by different plaintiffs against the same six police officers.  *Faulk v. City of St. Louis*, 30 F.4th 739 (8th Cir. 2022); *Baude v. Leyshock*, 23 F.4th 1065 (8th Cir. 2022).

The plaintiffs here—Alicia Street, Ronald Harris, Fudail McCain, Ashley Theis, and Nicole Warrington—were among those arrested at the intersection.  They sued the six officers under 42 U.S.C. § 1983, alleging that the officers acted as supervisors and played a role in orchestrating or executing the kettling.  As relevant here, the plaintiffs alleged violations of their right to be free from unreasonable seizures, including the use of excessive force, and alleged a conspiracy among the officers to deprive the plaintiffs of their civil rights.  The officers moved to dismiss the claims based on qualified immunity.  The district court denied the motion with respect to these claims, and the officers appeal on three principal issues.

The officers first argue that they are entitled to qualified immunity on the claims relating to the plaintiffs' arrests. The plaintiffs claim that these six supervisory officers caused the plaintiffs to be arrested without probable cause.  The officers maintain that the arrests were supported by at least arguable probable cause, and that qualified immunity therefore applies.  *See Ross v. City of Jackson*, 897 F.3d 916, 921 (8th Cir. 2018).

In *Baude*, this court concluded that the officers were not entitled to qualified immunity based on allegations virtually identical to those in this case.  Officers may

-2-

have probable cause to order a mass arrest if they "have 'grounds to believe all arrested persons were a part of [a] *unit* observed violating the law.'" 23 F.4th at 1072 (quoting *Bernini v. City of St. Paul*, 665 F.3d 997, 1003 (8th Cir. 2012)). *Baude* determined, however, that the complaint and video recording submitted by the plaintiff plausibly alleged that the atmosphere at the intersection was generally peaceful, with individuals and scattered groups casually "gawking and milling about." *Id.* at 1072-73. Taking those allegations as true, the court concluded that the officers were not entitled to qualified immunity. This appeal arises in the same procedural posture, and the complaint includes the same relevant factual allegations and attached video recording, so *Baude* precludes a grant of qualified immunity on the arrest claims in this case as well.

Second, the officers assert that even if the arrests were unlawful, they are entitled to qualified immunity on the plaintiffs' claims of excessive force. *See Gerling v. City of Hermann*, 2 F.4th 737, 744 (8th Cir. 2021). The plaintiffs do not allege that these officers personally used force against them, and § 1983 does not allow for vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). In an action under § 1983, a supervisor may be liable only for his own misconduct. *Id.* at 677. We conclude that the allegations in this case are insufficient to establish a plausible claim that the defendant officers violated any plaintiff's clearly established right against the use of excessive force.

The complaint does not adequately allege that any defendant officer is responsible for the use of excessive force against a plaintiff. Plaintiff Street alleges that an officer "standing behind Defendant Jemerson" jabbed her with a baton and knocked off her glasses, but she does not allege that Jemerson caused that one-time use of force. The other plaintiffs make no allegation that any defendant used force against them or even was present when the plaintiffs were subjected to force. The complaint alleges that defendant Karnowski used force against an unidentified citizen, and that he and defendant Boyher (on one occasion) and defendant

-3-

Rossomanno (on another occasion) directed the use of force against other non-parties, but there is no allegation that these defendants used force or directed the use of force against any of the plaintiffs.

In *Baude*, this court rejected a claim of qualified immunity on the ground that the plaintiff alleged that "supervisory officers observed or intended the use of excessive force," and that "the supervisors issued orders allowing their subordinates to use excessive force against an allegedly peaceful crowd." 23 F.4th at 1074. The complaint in this case, however, does not allege that the defendants issued orders to use excessive force against the crowd as a whole or against the plaintiffs in particular. Nor does it allege that the supervisory officers observed or intended the use of excessive force as to the crowd as a whole or the plaintiffs in particular. Allegations that three supervisory officers used or directed the use of force in three discrete instances are insufficient to support a reasonable inference that the six supervisory officers were deliberately indifferent to the use of excessive force against anyone in the crowd at any time, including against the plaintiffs here. The supervisory officers cannot be held liable for the alleged misdeeds of other police officers on a theory of *respondeat superior*. We therefore conclude that the officers are entitled to qualified immunity on the claims alleging use of excessive force.

