UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ALICIA STREET, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  4:19-cv-2590 CDP |
| | ) | |
| LT.COL. LAWRENCE O'TOOLE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## INDIVIDUAL DEFENDANTS'
## MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants file these suggestions in support of the Plaintiffs' third amended class action complaint. (Doc. 88). Count III has already been decided by the Eighth Circuit, and so should be dismissed by this Court.  Counts VII and VIII were previously dismissed by this Court. The allegations contained in the third amended complaint do not cure the deficiencies, so they should be dismissed again. Counts I and III should be dismissed because qualified immunity bars the claims against the defendants. Counts II and XI should be dismissed as they have not pleaded claims for which the class can obtain relief. Officer Karnowski should be dismissed from any use of force claim because he did not use force on any class member. Finally, the remaining state law claims should be dismissed as they are barred by official immunity.

## I.     Introduction

Plaintiffs filed this suit as representatives of a putative class of individuals arrested in the City of St. Louis on the night of September 17, 2017. Plaintiffs allege their arrests were a continuation of the manner in which the St. Louis Police Department officers have responded to protests. Plaintiffs are attempting to file a class action lawsuit against a number of officers, none of whom had contact with more than a couple of class members.

The mass arrest that took place on September 17, 2017 was the first such event that had taken place in the City of St. Louis. On September 15, 2017, the verdict in the criminal case of *State of Missouri v. Jason Stockley*. In the succeeding three days, there were near-constant protests in the and around the City of St. Louis. This continued through September 17, 2017. After a march that ended at Police Headquarters and subsequent rally, many people headed into downtown. Significant property damage ensued in a chaotic and long night that ended in the mass arrest that took place at Washington and Tucker.

## II.     Standard of Review for a Motion to Dismiss

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must determine if a complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court must accept as true all facts pleaded by Plaintiffs, granting them those reasonable inferences the factual content permits. *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462

(8th Cir. 2000). "While factual allegations are taken as true, conclusions masquerading as facts are not." *Barnes v. Oliver*, 18-CV-00093-RWS, 2018 WL 3239503 at *10 (E.D. Mo. July 3, 2018). Threadbare recitals of elements of a cause of action supported by mere conclusory statements do not suffice. *Iqbal*, 556 U.S., at 678.

A claim is facially plausible when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *Id.* The complaint's factual allegations must be sufficient to "raise a right to relief above the speculative level," and the motion to dismiss must be granted if the complaint lacks sufficient facts to state a plausible claim for relief on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In sum, the question before the Court is whether Plaintiffs adequately asserted facts sufficient to support their claims, in contrast to relying on labels, conclusions, or naked assertions. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2013).

## III.   Qualified Immunity bars the claims against the individual defendants

### a.   The legal standard for qualified immunity

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and it "protects all but the plainly incompetent or those who knowingly violate the law" *Stanton v. Sims*, 134 S.Ct. 3, 4-5 (2013). Qualified immunity shields officers "as long as their actions could reasonably have been though consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

The first issue is a merits question – did the officer violate the law?; the second issue is an immunity question – was it clearly established that the officer could not do what he did? *Gainor v. Rogers*, 973 F.2d 1379, 1383 (8th Cir. 1992). The second prong of the inquiry requires the court to determine whether the officer was "plainly incompetent." *Stanton*, 134 S.Ct. at 6. If, given the information available at the time, the officer was not plainly incompetent, he is entitled to qualified immunity. *Id*. To satisfy the "plainly incompetent" standard, the impropriety of the officer's conduct must be "beyond debate." *al-Kidd*, 131 S.Ct. at 2083.

**b.      Qualified immunity bars the claims against the officers on the arrest claim supported by probable cause.**

"The right of the people to be secure in their persons…against unreasonable searches and seizures, shall not be violated…but upon probable cause." U.S. Const. amend. IV. The absence of probable cause is an essential element to Just's § 1983 claim. *Arnott v. Mataya*, 995 F.2d 121, 124 (8th Cir. 1993) ("[I]f defendants in fact had probable cause to arrest [the plaintiff], then [the plaintiff's] claim for false arrest is barred."). Even if the officers are mistaken, they "are entitled to qualified immunity 'if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable.'" *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010); *citing Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008). For qualified immunity to attach, the officers only need to demonstrate arguable probable cause exists. *See Pitts v. City of Cuba*, 913 F. Supp. 2d 688, 725 (8th Cir. 2012) (internal quotation omitted).

