UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALICIA STREET, et al., ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | No.  4:19-cv-2590 CDP |
| ) | |
| LT.COL. LAWRENCE O'TOOLE, et al., ) | |
| ) | |
|     Defendants. ) | |

### CITY'S MEMORANDUM IN SUPPORT OF IT'S MOTION TO DISMISS

Defendant, City of St. Louis, files this memorandum in support of its motion to dismiss. The third amended complaint (Doc. 88) does not contain factual allegations sufficient to plausibly assert a claim against the city that it has a custom or practice of unconstitutional actions for *Monell* to attach. Further, Plaintiffs do not set forth any facts that can plausibly plead a claim for a failure to train or discipline by the City as well. So Count V should be dismissed.

I.    Introduction

Plaintiffs filed this suit as representatives of a putative class of individuals arrested in the City of St. Louis on the night of September 17, 2017. Plaintiffs allege their arrests were a continuation of a custom and practice of arresting individuals at protests without probable cause, and improperly deploying chemical munitions on those who engage in protest activity. Plaintiffs do not allege that the City has engaged in mass arrests previous to September 17, 2017. Rather, the Plaintiffs' theory

revolves around broader alleged customs, such as generally arresting individuals without probable cause and the deployment of chemical munitions.

As shown below, though Plaintiffs include the generalized, formulaic statements that the City has engaged in such customs and practices, they fail to assert specific facts that support their claims that the City has engaged in a custom or practice of any unconstitutional conduct. Consequently, judgment should be granted on the pleadings in favor of the City.

## II.   Standard of Review for a Motion to Dismiss

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must determine if a complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court must accept as true all facts pleaded by Plaintiffs, granting them those reasonable inferences the factual content permits. *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). "While factual allegations are taken as true, conclusions masquerading as facts are not." *Barnes v. Oliver*, 18-CV-00093-RWS, 2018 WL 3239503 at *10 (E.D. Mo. July 3, 2018). Threadbare recitals of elements of a cause of action supported by mere conclusory statements do not suffice. *Iqbal*, 556 U.S., at 678.

A claim is facially plausible when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *Id.* The complaint's factual allegations must be sufficient to "raise a right to relief

above the speculative level," and the motion to dismiss must be granted if the complaint lacks sufficient facts to state a plausible claim for relief on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In sum, the question before the Court is whether Plaintiffs adequately asserted facts sufficient to support their claims, in contrast to relying on labels, conclusions, or naked assertions. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2013).

### III. Argument

A municipality may be liable under § 1983 if the entity itself violated a federal law or deprived a plaintiff of a constitutional right. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694-95 (1978). "[U]nder § 1983, local governments are responsible only for their *own* illegal acts. They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011)(internal citations omitted). Rather, the liability occurs only when "execution of a government's policy or custom…inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, at 694. "[C]ongress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 400 (1997). There must be a direct causal link between the municipal action and the alleged constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Here, Plaintiffs are pursuing the theories an unconstitutional custom and practice regarding the use of force and unlawful seizures at protests, a failure to train its employees on those practices; and a failure to

supervise its employees regarding those same customs. (Doc. 88, p. ¶¶ 325-328). Plaintiffs appear to assert that they were subjected to excessive force and that they were arrested without probable cause. (*Id).* To have sufficiently pleaded this case, Plaintiffs must assert factual allegations that, if true, demonstrate that the City was on notice that its failure to train, supervise, and discipline its officers led to Plaintiffs' unlawful arrest and the officer's use of excessive force.

A city may be subject to § 1983 liability only if it had a policy or custom of failing to act upon prior similar complaints of unconstitutional conduct. *Andrews v. Fowler*, 98 F.3d 1069, 1074-75 (8th Cir. 1996) (emphasis added). There must exist a prior pattern of unconstitutional conduct that is so "persistent and widespread" as to have the effect and force of law. *Id.* at 1075.

To make a case for municipal liability under § 1983 for failure to supervise, Plaintiffs must demonstrate that a supervisor "demonstrated deliberate indifference or tacit authorization of the offensive acts." *Brockington v. City of Sherwood*, 503 F.3d 667, 673 (8th Cir. 2007)(internal quotations omitted). Although it can be a distinct claim from failure to train, a failure to supervise claim is analyzed the same. *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998).

A city may be liable for deficient policies regarding training police officers where (1) the city's training practices are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice by a municipality; and (3) an alleged deficiency in the city's training procedures actually caused the plaintiff's injury.

