**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| ALICIA STREET, RONALD HARRIS, | ) | |
| FUDAIL MCCAIN, ASHLEY THEIS, and | ) | |
| NICOLE WARRINGTON, on behalf of | ) | |
| Themselves and a class of similarly | ) | |
| situated persons, | ) | |
| | ) | Cause No. 4:19-cv-02590-CDP |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LT. COL. LAWRENCE O'TOOLE, et.al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CONSENT MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Dated: January 26, 2023

KHAZAELI WYRSCH, LLC
911 Washington Ave
Suite 211
Saint Louis, MO 63101
T: 314-288-0777
javad.khazaeli@kwlawstl.com

CAMPBELL LAW, LLC
8112 Maryland Avenue
Suite 400
Saint Louis, MO 63105
T: 888-588-5043
alicia@campbelllawllc.com

*Settlement Class Counsel*

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ...................................... 4

    A. Factual Background ................................................................................ 4

    B. Procedural History ................................................................................. 4

III. Settlement .......................................................................................................... 5

    A. KEY TERMS OF THE SETTLEMENT ............................................. 6

IV. ARGUMENT .................................................................................................... 8

    A. THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR PURPOSES OF SETTLEMENT, APPOINT PLAINTIFFS AS SETTLEMENT CLASS REPRESENTATIVES, AND APPOINT KHAZAELI WYRSCH, LLC AND CAMPBELL LAW, LLC AS CLASS COUNSEL. .............................................. 8

        1. General Standards ......................................................................... 8

    B. THE RULE 23(A) REQUIREMENTS ARE SATISFIED. .................... 9

        1. Numerosity Is Satisfied. ............................................................... 9

        2. Commonality Is Satisfied ............................................................. 9

        3. The Class Representatives' Claims Are Typical of The Class ................ 10

        4. Rule 23(a)(4) and Rule 23(g) are Satisfied Because Class Representative and Counsel Will Fairly and Adequately Protect the Class's Interests .... 11

        5. The Requirements of Rule 23(b)(3) are Satisfied ..................................... 12

        6. Common Issues Predominate ....................................................... 12

        7. Class Treatment is Superior to Alternate Methods of Adjudication ........ 13

        8. The Court Should Appoint Plaintiffs as Class Representatives and Khazaeli Wyrsch, LLC and Campbell Law, LLC as Class Counsel Under Rule 23(g) ..................................................................................... 14

    C. THE PROPOSED SETTLEMENT IS PRESUMPTIVELY FAIR AND SHOULD BE PRELIMINARILY APPROVED UNDER RULE 23(e) .............................. 15

        1. The Settlement is Presumptively Fair and Should Be Preliminarily Approved ...................................................................................... 16

        2. The Settlement is Based on Arm's Length Negotiations Conducted After Extensive Investigation and the Exchange of Ample Information ........... 17

        3. Counsel Is Highly Experienced in Similar Litigation and its Considered Opinion Regarding the Settlement is Entitled to Significant Weight ....... 17

        4. The Settlement Falls Well Within the Range of Possible Approval ......... 18

    D. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ........................ 19

        1. The Content of The Proposed Class Notice Complies With Rule 23(c)(2) ................................................................................................. 19

        2. The Plan for Distribution of the Class Notice Will Comply With Rule 23(c)(2) ...................................................................................... 20

V. CONCLUSION ................................................................................................ 21

# TABLE OF AUTHORITIES

Page(s)

Cases

*Albright v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*,
  2013 WL 4855308 (E.D. Mo. Sept. 11, 2013) ........................................................ 18
*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................... 8, 12, 14
*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013) ......................................................................... 12
*Barfield v. Sho-Me Power Elec. Co-op.*,
  2013 WL 3872181 (W.D. Mo. July 25, 2013) ....................................................... 11
*Bradford v. AGCO Corp.*,
  187 F.R.D. 600 (W.D. Mo. 1999) ................................................................. 9
*Carpe v. Aquila, Inc.*,
  224 F.R.D. 454 (W.D. Mo. 2004) .............................................................. 11, 12
*Clark v. Bally's Park Place, Inc.*,
  298 F.R.D. 188 (D.N.J. 2014) ................................................................ 12
*Claxton v. Kum & Go L.C.*,
  2015 WL 3648776 ........................................................................ passim
*DeBoer v. Mellon Mortg. Co.*,
  64 F.3d 1171 (8th Cir. 1995) ............................................................... 10, 18
*E.E.O.C. v. McDonnell Douglas Corp.*,
  894 F. Supp. (E.D. Mo. 1995) ................................................................ 17
*Glen v. Fairway Indep. Mortgage Corp.*,
  265 F.R.D. 474 (E.D. Mo. 2010) ............................................................. 10
*In re Aquila ERISA Litig.*,
  237 F.R.D. 202 (W.D. Mo. 2006) ............................................................. 9, 10
*In re BankAmerica Corp. Sec. Litig.*,
  210 F.R.D. 694 (E.D. Mo. 2002) ............................................................. 18
*In re McDonnell Douglas Corp. Sec. Litig.*,
  98 F.R.D. (E.D. Mo. 1982) .................................................................. 13
*In re Puerto Rican Cabotage Antitrust Litig.*,
  269 F.R.D. (D.P.R. 2010) ................................................................... 14
*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*,
  716 F.3d 1057 (8th Cir. 2013) ............................................................. 11, 15, 16
*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
  396 F.3d 922 (8th Cir. 2005) ............................................................... 16
*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
  2004 WL 3671053 (W.D. Mo. Apr. 20, 2004) ................................................. 18
*In re Zurn Pex Plumbing*,
  2012 WL 5055810 .......................................................................... 8
*In re Zurn Pex Plumbing*,
  2013 WL 716088 ........................................................................ 10, 15, 18
*Jones v. CBE Grp., Inc.*,