The partial dissent invites a comparison of the complaint in *Baude* with the complaint in this case. In determining the scope of circuit precedent, however, we are guided by the previous opinion of the court itself. As noted, the *Baude* opinion said that the key allegations of that complaint were that "supervisory officers observed or intended the use of excessive force" and that "supervisors issued orders allowing their subordinates to use excessive force against an allegedly peaceful crowd." 23 F.4th at 1074. The complaint in this case does not plausibly allege that the defendants took the actions described in *Baude* regarding the use of excessive force.

Finally, the officers assert that they are entitled to qualified immunity on the plaintiffs' conspiracy claims, because the unsettled nature of the intracorporate

-4-

conspiracy doctrine means that they did not violate a clearly established right.  The intracorporate conspiracy doctrine provides that "a local government entity cannot conspire with itself through its agents acting within the scope of their employment." *L.L. Nelson Enters. v. County of St. Louis*, 673 F.3d 799, 812 (8th Cir. 2012).  The Supreme Court in *Ziglar v. Abassi*, 137 S. Ct. 1843 (2017), held that officials who allegedly conspired to interfere with civil rights under 42 U.S.C. § 1985(3) were entitled to qualified immunity, because the unresolved scope of the intracorporate conspiracy doctrine meant that reasonable officers "would not have known with any certainty that the alleged agreements were forbidden by law." *Id*. at 1869.  In *Faulk*, this court explained that neither the Supreme Court nor this court had "definitively addressed the issue whether the doctrine applies to § 1983 conspiracy claims," and observed that two other circuits had held that the doctrine does apply.  30 F.4th at 749.  Accordingly, the officers who allegedly conceived or executed the "kettling plan" were entitled to qualified immunity on the conspiracy claim.  *Id*. at 750.  The same result obtains here.

In sum, we reverse the district court's order denying the officers' motion to dismiss with respect to the plaintiffs' claims alleging use of excessive force and conspiracy to deprive civil rights.  We affirm the order with respect to the claims alleging unlawful arrest.

KELLY, Circuit Judge, concurring in part and dissenting in part.

I agree that the officers are entitled to qualified immunity on the conspiracy claim and that <u>Baude</u> precludes a grant of qualified immunity on the unlawful arrest claims.  In my view, however, <u>Baude</u> also precludes a grant of qualified immunity on the excessive force claims.

The court acknowledges that in <u>Baude</u>, a case arising from the same incident and brought against the same defendant officers, we rejected a claim of qualified

-5-

immunity on the plaintiff's excessive force claims because the complaint there alleged that "supervisory officers observed or intended the use of excessive force," and that "the supervisors issued orders allowing their subordinates to use excessive force against an allegedly peaceful crowd." 23 F.4th at 1074. The court attempts to distinguish the excessive force allegations here from those in Baude by asserting that, unlike in Baude, the complaint "does not allege that the defendants issued orders to use excessive force against the crowd as a whole or against plaintiffs in particular." But a review of the complaints from both cases reveals that the factual allegations pertaining to excessive force are almost identical. Using nearly the exact same words as in Baude, the complaint here likewise alleges facts supporting the conclusion that the supervisory officers observed or intended the use of excessive force,[1] and issued orders allowing their subordinates to use excessive force.[2]