4

"Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." *Ulrich v. Pope County*, 715 F.3d 1054, 1059 (8th Cir. 2013) (internal citation omitted).

Plaintiffs admit that there had been violence earlier that night in connections with the group that was to be encircled, and acknowledge that the dispersal orders had been repeatedly given. (Doc. 88, ¶¶ 44-50). They also acknowledge that several people in the crowd at Washington and Tucker were wearing goggles and mases. (Doc. 88, ¶ 94). This makes positive identifications of who was causing the significant and violent property damage earlier in the night more and more difficult.

Given the circumstances of the night, and those of the weekend as a whole, Col. Leyshock was not plainly incompetent in ordering the arrest of those individuals who did not comply with the dispersal orders. It was not clearly established that a mass arrest under these conditions would be unlawful. At least arguable probable cause existed to order the arrests. Leyshock and Sachs had received reports concerning the behavior to which the Plaintiffs adhered. Similar crowds, also including individuals who wore masks and goggles, had caused violence and property damage already that night, and over that weekend. Even if they were wrong in their assessment, if the mistake was reasonable, the officers are entitled to qualified immunity. *See White v.* Pauly, 137 S.Ct. 548, 550 (2017). To extent that Leyshock and Sachs were mistaken in ordering the arrests, the mistake was

5

reasonable. So, qualified immunity should bar any claims against him for unlawful seizure.

The line officers who made arrests, or the "arresting officers," are further entitled to qualified immunity for executing the order to arrest protestors that was given by Col. Leyshock. They are entitled to rely on the orders of their superiors, as long as that reliance is reasonable. *Ehlers v. City of Rapid City*, 847 F.3d 1002, 1010 (8th Cir. 2007). No facts alleged assert that the "arresting officers" had any superior knowledge, or knowledge of the reports that were coming into Leyshock at the time.

### b.    Qualified Immunity bars the First Amendment Claims.

On a claim for an infringement of a Plaintiff's First Amendment rights, the subjective motives of police officers in enforcing the law are irrelevant. If, objectively considered, the totality of the circumstances would support an arrest for any offense, or the use of force, the arrest or use of force is valid, even if the officer believed a different offense had been committed or the officer's subjective motivation was animus toward the arrestee. See *Graham v. Connor,* 490 U.S. 386 (1989); *Lawyer v. City of Council Bluffs,* 361 F.3d 1099, 1106 (8th Cir. 2004). The reasonableness of the use of force must be judged from the standpoint of the officer on the scene, rather than by judicial hindsight. *Id.* Further, qualified immunity is applicable if the officer has "arguable" probable cause to arrest, i.e., where the officer mistakenly arrests a suspect believing that the arrest is based on probable cause, so long as the mistake is objectively reasonable. *White v. Jackson,* 865 F.3d 1064 (8th Cir. 2017).

6

Second, if the claim is one of infringement of First Amendment rights, the plaintiff must plead and prove (1) he engaged in protected activity, (2) a government officer took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, (3) the adverse action was motivated at least in part by the protected activity, and (4) the arrest lacked probable cause or arguable probable cause. *See e.g., Peterson v. Kopp,* 754 F.3d 594 (8th Cir. 2014). Even in the First Amendment context, an officer is entitled to make a reasonable interpretation of the law he is expected to enforce. *Frye v. KCMO Police Dept.,* 375 F.3d 785 (8th Cir. 2004).

In *Nieves v. Bartlett,* the Supreme Court took up the issue of whether probable cause to make an arrest will defeat a claim for a retaliatory arrest. 139 S. Ct. 1715, 1722 (2019). The Court reasoned that the retaliatory motivation of a government official must *cause* the subsequent injury to the Plaintiff for her to recover for First Amendment violations. "A particular officer's state of mind is simply irrelevant, and it provides no basis for invalidating an arrest." *Id.* at 1725 (internal citation omitted). The Court held that absent a showing of no-probable cause, a retaliatory arrest claim fails. *Id.* As shown above, probable cause existed for the arrest. So, there is no constitutional violation against the Plaintiffs regarding the arrest. The Court did provide an exception to this rule, specifically regarding misdemeanor arrest --- that if individuals who were not engaged in any protected First Amendment activity were not arrested for the same conduct, such a claim could survive. *Id.* But here, everyone who was present when the order to

7

arrest was made was in fact arrested, regardless of protected activity. There is no fact presented that individuals who were not recording police activity were not arrested. To the contrary, the undisputed testimony, supported by the video exhibits, shows that everyone at the Tucker and Washington intersection was arrested for failing to disperse.