4

*Andrews v. Fowler*, 98 F.3d at1074-75. To make this claim, Plaintiffs must allege facts that demonstrate that the City of St. Louis's "failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." *Id.* Only then can such a shortcoming be properly thought of as City "policy or custom" that is actionable under § 1983." *Id.* "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the City, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton v. Harris*, 489 U.S. at 390-91. "The Supreme Court has made plain that a failure to act amounts to municipal action for *Monell* purposes only if the County has notice that its program will cause constitutional violations." *J.K.J. v. Polk Cty.*, 960 F.3d 367, 379 (7th Cir. 2020); see also *Connick v. Thompson,* supra, 563 U.S. at 61 (municipal liability "at its most tenuous" on failure to train theory); *White v. City of St. Louis*, No. 4:18-cv-00518-SRC, 2019 U.S. Dist. LEXIS 197190 (E.D. Mo. Nov. 14, 2019).

      a.    **Plaintiffs'** *Monell* **claims must be dismissed because they have not pleaded sufficient facts to demonstrate a plausible claim for relief against the City.**

Plaintiffs' *Monell* claims fail to demonstrate that a custom or policy of the City of St. Louis was the moving force behind the alleged violations of the Plaintiffs' rights to be free from an arrest without probable cause or to be free from an excessive use of force. The City initially observes that Judge Clark rejected identical theories of municipal liability based on the same mass arrest described in plaintiffs' complaint. *Burbridge v. City of St. Louis,* 430 F.Supp.3d 595 (E.D. Mo. 2019). It is difficult to see

5

how the City can be liable to plaintiffs here, when a district court has rejected the same theory of municipal liability growing out of the same incident, relying on a series of prior alleged incidents of policing protests--and plaintiffs here plead even fewer incidents than did the *Burbridge* plaintiffs.  Compare 430 F.Supp.3d 619, n. 18 with Doc. 88, ¶¶42-43; 46-49. .

> i. **The Plaintiffs provide no factual allegations to demonstrate a plausible claim that the City's policies or customs were the moving force of Plaintiffs' arrest claims.**

Plaintiffs' claims that the City caused any harm to the Plaintiffs based on their arrest during a protest fail on the face of the complaint. Plaintiffs' complaint attempts to create a pattern or series of prior constitutional violations at other protests. (Doc. 88). Though Plaintiffs reference a number of other protests, in none of them do they even allege that others were arrested, let alone that anyone was arrested unlawfully. (Doc. 88, ¶¶ 41-49).

Therefore, at best, on the face of complaint, the Plaintiffs are only asserting a single incidence of St. Louis Police Officers unlawfully arresting individuals at a protest- namely, those arrested as part of a mass arrest the evening of September 17, 2017. Plaintiffs make no allegation that the City has an official policy of arresting individuals without probable cause. So, Plaintiffs must be asserting that the City has a custom or a practice of doing so. But, "[g]enerally, an isolated incident of police misconduct by subordinate officers is insufficient to establish municipal policy or custom." *Wedemeier v. Ballwin*, 931 F.2d 24, 26 (8th Cir. 1991). "We cannot infer the

6

existence of an unconstitutional city policy, or custom conflicting with the official policy, from this single occurrence." *Id.*

Plaintiffs' point out in their complaint that there have been a number of protests in the St. Louis area that required the St. Louis police to respond. (Doc. 88, ¶¶ 41-42, 46-49). But Plaintiffs do not allege that anyone was improperly arrested at any of those protests. The theory of inadequate training is merely an extension of the theory of municipal liability for policy or custom: there must be proof of deliberate choice of the guiding principle by a final policymaker or of acquiescence in known unconstitutional conduct by the entity. E.g., *Marsh v. Phelps County,* 902 F.3d 745 (8th Cir. 2018). Without even the bare factual allegations of specific incidences where individuals were arrested unlawfully at previous protests, there cannot be any logical allegation that the City was on notice of any particular unconstitutional practice regarding the arrest of protestors. So, Plaintiffs have not asserted a plausible claim that the City had a policy or custom that is "so permanent and well-settled as to have the force of law." *Monell v. Dept. of Soc. Servs.*, 436 U.S. at 691. Because Plaintiffs have failed to plead facts that assert even the mere elements of a custom or practice of arresting individuals at protests without probable cause, this claim should fail.

Further, because Plaintiffs do not allege any prior incidents, it cannot then be said that the City could have been deliberately indifferent to a practice that the face of Plaintiffs' complaint makes clear they had no notice of. *See J.K.J. v. Polk Cty.*, 960 F.3d at 379. As there was no notice prior to this event, there could not be any tacit authorization, and those claims must fail. *Jane Doe "A" v. Special School Dist.*, 901

7

F.2d 642, 646 (8th Cir. 1990); *Harris v. Pagedale*, 821 F.2d 499, 504 (8th Cir. 1987)("The claimant must demonstrate 'deliberate indifference' or tacit authorization [by municipal officials] of the offensive acts by [failure] to take remedial steps following notice of a pattern of such acts by. . . subordinates.'")