215 F.R.D. 558 (D. Minn. 2003) ................................................................. 13

*Lane v. Lombardi*,
2012 WL 5462932 (W.D. Mo. Nov. 8, 2012) ....................................... 11

*Liddell by Liddell v. Bd. of Educ. Of City of St. Louis*,
126 F.3d 1049 (8th Cir. 1997) ............................................................ 3, 15

*Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No.,
1*, 921 F.2d 1371 (8th Cir. 1990) ................................................. 3, 15, 16

*Marshall v. Nat'l Football League*,
787 F.3d 502 (8th Cir. 2015) ............................................................ 15, 16

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) .................................................................. 16

*Schmidt v. Fuller Brush Co.*,
527 F.2d 532 (8th Cir. 1975) .................................................................. 15

*Simmons v. Enter. Holdings, Inc.*,
2012 WL 718640 (quoting Manual § 21.632) .......................................... 9

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) ............................................................................. 13

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ......................................................................... 9, 10

*Welsh v. Gardebring*,
667 F. Supp. 1284 (D. Minn. 1987) ......................................................... 18

Other Authorities

4 Newberg on Class Actions § 13:13 (5th ed.) ............................................ 16
7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123-124 (3d
ed. 2005) ................................................................................................... 13
Manual for Complex Litigation § 21.632 (4th ed.) ...................................... 8

iv

## I.     INTRODUCTION

In this putative class action, Plaintiffs Alicia Street, Ronald Harris, Fudail McCain, Ashley Theis, and Nicole Warrington ("Plaintiffs" or "Class Representatives") allege that Defendants arrested them in violation of their constitutional rights on September 17, 2017, and used excessive force during the arrests. Plaintiffs seek damages for themselves and all other similarly situated citizens for being arrested on September 17, 2017. The Defendants deny the allegations and have vigorously defended the case. Along with this class action, there are roughly one dozen individual cases relating to the events. This has led to extensive discovery and litigation, resulting in a litigation landscape that is, at this point, clear to all parties.

The parties have engaged, for a period of months, in settlement discussions and negotiations. The work has borne fruit, resulting in a settlement. The parties have negotiated an agreement that delivers immediate relief to Class Members commensurate with their alleged injury, avoids future delay, saves district and appellate court resources, saves all parties expense, and provides certainty to the settling Defendants. The Class Action Settlement Agreement (the "Settlement") creates a $4,914,000 settlement fund, which will be used to pay all Class Members, notice and administration expenses, Court-approved incentive awards to Plaintiffs, and attorneys' fees and costs to proposed Class Counsel.

Settlement Class Members—approximately 84 in all—will not be required to submit a claim form to receive their settlement payment; they will only submit an injury claim form if they believe that they qualify for a particular injury category. This dramatically reduces barriers to claiming meaningful relief.  To make sure that the settlement meets the Constitutional, precedential, and statutory requirements regarding damages that are appropriate for each Class Member and are manageable administratively, the class establishes four groups of class awards.

1

The settlement also ensures that the awards adjust pro rata to the class injury categories that are claimed, ensuring maximum recovery to each Class Member while protecting each Class Member's interests.

The groups established, and the ranges of recovery, and the ranges of recovery for each *after all costs, fees, honorariums, and administrative costs* are identified below. These are stated in ranges because 1) the number of Class Members who will claim each class cannot be known until notice is sent, 2) the attorneys' fees, honorariums, and other costs that will be deducted from the common fund are subject to Court approval. The goal of the ranges is to make sure each Class Member can assess their best- and worst-case scenario and then intelligently decide to proceed in the case or to opt-out. Stating the final potential recovery in ranges, and making sure those ranges reflect take-home money, avoids upset or surprised Class Members. The groups are:

- **Group 1**: Class Members who, as of December 6, 2022, did not file an individual lawsuit relating to the events of September 17, 2017 and who are not members of Groups 3 or 4.  Parties in this group are expected to receive between $22,900.00 and $43,750.00 before reduction due to all associated fees, costs, administrative expenses, and honorariums approved by the court. The Group 1 Class Members' estimated take home amount is between $13,500.00 and $26,500.00.