---

[1] Compare Baude v. City of St. Louis, No. 4:18-cv-01564-RWS, Doc. 34 ¶ 57 (E.D. Mo. Feb. 15, 2019) ("Baude Complaint") ("Defendant Sachs came up with the plan to arrest everyone present. He presented his plan to Defendant Leyshock, who approved the plan. The plan was to not let anyone leave that was in the vicinity of Washington Avenue and Tucker Boulevard." (citations omitted)), with Street v. Leyshock, No. 4:19-cv-02590-CDP, Doc. 13 ¶ 55 (E.D. Mo. Jan. 15, 2020) ("Street Complaint") ("Defendant Sachs came up with the plan to arrest everyone present. He presented his plan to Defendant Leyshock, who approved the plan. The plan was to not let anyone leave that was in the vicinity of Washington Avenue and Tucker Boulevard." (citations omitted)); compare also Baude Complaint ¶ 58 ("Defendants Leyshock, Sachs, Rossomanno, and Jemerson knew or should have known that their plan to kettle the people that SLMPD directed to the intersection of Washington and Tucker and arrest them, merely for being present, would result in arrests without probable cause and the unjustified use of force to effectuate said arrests."), with Street Complaint ¶ 56 ("Defendants Leyshock, Sachs, Rossomanno, and Jemerson knew or should have known that their plan to kettle the people that SLMPD directed to the intersection of Washington and Tucker and arrest them, merely for being present, would result in arrests without probable cause and the unjustified use of force to effectuate said arrests.").

[2] Compare Baude Complaint ¶ 52 ("Defendants Rossomanno and Jemerson directed people to the intersection of Washington and Tucker, where the Defendants

-6-

The court dismisses the similarities between the factual allegations in the two complaints by asserting that "[i]n determining the scope of circuit precedent . . . we are guided by the previous opinion of the court itself." It then points to the Baude court's summary of the excessive force allegations in that case—i.e., that the complaint there alleged that "supervisory officers observed or intended the use of excessive force" and that "the supervisors issued orders allowing their subordinates to use excessive force against an allegedly peaceful crowd"—and asserts that the complaint in this case did not make such allegations. But as noted above, the specific allegations underlying the Baude court's description are also in the complaint here. The court does not identify any factual allegations related to excessive force that were raised in Baude but not in the instant case. It may be true that we typically look only to the previous opinion of the court and not the underlying record when assessing

---

had already decided that they would kettle, pepper spray, beat, and illegally arrest Plaintiff."), with Street Complaint ¶ 50 ("Defendants Rossomanno and Jemerson directed people to the intersection of Washington and Tucker, where the Defendants had already decided that they would kettle, pepper spray, beat, and illegally arrest Plaintiff."); compare also Baude Complaint ¶ 82 ("Defendants Boyher and Karnowski were directing these officers. Rather than defuse the situation, Defendants Boyher and Karnowski directed the officers under their command to use force against the peacefully assembled people and supervised the unlawful arrests."), with Street Complaint ¶ 80 ("Defendants Boyher and Karnowski were directing these Defendant Officers. Rather than defuse the situation, Defendants Boyher and Karnowski directed Defendant Officers under their command to use force against the peacefully assembled people and supervised the unlawful arrests."); compare also Baude Complaint ¶ 93 ("Defendant Rossomanno can be seen on video within arms-length of SLMPD officers who were pepper spraying and beating peaceful and compliant citizens. Rather than instructing these officers to cease violating the civil right of the citizens, Defendant Rossomanno took control of the situation and directed the officers' unlawful actions."), with Street Complaint ¶ 92 ("Defendant Rossomanno can be seen on video within arms-length of SLMPD officers who were pepper spraying and beating peaceful and compliant citizens. Rather than instructing these officers to cease violating the civil right of the citizens, Defendant Rossomanno took control of the situation and directed the officers' unlawful actions.").

whether precedent controls a new case with a different set of facts.  But here, the two cases—<u>Baude</u> and this one—concern the same underlying events and the same defendants.  To refuse to review the relevant records under such circumstances risks creating the undesirable result seen here: that two sets of plaintiffs receive disparate treatment despite raising the same claims arising from the same events supported by the same factual allegations against the same defendants.

Because the excessive force allegations in <u>Baude</u> are indistinguishable from those here, I would affirm the district court's order denying the officers' motion to dismiss with respect to the excessive force claims.

_____