To the extent that this Court believes that a constitutional violation may have occurred through the arrest, a short review of the introduction of the *Nieves* opinion indicates that prior to that case, the question as to whether probable cause could negate such a claim against police officers was in fact undecided. *Id.* at 1722-23. So any violation of law in this regard was not clearly established, and qualified immunity still shields the officers from liability.

## IV. Counts II and IX should be dismissed because the individual assessments preclude a class action.

Plaintiff has filed a suit against 21 individual defendants for allegations of excessive use of force. All allegations for excessive use of force must be analyzed individually. *Smith v. City of Minneapolis*, 754 F.3d 541, 547-48 (8th Cir. 2014). The bedrock of a use of force analysis is "…application requires careful attention to the facts and circumstances of *each particular* case…" *Graham v. Connor*, 490 U.S. 386, 396 (1989)(emphasis added). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *citing Graham*, 490 U.S at 396. As this Court previously correctly observed, "asserting broad, sweeping allegations that a group of defendants committed constitutional

misconduct is not sufficient to satisfy plaintiffs' pleading obligations as to each defendant within that group. (Doc. 66, p 12). Therefore, by its very nature, Count IV should then be dismissed as Class relief cannot be granted.

In a similar vein, the failure to intervene claims must fail. "To prove his failure to intervene claim, plaintiff must show that an… officer used excessive force, that the other officers had knowledge of that excessive force, and that the other officers had a reasonable opportunity to intervene to prevent the use of excessive force." *Taylor v. Spitzer*, Case No. 10-CV-9-SNLJ, 2011 U.S. Dist. LEXIS 133241 at *16-17 (E.D. Mo. 2011) "[P]olice officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to do so have been held liable." *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) An officer can be liable for failing to intervene when he is "aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration." *Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009).

Again, the first element requires a determination as to whether the force that was used was excessive, and individualized assessment. Then the specific actions of the officer who allegedly did not intervene must be analyzed in relation the specific force in question. Therefore, we again have an assessment that will be dependent on the specific actions of an officer towards a specific person. And even if the officer using force is found to be liable, and the officer improperly failed to intervene, that assessment is individualized.

In this case, Plaintiffs are asserting a class claim against 21 individuals, about specific uses of force against various individuals who may be class members. In order to properly analyze these claims, there will have to be a completely individualized assessment of each officer's conduct, and if multiple uses of force are alleged by an individual, each action by each individual will have to be individually assessed. For example, there are no allegations that Defendants O'Toole or Leyshock personally used any force at all. Whether their conduct leads to liability for any use of force is one question, but also against whom the force that can be attributed must be decided. Sgt. Karnowski is only alleged to have used force on one individual (Doc. 88, ¶ 86) who is a plaintiff in another case, and thus not a member of this class. *See Laird, et al. v. City, et al*, Case No., 18-CV-01567-AGF. Even if after further litigation, any of the "abusive officers" are found to have used excessive force an individual class member, that officer can't be held liable to the entire class. Such claims require individual assessments and mini-trials, which subverts the entire purpose of a class action.

Therefore, even if all of the allegations alleged are true, the relief requested, that of class relief, cannot be granted for Counts II and IX, so they should be dismissed.

## IV.    Counts VII and VIII should be dismissed by the Court again

In the Third Amended Complaint, Plaintiffs have reasserted claims for abuse of process (Count XII) and malicious prosecution (Count XIII). Those claims were previously dismissed by this Court. (Doc 66). There is no additional fact that has been

asserted in this complaint that was not previously asserted, so this Court should again dismiss those claims.

Even if this Court is inclined to consider these refiled claims, the facts asserted are still not sufficient to state a claim against the defendants. A claim for abuse of process requires Plaintiffs to demonstrate

> (1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted.

*Stafford v. Muster*, 582 S.W.2d 670, 678 (Mo. 1979). "The phrase use of process, appearing in element (1) above, refers to some wilful, definite act not authorized by the process or aimed at an objective not legitimate in the proper employment of such process. *Id.* (internal quotations omitted). In *Ritterbusch v. Holt,* the Missouri Supreme Court stated that the first element could be met with the filing of a criminal complaint in municipal court for the purpose of getting the other party to pay a collateral claim of property damage. 789 S.W.2d 491, 493–94 (Mo. 1990).