> ii. Plaintiffs' allegations regarding the excessive use of force in violation of the First Amendment do not plausibly assert a claim for liability against the City.

Plaintiffs also make a claim that they were subjected to excessive force based on the same theories of *Monell* liability as the arrest- that the City had a custom or policy of using excessive force on protestors in violation of the First Amendment, and that City's alleged custom or policy of excessive force occurred because the City failed to train, supervise, or discipline its officers. As with the claims related to the Plaintiffs' arrests, there are no *factual* claims that support a claim for failure to train, only conclusory allegations that the City failed to train its officers. Consequently, much like the Plaintiffs' first amended complaint, any claim that failure to train was the moving force behind any use of force is deficient and should be dismissed.

The claims for failure to supervise and discipline should also be dismissed as there are no *factual* allegations that show the City gave tacit authorization of prior acts by failing to take any steps to remedy those acts. *See Jane Doe "A" v. Special School Dist.*, 901 F.2d 642, 646 (8th Cir. 1990). Plaintiffs themselves assert that the City entered a consent settlement following protests that took place in 2014 regarding the use of chemical munitions, which Plaintiffs concede has the effect of a change in policy. (Doc. 88, ¶¶ 44-45). Contrary to Plaintiffs' assertions, this evidences deliberate

8

steps by the City to remedy any alleged offensive actions. *See Jones v. City of St. Louis*, No. 4:19-CV-02583, 2022 WL 1202364, at *12 (E.D. Mo. Apr. 22, 2022)("Moreover, according to Plaintiff's own evidence, the City did not simply ignore the alleged misconduct but entered into a settlement agreement (the *Templeton* settlement) specifically addressing the prior alleged misuse of chemical agents in the context of protests.")

Specific to allegations of excessive force at protests, Plaintiffs allege only three incidents in which any chemical munitions were used in an improper way. Plaintiffs' complaint makes clear that these are only a few of the overall protests that have occurred in the City of St. Louis since 2015. (Doc. 88, ¶¶ 41-42). In August 2015, Plaintiffs assert that chemical munitions were used in response to a protest over the Circuit Attorney's decision not to prosecute an SLPD officer. (*Id.* at ¶ 46). Then in July 2017, Plaintiffs assert that chemical munitions were used in response to a protest unrelated to any SLPD activity. (*Id.* at ¶ 48). Plaintiffs also mention a protest at the Medium Security Institution in 2017 where munitions were used, but concede that said protest involved criminal activity on the part of the protesters. (*Id.*). Three incidents in a four year period is not sufficient to support a claim that there is a custom that is so common it has the force of law. *See Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988)(finding that two incidents between December and March were not sufficient to create *Monell* liability). From the face of the complaint, Plaintiffs have failed to sufficiently allege any prior use of force was excessive, how they would have put the City on notice of the constitutional

9

deficiencies alleged by Plaintiffs, or how the City gave tacit authorization for the use of excessive force.

Plaintiffs' failure to train theory also fails because there are no factual allegations that show that the deployment of any munitions at the prior demonstrations and protests had any similarity to that which was used on September 17, 2017. Plaintiffs do not allege that the same munitions were used, or that the same unit or officers used the munitions, nor have Plaintiffs described with particularity facts which show that the munitions were used under similar circumstances as the circumstances at play on September 17, 2017. Certainly, there is a difference between using a launched chemical munition into a crowd of people and using handheld pepper spray on specific individuals. The fact that unspecified chemical munitions were used in unspecified circumstances cannot then be enough to put the City on notice that there was any particular constitutional shortcoming of an officer's use of force (via handheld pepper spray) while attempting to gain compliance during an arrest. Municipal liability requires that the City have notice of prior conduct *similar* to that of the alleged conduct, and Plaintiffs have failed to sufficiently make such allegations here. *Perkins v. Hastings*, Case No. 4:15-CV-00310 BSM, 2017 U.S. Dist. LEXIS 217455, *8 (E.D. Ark, Mar. 24, 2017); *citing Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999), aff'd, 915 F.3d 512 (8th Cir. 2019).