- **Group 2**: Class Members who, as of December 6, 2022, filed an individual lawsuit relating to the events of September 17, 2017. Parties in this group are expected to receive approximately $68,500.00 before reduction due to all associated fees, costs, administrative expenses, and honorariums approved by the court. The Group 2 Class Members' estimated take home amount is $43,000.00.

- **Group 3**: Class Members who, whether they filed an individual lawsuit or not, provide medical records showing treatment for physical injuries caused by the events of September 17,

2

2017, that lasted more than three (3) months. These members will have to provide an affidavit upon request and must willing to be interviewed by Class Counsel. They must also file an Injury Claim Form. Parties in this group are expected to receive between $55,900.00 and $80,000.00 before reduction due to all associated fees, costs, administrative expenses, and honorariums approved by the court. The specific amount any party in this group will receive will be determined on a case-by-case basis by Class Counsel to protect the interests of each Class Member and to provide appropriate compensation for the varying levels of injury. The Group 3 Class Members' estimated take home amount is between $35,500.00 and $50,500.00.

- **Group 4**: Class Members who, whether they filed an individual lawsuit or not, can document, by objective records, a permanent physical injury or physical disability caused by the events of September 17, 2017, that cannot be fully resolved by medical intervention and that has significantly diminished their future earning abilities. A party claiming in this group must be willing to submit records and an affidavit and must be willing to be interviewed by Class Counsel. They must also file an Injury Claim Form. The amount any party in this group will receive will be determined on a case-by-case basis by Class Counsel to protect the interests of each Class Member and to provide appropriate compensation for the varying levels of injury.

This Court should preliminarily approve the proposed Settlement in accordance with the Eighth Circuit's stance of "strongly favor[ing] settlements." *Liddell by Liddell v. Bd. of Educ. Of City of St. Louis*, 126 F.3d 1049, 1056 (8th Cir. 1997) (quoting *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990)). The motion, this memorandum, and accompanying exhibits demonstrate that the Settlement represents the optimal outcome, especially given the substantial risks and delays associated with continued litigation.  The Settlement meets and exceeds the requirement that it be fair, adequate, and reasonable. And the

Settlement and accompanying notices guarantee all Class Members can make an intelligent decision regarding how to proceed.

To effectuate the Settlement and resolution of this action, Plaintiffs respectfully request that the Court enter the Proposed Order Granting Preliminary Approval and preliminarily certify the proposed Class for settlement purposes under Rule 23 (b)(3) of the Federal Rules of Civil Procedure; appoint Khazaeli Wyrsch, LLC and Campbell Law, LLC as Class Counsel and Plaintiffs Alicia Street, Ronald Harris, Fudail McCain, Ashley Theis, and Nicole Warrington as Settlement Class Representatives; preliminarily approve the Settlement Agreement as potentially coming within the range of reasonableness; approve the dissemination of the Class Notice to Class Members; and schedule a final approval hearing.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Plaintiffs and Class Members are persons who allege they were illegally seized and subjected to violence without probable cause and in contravention of the U.S. Constitution and Missouri law when they were arrested on September 17, 2017. On that date at approximately 11:30 pm, Defendants surrounded all persons located at the intersection of Washington Avenue and Tucker Boulevard and effectuated a mass arrest. Plaintiffs and Class Members allege that Defendants did not have probable cause to arrest them, and that Defendants violated their constitutional rights during the arrest. Defendants deny these allegations.

### B.  Procedural History

Plaintiffs filed their Complaint on September 17, 2019 (ECF No. 1), and their First Amended Complaint on January 15, 2020. ECF No. 13. On March 17, 2020, Defendants filed four motions to dismiss Plaintiffs' Complaint. ECF Nos. 19-28. On May 13, 2020, Plaintiffs filed their

opposition memoranda to Defendants' motions to dismiss. ECF Nos. 33-39. On May 26, 2020, Defendants filed their reply memoranda of law in support of their motions to dismiss. ECF Nos. 40-43. On February 22, 2021, the Court granted in part and denied in part Defendants' motions. ECF No. 66.

On March 3, 2021, Defendants filed a notice of appeal. ECF No. 67. On July 27, 2022, the Eighth Circuit issued its opinion. ECF No. 80. On October 14, 2022, Plaintiffs filed their Third Amended Complaint. ECF No. 88. On November 7, 2022, Defendants filed two motions to dismiss. ECF No. 91-94. Before the motions were fully briefed, the parties entered into this settlement.

## III.    Settlement

The Parties are mindful that, as with any litigation, there is significant risk to both sides. For this reason, from the outset of the case, the Parties engaged in direct communications and, as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of early resolution. To that end, the Parties exchanged relevant information surrounding the alleged claims in furtherance of resolving the matter.  The parties also engaged in extensive discovery both in this action and in related actions with individual plaintiffs. This has left few mysteries in the case. The parties understand one another's positions, have had the benefit of court orders and appellate orders in this and other cases and have been able to discuss settlement with the benefit of this detailed factual and legal record. Ultimately, after the appellate opinion from the US Court of Appeals for the Eighth Circuit, the Parties agreed to once again engage in discussions to determine whether a settlement could be reached.