A claim for a malicious prosecution claim, Plaintiffs must plead facts that demonstrate:

> (1) commencement of an earlier suit against the party; (2) instigation of that suit by the adverse party; (3) termination of the suit in the party's favor; (4) lack of probable cause for filing the suit; (5) malice by the adverse party in initiating the suit; and (6) damage sustained by the party as a result of the suit.

*Copeland v. Wicks*, 468 S.W.3d 886, 889 (Mo. 2015). "Malicious prosecution actions are not favored in the law as public policy supports uncovering and prosecuting crime." *Id, citing Sanders v. Daniel Int'l Corp.* 682 S.W.2d 803, 806 (Mo. banc.

1984). "…[C]ourts require strict compliance with the requisite elements." *Edwards v. Gerstein*, 237 S.W.3d 580, 583 (Mo. 2007).

As with the previous complaints, there is no indication that any defendant officer was involved with any defendant to any extent further than the arrest. There are no facts asserted in which the individual defendants were actually involved in the formal filing of any charges. Plaintiffs have not set forth any facts that establish the individual defendants issued any summons. Therefore, there are no facts that establish the elements of either an abuse of process or malicious prosecution claim against the individual defendants and those claims should be, for a second time, dismissed.

## V.   Official Immunity bars the other state law claims against the individual defendants

The Official Immunity doctrine shields public officers sued in their individual capacity from civil liability for discretionary acts or functions performed in the exercise of official duties, but permits liability for injuries committed when exercising ministerial functions. *Clay v. Scott*, 883 S.W.2d 573, 576 (Mo. App. E.D. 1994); *citing Kangawa v. State by and through Freeman*, 685 S.W.2d 831, 835 (Mo. 1985). "Official immunity is designed to protect individual public officers who, despite imperfect information and limited resources, must exercise discretion in performance of their duties." *Conway v. St. Louis County*, 254 S.W.3d 159, 164, (Mo. App. 2008).

"An act is discretionary when it requires the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued." *McCoy v. Martinez,* 480 S.W.3d 420, 425 (Mo. App.

2016)(internal quotation omitted). To determine this, the Court will look to three elements: (1) the nature of the duties; (2) the amount of judgment required or "professional expertise" in executing the duty; and (3) the effects of not applying the immunity to this act. *Id.* 2005). An officer's decision to use force in the performance of his duties is discretionary. *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) (applying Missouri law). "Bad faith signifies a dishonest purpose or conscious wrongdoing or breach of a known duty through ulterior motives or ill will." *Conway v. St. Louis County*, 254 S.W.3d 159, 165 (Mo. Ct. App. 2008)(internal quotation omitted). Bad faith requires that the officer acted with the intent to deceive or mislead. *Id.* Malice requires the intent "to do that which a man of reasonable intelligence would know to be contrary to his duty and intend such action to be injurious to another." *Id.*

The uses of force alleged are clearly discretionary acts. *Davis v. White,* 794 F.3d at 1013. Official immunity can be overcome if the acts were done with malice or bad faith. *Id.* The actions taken by the officers were clearly discretionary. Here, there are only conclusory allegations that the officers acted with any bad faith or malice. (Doc. 88, ¶¶ 338, 348, 360, 378, 340[1]). There are no facts that have been asserted that can lead to the inference that the officers took any actions that were done with bad faith or malice. So official immunity bars the remaining state law claims.

---

[1] Paragraph 340 in count X is placed between paragraph 390 and 391.

13

## VI.    Previously dismissed count

Plaintiffs include in their third amended petition Count III, for a conspiracy to violate the Plaintiff's civil rights. That claim was decided by the Eighth Circuit, as noted by the Plaintiff in a footnote. As a result, this claim should be dismissed.

Conclusion

Plaintiffs' claims federal claims against the individual defendants are barred by qualified immunity and should be dismissed. The excessive force and failure to intervene claims should be dismissed because class relief cannot be provided to them. The state law claims are bared by official immunity. As Plaintiffs have not pleaded sufficient facts to state a plausible claim for relief against the individual defendants, these claims should be dismissed.

Respectfully submitted,

SHEENA HAMILTON
CITY COUNSELOR

*/s/ Brandon Laird*
Brandon Laird, 65564 MO
Associate City Counselor
lairdb@stlouis-mo.gov
Abby Duncan 67766 MO
Associate City Counselor
duncana@stlouis-mo.gov
Adriano Martinez, 69214 MO
Assistant City Counselor
Martineza@stlouis-mo.gov
1200 Market St.
City Hall, Rm 314
St. Louis, MO 63103
314-622-3361
Fax 314-622-4956

*Attorneys for Defendant City*