Plaintiffs' argument then follows that because the City used unspecified munitions in unspecified circumstances, the next time any chemical munition is used, for any purpose, there is municipal liability. That is simply contrary to the

established law on *Monell* liability. "…[G]enerally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse. Only then may knowledge be imputed to the supervising personnel." *Timko v. Hazleton*, 665 F. Supp. 1130, 1138 (M.D. Pa. 1986)(internal citation omitted); see also *Szabla v. City of Brooklyn Park*, 486 F.3d 385 (8th Cir. 2007)(*en banc*). "The word "custom" generally implies a habitual practice or a course of action that characteristically is repeated under like circumstances. *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986). "…[I]naction in response to misconduct of its employees may result in municipal liability but only where the injury is caused by "faults 'systemic in nature,' *Id*. "No municipality may be held liable for its indifference to the mere *possibility* of a constitutional deprivation. Rather the plaintiff must show the municipality was aware either of actual deprivations or of such a strong likelihood of imminent (though unrealized) deprivations that any reasonable person would have taken preventive measures." *Jones v. City of Chicago*, 608 F. Supp. 994, 1000 (N.D. Ill. 1985), *aff'd,* 787 F.2d 200 (7th Cir. 1986)(emphasis in original). Nothing in the Plaintiffs' complaint, even taken as true, would be enough to put the City on notice that there was a constitutional shortcoming in its training that would have led to the specific injuries claimed by Plaintiffs. So claims against the City for using excessive force on protestors should also be dismissed.

> b.     Plaintiff's reliance on the preliminary injunction issued in *Ahmad v. City of St. Louis* does not support a claim for relief against the City of St. Louis.

Plaintiff relies heavily on the preliminary injunction entered in *Ahmad v. City of St. Louis*, in their claim for relief against the City. (Doc. 118, ¶¶ 124-133). To that end, thirteen paragraphs are quotes directly from the preliminary injunction order, including eleven subparagraphs in paragraph 133. (Doc. 88,¶ 133). However, the 8th Circuit's recent order that denied a request to dissolve the preliminary injunction but vacated a class certification demonstrates that Plaintiff's allegations are not sufficient to show liability:

> But a "showing at trial of a relatively few instances of violations by individual police officers, without any showing of a deliberate policy on behalf of [the City, would] not provide a basis for equitable relief." . . . Rather, "where the claim is that municipal action lawful on its face caused an employee to inflict constitutional injury, 'rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees.'" *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017), quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). To prevail on this claim, plaintiffs "must show that [their] alleged injury was caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct, that municipal policymakers were either deliberately indifferent to or tacitly authorized." *Davis v. White*, 794 F.3d 1008, 1014 (8th Cir. 2015); see *Szabla v. City of Brooklyn Park, Mn.* 486 F.3d 385, 389-90 (8th Cir. 2007) (*en banc*); *Thomas v. Cty. of Los Angeles*, 978 F.2d 504, 509 (9th Cir. 1992) ("plaintiffs' eventual burden in obtaining a permanent injunction against a state law enforcement agency is to establish more than repeated incidents of misconduct").
>
> …Given these rigorous § 1983 burdens of proof, the evidence at the preliminary injunction hearing relating to the events of September 2017, while relevant and sufficient to persuade the court to grant a preliminary injunction *pendente lite, will not be sufficient to warrant permanent injunctive relief imposing the same levels of indefinite federal court control over the City's law enforcement responsibilities*. As

> Judge Posner recently reminded Seventh Circuit district judges, "[t]he era of micromanagement of government functions by the federal courts is over." *Chicago United Ind.*, 445 F.3d at 947. [Emphasis added.]

*Ahmad v. City of St. Louis,* 2021 U.S. App. LEXIS 12409, 2021 WL 1619496 (8th Cir. Apr. 27, 2021). As stated above, Plaintiffs do not even allege "relatively few instances" of unlawful arrest; they allege none. Given the standards the 8th Circuit articulated in *Ahmad*, there is no claim for liability alleged against the City relating to unlawful arrest. As there are only sporadic instances of force used, there cannot be any liability against the City on the allegations for excessive use of force. Nearly three years after this cases filing, the fact that Plaintiffs can only muster generic, boilerplate allegations of liability against the City demonstrates that the claims against the City should be dismissed.

## Conclusion

Plaintiffs' claims against the City are little more than recitations of the elements of a claim for liability under *Monell*. There are no allegations of unlawful arrests made at any prior protest, which precludes any finding that there is liability for a custom or practice of such activity. Plaintiffs only assert a few sporadic instances of chemical munitions being used at other prior protests, although there are no allegations that the munitions used were similar, excessive, or that they were used under similar circumstances. As Plaintiffs have not pleaded sufficient facts to state a plausible claim for relief against the City, these claims should be dismissed.

13

Respectfully submitted,

SHEENA HAMILTON
CITY COUNSELOR

*/s/ Brandon Laird*
Brandon Laird, 65564 MO
Associate City Counselor
lairdb@stlouis-mo.gov
Abby Duncan 67766 MO
Associate City Counselor
duncana@stlouis-mo.gov
Adriano Martinez, 69214 MO
Assistant City Counselor
Martineza@stlouis-mo.gov
1200 Market St.
City Hall, Rm 314
St. Louis, MO 63103
314-622-3361
Fax 314-622-4956
*Attorneys for Defendant City*