Throughout November and into December of 2022, the Parties engaged in multiple calls and in-person meetings in order to negotiate the settlement agreement; on December 6, 2022, the

Parties were able to rectify a few outstanding issues and begin the process of drafting a memorandum of understanding, which was fully executed on December 15, 2022.

### A.  KEY TERMS OF THE SETTLEMENT

The key terms of the Class Action Settlement Agreement ("Settlement"), attached as Exhibit 1, are briefly summarized as follows:

#### 1.  Class Definition

The "Settlement Class" or "Settlement Class Members" is defined as:

> All people who were arrested on September 17, 2017, near the intersection of Tucker Boulevard and Washington Avenue, in the City of St. Louis who have not previously settled all of their claims related to this event.

Settlement pg. 2 and ¶ 4.16. A list of the Class Members has already been provided to Class Counsel by the Defendants, and Class Counsel has verified that they believe it is correct based upon the extensive discovery already carried out.

#### 2.  Monetary Relief in the Form of a Reversionary Common Fund

Each Settlement Class Member will automatically receive proceeds from the Settlement Fund; this is not an "opt-in" class. All Settlement Class Members are considered Class Members unless they affirmatively opt-out. The Notice, which will be mailed to each Class Member at their last known address, will give Settlement Class Members the ability to opt to receive the cash award by check. Settlement ¶ 5.2 & 8.8.

The Class Notice explains that there are differing levels of compensation based on the medical treatment and diagnosis received for any physical injuries that were caused by the events of September 17, 2017. Settlement Class Members will have the ability to submit an Injury Claim Form, with the necessary and required documentation, should any Settlement Class Member believe that he or she belongs in a particular category of injury. Settlement ¶ 5.3.   Those

submissions must be received by the Settlement Administrator within 45 days of the mailing of Class Notice and will be then considered and reviewed by Class Counsel, who will make the determination as to which category a Settlement Class Member may be a part of. Settlement ⁋ 5.3 & 8.11. The final amounts of money to be provided to members of Group 1 will be determined by Class Counsel based on pro rata shares depending on the number of members of each group. Settlement ⁋ 5.3. The final amounts of money to be provided to members of Group 3 and 4 will be determined by Class Counsel based on the specific injuries each Class Member has documented. Settlement ⁋ 5.3.

Given that this settlement will be funded by public funds, a reversion will occur if checks are not cashed after 30 days of mailing. Settlement ⁋ 5.2

**3.  Release**

This Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties. Settlement ¶ 1. Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, and each of them. *Id*.

**4.  Notice And Administration Expenses**

The Settlement Fund will be used to pay the cost of Settlement Administration Expenses, which includes sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administering the Settlement. Settlement ¶ 5.1. The Parties estimate the the cost of Settlement Administration will be approximately $20,000.00.

**5.  Incentive Award**

In recognition for their efforts on behalf of the Settlement Class, Defendants have agreed

that Plaintiffs may receive, subject to Court approval, an incentive award, not to exceed $10,000 per Plaintiff, from the Settlement Fund, as appropriate compensation for their time and effort serving as Class Representatives and as parties to the Action. Defendants will not oppose any request limited to this amount. Settlement ¶ 20.2.

### 6. Attorneys' Fees and Expenses

Defendants have agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees and to reimburse expenses in this action, in an amount to be approved by the Court. Settlement ¶ 5.1. Class Counsel has agreed to petition the Court for no more than one-third of the Settlement Fund. Id. Class Counsel represents that total expenses are approximately $203,000.00. Expenses will not, in any event, exceed $205,000.00.

## IV.   ARGUMENT

### A. THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR PURPOSES OF SETTLEMENT, APPOINT PLAINTIFFS AS SETTLEMENT CLASS REPRESENTATIVES, AND APPOINT KHAZAELI WYRSCH, LLC AND CAMPBELL LAW, LLC AS CLASS COUNSEL.

### 1. General Standards

Before granting preliminary approval, the Court should determine whether the class proposed for settlement purposes is appropriate under Rule 23. See *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation § 21.632 (4th ed.) (hereafter "Manual"). The practical purpose of certification is to facilitate notice of settlement terms to the class and provide them with the date and time of the final approval hearing. *See Id*. at § 21.632; see also *In re Zurn Pex Plumbing*, 2012 WL 5055810, at *5 ("Conditionally certifying a class in connection with preliminary approval allows notice to the class.") (D. Minn. Oct. 18, 2012). The court may certify a class solely for purposes of settlement after making a "determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."

*Simmons v. Enter. Holdings, Inc*., 2012 WL 718640, at *1 (quoting Manual § 21.632) (E.D. Mo. Mar. 6, 2012).

Here, the action focuses on Defendants' actions and the alleged illegal arrest of Plaintiffs and Class Members on September 17, 2017. Any issues regarding damages (which, as a general matter, are not a proper basis for denying certification) are fully resolved by the Settlement— which not only provides adequate collective relief but establishes a fair, equitable, and manageable basis for determining each Class Member's share.

### B.   THE RULE 23(A) REQUIREMENTS ARE SATISFIED.

The four prerequisites of Rule 23(a) "are otherwise known as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *In re Aquila ERISA Litig*., 237 F.R.D. 202, 207 (W.D. Mo. 2006). These requirements are easily met.

#### 1.   Numerosity Is Satisfied.

"Rule 23(a)(1) requires that the proposed class be 'so numerous that joinder of all members is impracticable.'" *In re Aquila ERISA Litig.,* 237 F.R.D. at 207 (quoting Fed. R. Civ. P. 23(a)(1)). Here, the settlement class consists of approximately 84 people, so the numerosity requirement is easily satisfied. *See Bradford v. AGCO Corp*., 187 F.R.D. 600, 604 (W.D. Mo. 1999) ("This Court finds that a class of twenty to sixty-five members is sufficiently numerous under Rule 23.").

#### 2.   Commonality Is Satisfied

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is met where the issues raised have "the capacity of a class wide proceeding to generate common answers apt to drive the resolution of litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original). The threshold for commonality is low, requiring only that the issue "linking the Class Members is substantially related to the

resolution of the litigation." *In re Zurn Pex Plumbing*, 2013 WL 716088, at *3 (internal citations and quotations omitted) (D. Minn. Feb. 27, 2013). That is, Plaintiffs' "claims must depend on a common contention…that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. "[T]he presence of differing legal inquiries and factual discrepancies will not preclude class certification." *Glen v. Fairway Indep. Mortgage Corp.*, 265 F.R.D. 474, 478 (E.D. Mo. 2010).

Plaintiffs believe this action presents many questions common to the Class, and that answering each question will resolve an issue that is central to the validity of each one of the claims in one stroke. Plaintiffs assert that common questions include: whether Defendants detained Class Members, preventing them from leaving the detainment area; whether there was probable cause to do so; whether the Defendants had any legal right to require Class Members to disperse; whether the arrests were part of a cohesive plan to deter speech and assembly; and whether the arrests were pre-planned to occur regardless of the behavior of the protesters. These common questions, which target the same alleged misconduct by Defendants, satisfy Rule 23(a)(2).

### 3. The Class Representatives' Claims Are Typical of The Class

"Typicality requires the plaintiff to show 'the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]'" *Claxton v. Kum & Go L.C.*, 2015 WL 3648776, at *3 (quoting Fed. R. Civ. P. 23(a)(3)). "The burden of demonstrating typicality is fairly and easily met so long as other Class Members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995); *accord In re Aquila ERISA Litigation*, 237 F.R.D. at 209. Typicality exists when there are "other members of the class who have the same or similar grievances as the plaintiff." *In re Zurn Pex Plumbing*, 2013 WL 716088 at *3. Class

representatives "need not share identical interests with every Class Member, but only 'common objectives and legal and factual positions.'" *Claxton*, 2015 WL 3648776, at *3 (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig*., 716 F.3d 1057, 1064 (8th Cir. 2013)).

Here, Plaintiffs assert the Class Representatives pursue the same claims as the Class based on the same legal theories and the same alleged course of conduct: that Plaintiffs and Class Members were present at the events of September 17, 2017, and were arrested. Because Plaintiffs believe that they have experienced the same type of injury as the Class Members and proceed under the same legal theory, typicality is satisfied.

### 4. Rule 23(a)(4) and Rule 23(g) are Satisfied Because Class Representative and Counsel Will Fairly and Adequately Protect the Class's Interests

The fourth and final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a)(4). "The adequacy requirement is met where "1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously, and 2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *Barfield v. Sho-Me Power Elec. Co-op*., 2013 WL 3872181, at *3 (W.D. Mo. July 25, 2013) (quoting *Carpe v. Aquila, Inc*., 224 F.R.D. 454, 458 (W.D. Mo. 2004)). Adequacy focuses on whether Plaintiffs' attorneys are "qualified, experienced, and generally able to conduct the proposed litigation," and whether Plaintiffs have "interests antagonistic to those of the class." *Claxton*, 2015 WL 3648776, at *4 (quoting *Lane v. Lombardi*, 2012 WL 5462932, at *3 (W.D. Mo. Nov. 8, 2012)).

First, the Class Representatives assert there are no conflicts between themselves and the Class. Throughout the pendency of this action, the Class Representatives have adequately and

11

vigorously represented their fellow Class Members. They have spent significant time assisting counsel, providing information regarding specific details of the events, providing pertinent documents, and assisting in settlement negotiations.

Second, Class Counsel is highly experienced and well-versed in complex class action litigation, including representing citizens against municipalities. Missouri Courts have consistently recognized Class Counsel's experience in complex class litigation and its skilled and effective representation. Thus, Class Counsel is "qualified, experienced, and generally able to conduct the proposed litigation." *Claxton*, 2015 WL 3648776, at *4. Accordingly, both Rule 23(a)(4) and Rule 23(g) are satisfied.

### 5. The Requirements of Rule 23(b)(3) are Satisfied

The proposed Settlement Class also meets the requirements of Rule 23(b)(3), which authorizes class certification where "questions of law or fact common to Class Members predominate over any questions affecting only individual members;" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Claxton*, 2015 WL 3648776, at *4; Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Both aspects of Rule 23(b)(3) are met here.

### 6. Common Issues Predominate

Predominance only requires "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013). "The fact that some individual questions will be involved in the case does not preclude a finding that the common issues will predominate." *Carpe*, 224 F.R.D. at 458; see also *Clark v. Bally's Park Place, Inc*., 298 F.R.D. 188, 199 (D.N.J.

2014) ("That common issues must be shown to predominate does not mean that individual issue[s] need be non-existent. All Class Members need not be identically situated upon all issues, so long as their claims are not in conflict with each other.") (internal quotations omitted).  As      the Supreme Court stated:

> When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23 (b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual Class Members.

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123-124 (3d ed. 2005)).

Plaintiffs believe predominance is met here. The determination of whether Class Members were arrested by Defendants is the central question common to each and every Class Member's claim. The actions of the Defendants against all Class Members occurred at the same time, were taken against the group as a whole, and were directed by the same individuals. In short, deciding questions of law and fact would fundamentally resolve core issues in the case in one fell swoop, as required by the law. Because these overriding questions focus on Defendants' conduct—and not on Plaintiffs' or Class Members' conduct—and because they concern the core question of liability, they predominate over any individualized questions. *See Jones v. CBE Grp., Inc*., 215 F.R.D. 558, 569 (D. Minn. 2003) ("The predominance inquiry focuses primarily on common questions regarding liability.") (citing cases); *In re McDonnell Douglas Corp. Sec. Litig*., 98 F.R.D. at 616 (E.D. Mo. 1982) ("[I]n determining whether common questions predominate, courts focus on the liability issues.") (citing authorities).

### 7.  Class Treatment is Superior to Alternate Methods of Adjudication

The superiority requirement in Rule 23(b)(3) "aims to provide for the 'vindication of the rights of groups of people who individually would be without effective strength to bring their

opponents into court.'" *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. at 140 (D.P.R. 2010) (quoting *Amchem*, 521 U.S. at 617). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to the superiority of a class action, including: whether individual Class Members wish to bring, or have already brought, individual actions; the desirability of concentrating the litigation of the claims in the particular forum; and manageability concerns. Fed. R. Civ. P.23(b)(3). Significantly, the manageability factor weighs strongly in favor of settlement because there is no more manageable form of adjudication than a voluntary settlement with an efficient and equitable extrajudicial claims process. *Cf. Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Here, class treatment is superior to other methods of adjudication. The maintenance of individual lawsuits by Class Members would be unmanageable, costly, and an inefficient use of judicial resources. Indeed, some cases have been litigated individually and have incurred legal costs that can be avoided by resolving the case as a class action. A class action here "avoid[s] potential duplicative litigation and … save[s] the parties time and legal costs to adjudicate common legal questions and factual issues," and thus, is superior to other available methods for fairly and efficiently adjudicating the controversy." *Claxton*, 2015 WL 3648776, at *5.

Class Members have instituted individual actions related to the events underlying this action. Those actions, if litigated individually, could a) risk inconsistent awards; b) expend significant judicial resources; and c) lead to unnecessary costs to individuals.

Accordingly, the Court should grant certification for settlement purposes.

### 8. The Court Should Appoint Plaintiffs as Class Representatives and Khazaeli Wyrsch, LLC and Campbell Law, LLC as Class Counsel Under Rule 23(g)

The Court should appoint Alicia Street, Ronald Harris, Fudail McCain, Ashley Theis, and

Nicole Warrington as Class Representatives. Plaintiffs have actively developed this case and vigorously represented the interests of the Class. They have provided Counsel with information to help prepare and advance the case, responded to multiple information requests, and represented the Class in settlement discussions. Accordingly, the Court should appoint Alicia Street, Ronald Harris, Fudail McCain, Ashley Theis, and Nicole Warrington as Class Representatives. The Court should also appoint Khazaeli Wyrsch, LLC and Campbell Law, LLC as Class Counsel under Fed. R. Civ. P. 23(g). Both firms have substantial experience in successfully prosecuting class actions in Missouri. Both before and throughout this litigation, Class Counsel has conducted a full and thorough investigation of this matter. Class Counsel has zealously represented the interests of the Class and committed substantial resources to the resolution of the class claims.

## C.  THE PROPOSED SETTLEMENT IS PRESUMPTIVELY FAIR AND SHOULD BE PRELIMINARILY APPROVED UNDER RULE 23(e)

"The law strongly favors settlements. Courts should hospitably receive them." *Liddell by Liddell v. Bd. of Educ. of City of St. Louis,* 126 F.3d 1049, 1056 (8th Cir. 1997) (quoting *Little Rock School Dist.*, 921 F.2d at 1383). "The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *In re Zurn Pex Plumbing Products Liability Litigation*, 2013 WL 716088, at *6. "Class actions, in general, 'place an enormous burden of cost and expense upon [] parties.'" *Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015) (quoting *Schmidt v. Fuller Brush Co*., 527 F.2d 532, 535 (8th Cir. 1975)). Settlement avoids protracted litigation and conserves resources. See *In re Uponor,* 716 F.3d at 1063 (expense of continued litigation "weigh[s] in favor of" approving settlement).

Approval of a class action settlement involves a two-step process. The court first makes a preliminary fairness evaluation. *See* Manual, § 21.632. If the preliminary evaluation does not disclose grounds to doubt fairness or other obvious deficiencies, and appears to fall within the

range of possible approval, the court directs that notice be given to Class Members and sets a fairness hearing, at which arguments and evidence may be presented in support of or against the settlement. *See* Manual § 21.633. The Notice should tell Class Members how to make their views known to the court. *Id.*

Under this framework, "the goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness. Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase." 4 Newberg on Class Actions § 13:13 (5th ed.)[1]. Thus, the Settlement should be submitted to the Class for their input and potential endorsement.

### 1. The Settlement is Presumptively Fair and Should Be Preliminarily Approved

Given that "[a] strong public policy favors agreements…courts should approach them with a presumption in their favor." *Little Rock School Dist.*, 921 F.2d at 1388; accord *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) ("judges should not substitute their own judgment as to optimal settlement terms for the judgments of the litigants and their counsel.") (internal quotation marks omitted). The Eighth Circuit "begin[s] with the guiding principle that 'a class action settlement is a private contract negotiated between the parties.'" *Marshall*, 787 F.3d at 509 (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005)). The court's role in reviewing a negotiated class settlement is "to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Id.* (quoting *In re Wireless*, 396 F.3d at 934). Thus, Class Members should be given notice of the Settlement and an opportunity to weigh in on its terms.

---

[1] At the conclusion of the Notice period, and after any objections have been resolved, the Court will address whether final approval is warranted.

**2.    The Settlement is Based on Arm's Length Negotiations Conducted After Extensive Investigation and the Exchange of Ample Information**

The Parties engaged in multiple days of negotiation, after an initial mediation that proved unfruitful. In fact, mediation as to this case occurred on November 4, 2021. The Parties had different opinions and evaluations about the case, and mediation failed to produce a result. However, it was a start of continued conversations which culminated in further discussions in November and December of 2022, at which time the Parties finalized the Settlement Agreement. Such multiple layers of scrutiny further mitigate in favor of the settlement and against [objectors'] claims of collusion."); *Claxton*, 2015 WL 3648776, at *6 (approving settlement as "a product of extensive negotiation conducted over a period of several months and requiring the services of a mediator.").

Additionally, the Parties have engaged in sufficient investigation and discovery "to a point at which an informed assessment of its merits and the probable future course of the litigation can be made." *E.E.O.C. v. McDonnell Douglas Corp.,* 894 F. Supp. at 1334 (E.D. Mo. 1995). Indeed, the Parties exhaustively investigated the facts underlying Plaintiffs' allegations before and during this litigation. Plaintiffs have conducted more than 75 depositions, Defendants have also provided hundreds of thousands of pages of documents to Plaintiffs, and Class Counsel also spoke with potential merits and damages experts concerning the strengths and weakness of the case, as well as the strengths and weaknesses of Defendants' arguments and defenses. The Parties exchanged further information through written correspondence; phone calls; detailed mediation statements and exhibits submitted by the Parties; and a full-day mediation.

**3.    Counsel Is Highly Experienced in Similar Litigation and its Considered Opinion Regarding the Settlement is Entitled to Significant Weight**

Class Counsel have extensive expertise litigating and settling complex class actions. "The

views of the parties to the settlement must also be considered" as well as the judgments of experienced class counsel. *DeBoer*, 64 F.3d at 1178. Courts give "'great weight' to and may 'rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement.'" *In re Zurn Pex Plumbing*, 2013 WL 716088, at *6 (*quoting Welsh v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987)) (citations omitted). The terms of the settlement here reached by arm's-length negotiation between attorneys familiar with the legal and factual issues of the case and who are well versed in litigating similar class claims. The parties and their respective counsel, having taken the risks and benefits into consideration, agree that the Settlement is fair and reasonable.

### 4. The Settlement Falls Well Within the Range of Possible Approval

The Settlement "brings real and immediate benefits to the settlement class while they may well not get anything if the case were to go forward or, if they did receive some benefits, may well not receive anything until years into the future after millions of dollars have been spent." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 2004 WL 3671053, at *10-11 (W.D. Mo. Apr. 20, 2004). "It is the surety of settlement that makes it a favored policy in dispute resolution as compared to unknown dangers and unforeseen hazards of litigation." *Id.* (*citing In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 701 (E.D. Mo. 2002) (recognizing it is often "proper to take the bird in the hand instead of a prospective flock in the bush.")); *see also Albright v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, 2013 WL 4855308, at *3 (E.D. Mo. Sept. 11, 2013) ("If the case were to proceed, the resulting motion practice, trial and appeals, could have been lengthy, involved, and expensive, presenting a substantial risk that Plaintiffs and the Settlement Classes would not ultimately prevail on their claim…the Settlement Agreement eliminates a substantial risk that the Class Members would walk away 'empty- handed.'"). The Settlement provides for

substantial monetary relief to Class Members, takes the "bird in hand" and avoids what could be years and years of further litigation and appeals. *See* supra §II.B (detailing the benefits provided by the Settlement). In the absence of settlement, the complexity of this case and the novel legal theories make continued litigation an inherently risky, costly, and timely undertaking. Because the proposed Settlement was negotiated at arm's length by experienced counsel, is neither illegal nor collusive nor obviously deficient, and falls within the range of possible final approval, it should be preliminarily approved and submitted to the Class for its feedback.

### D.  THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

### 1.  The Content of The Proposed Class Notice Complies With Rule 23(c)(2)

Pursuant to Rule 23(c)(2)(B), the notice must provide the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a Class Member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on Class Members under Rule 23(c)(3).

The Notice (attached as Exhibit 2) provides detailed information about the Settlement, including: 1) a comprehensive summary of its terms; 2) Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and incentive awards for the Plaintiffs; and 3) detailed information about the Released Claims.

In addition, the Notice provides information about the Fairness Hearing date, the right of Class Members to seek exclusion from the Class or to object to the proposed Settlement (as well

as the deadlines and procedure for doing so), and the procedure to receive additional information.

In short, the Notice is intended to fully inform Class Members of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights. The very detailed information in this proposed Notice goes well beyond the requirements of the Federal Rules. Indeed, courts have approved class notices even when they provided only general information about a settlement. This information is adequate to put Class Members on notice of the proposed Settlement and is well within the requirements of Rule 23(c)(2)(B).

**2.  The Plan for Distribution of the Class Notice Will Comply With Rule 23(c)(2)**

The Parties have agreed upon a notice plan that easily satisfies the requirements of both Rule 23 and Due Process. First, Defendants have provided a list from its records that includes the names, last known U.S. Mail addresses, belonging to persons within the Settlement Class. Settlement ¶ 4.6. This document shall be provided to the Settlement Administrator with a copy to Class Counsel for the purpose of giving notice to the Settlement Class Members.  The parties have agreed upon attorney Erich Vieth, Esq., to serve as the Settlement Administrator in this case. Mr. Vieth has significant class action experience representing both plaintiffs and defendants, and he has agreed to carry out all duties of the Settlement Administrator.

Next, the Settlement Administrator shall send Notice via mail substantially in the form attached as Exhibit 2 to all Settlement Class Members for whom a valid mail address is in the Class List. Should a notice be returned, to the extent possible, the Settlement Administrator will correct any issues that may have caused the returned mail to occur and make an attempt to re-send the mail notice if another address is identified by the Settlement Administrator. Settlement ¶ 8.4. The Settlement Administrator shall send notice substantially in the form attached as Exhibit 2 via First Class U.S. Mail to all Settlement Class Members. Settlement ¶ 8.4.

Further, within ten (10) days from the entry of the Preliminary Approval Order, Notice shall be published for three consecutive weeks in the St. Louis American newspaper. The Notice will substantially be in the form attached as Exhibit 3. Settlement ¶ 8.4.

Additionally, within fourteen (14) days from entry of the Preliminary Approval Order, Notice shall be provided on a website at an available settlement URL (such as, for example, www.september2017class.com) which shall be obtained, administered, and maintained by the Settlement Administrator and shall provide Settlement Class Members with the ability to update their mailing addresses. Copies of this Settlement Agreement, the long-form Notice, and other pertinent documents and Court filings pertaining to the Settlement (including the motion for attorneys' fees upon its filing), shall be provided on the Settlement Website. Settlement ¶ 8.3.

Finally, the Settlement Administrator shall cause to be served upon the Attorneys General of each U.S. State in which Settlement Class members reside, the Attorney General of the United States, and other required government officials, notice of the proposed settlement as required by law.

In sum, the proposed methods for providing notice to the Class comports with both Rule 23 and Due Process, and thus, should be approved by the Court.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Consent Motion for Preliminary Approval of the Settlement. A Proposed Order granting preliminary approval, certifying the Settlement Class, appointing Class Counsel and Class Representatives, appointing the Settlement Administrator, and approving the Proposed Notice of Settlement, has been submitted as Exhibit 1 to Plaintiffs' Motion.

Dated: January 26, 2023                        Respectfully Submitted,

*/s/ Javad Khazaeli*
**KHAZAELI WYRSCH LLC**

Javad M. Khazaeli, 53735MO
James R. Wyrsch, 53197MO
John M. Waldron, 70401MO
911 Washington Avenue, Suite 211
St. Louis, MO 63101
(314) 288-0777
(314) 400-7701 (fax)
javad.khazaeli@kwlawstl.com
james.wyrsch@kwlawstl.com
jack.waldron@kwlawstl.com

**CAMPBELL LAW LLC**
Alicia Campbell, 59586MO
8112 Maryland Ave.
Suite 400
St. Louis, Missouri 63105
alicia@campbelllawllc.com

***Attorneys for Plaintiffs***