UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ALICIA STREET, RONALD HARRIS, FUDAIL MCCAIN, ASHLEY THEIS, and NICOLE WARRINGTON, on behalf of Themselves and a class of similarly situated persons, | ) ) ) ) ) ) |
| Plaintiffs, | ) Cause No. 4:19-cv-02590-CDP ) |
| v. | ) ) |
| LT. COL. LAWRENCE O'TOOLE, et.al., | ) ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS**

Plaintiffs ("Plaintiffs") submit this memorandum in support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards. The Settlement reached with the City of St. Louis, Missouri ("City" or "Defendants") on behalf of the other named Defendants in this case is the result of extensive investigation, work, and negotiation. It achieves monetary relief for Settlement Class members and should be approved. Defendants will not be opposing this Motion.

Pursuant to the Court's Preliminary Approval Order (Dkt. No. 106), Plaintiffs request an award of attorneys' fees in the amount of $1,638,000.00 and reimbursement of costs in the amount of $201,910.37. The requested attorneys' fees represent one-third of the gross $4,914,000.00 reversionary cash Settlement Fund. These amounts are appropriate considering the work performed by Plaintiffs' Counsel and the substantial time, effort, and personal sacrifice of the Class Representatives, the attorneys' fees, and costs.

Service Awards will not be sought in this Motion, as Class Counsel wants to appropriately assess such request after claims are filed and final damage awards can be properly assessed, in order to maximize Class value. Class Counsel will file a request for Service Awards, to the extent necessary, with Plaintiffs'

1

and the Class's Motion for Final Approval.

For all of the reasons set forth herein, Plaintiffs request that the Court grant these awards.

## II.   BACKGROUND

Class Counsel have devoted substantial time and resources to investigating, litigating, and resolving this case. See Declaration of James Wyrsch ("Wyrsch Decl."), attached hereto as Exhibit 1, at ¶¶ 4-19.

Beginning on September 17, 2019, the named Plaintiffs filed their Complaint, asserting claims under 42 U.S.C. § 1983 that Defendants violated their constitutional rights, as well as asserting Missouri state law claims. In drafting the Complaint, Class Counsel engaged in extensive review of the law and evaluated potential class representatives. Wyrsch Decl. ¶ 6. Plaintiffs amended that Complaint on January 15, 2020.

Defendants filed a Motion to Dismiss the Complaint on March 16, 2020, Dkt. Nos. 19-28. which was denied and granted in part on February 22, 2021, Dkt. No. 66. Defendants then filed their Notice of Appeal on March 3, 2021. Dkt. No. 67. The Eighth Circuit ultimately affirmed in part and reversed in part the district court's denial of Defendant's Motion to Dismiss on July 27, 2022.  Dkt. No. 80. The district court case was stayed while Defendants' appeal was pending. Dkt. No. 83.

Thereafter, Plaintiffs moved to file a Third Amended Complaint, which was granted on September 2, 2022. Dkt. No. 85.  On November 7, 2022, Defendants filed their Motion to Dismiss. Dkt. Nos. 91-94. As before, this matter was fully briefed. Parties then notified this Court on December 19, 2022, that this matter was settled. Dkt. No. 99.

On November 4, 2021, the Parties engaged in a day-long mediation before the Honorable Booker Shaw. Wyrsch Decl. ¶ 15.  Class Counsel entered the mediation fully informed of the merits of Class Members' claims and were prepared to continue to litigate and try the case rather than accept a settlement

that was not in the Plaintiffs' and the Classes' best interests. *Id.* Because that mediation was unsuccessful, the parties continued litigating the case.

Moreover, in the individual cases that are now incorporated, Class Counsel prepared and served initial disclosures, lengthy interrogatories, and two comprehensive sets of document requests; responded to discovery requests, including interrogatories to each individual plaintiff; reviewed tens of thousands of pages of documents; reviewed dozens of hours of videos; met and conferred with defense counsel to resolve various discovery disputes; engaged in successful motion practice to compel Defendant's production of certain documents; noticed, prepared for, and conducted scores of depositions. Wyrsch Decl. ¶ 16. The information obtained in these individual matters was crucial to the development and resolution of the class case.

Additionally, Class Counsel consulted with an expert witness; retained a police expert; and deposed non-party witnesses. *Id* ¶ 17. Discovery was managed to maximize efficiency and ensure that there was no duplication of efforts. Id.  The discovery process, which accounts for a significant portion of the attorney time expended in this case, was essential to its successful litigation and settlement. *Id*. Among other things, information obtained during the document review process was utilized in depositions and informed the preparation and success of the settlement of this case.

Class Counsel prepared the first draft of the Settlement Agreement, and the Parties then negotiated the precise terms and language of the Agreement. Id. ¶ 19. Following further intensive negotiation and the exchange of numerous draft agreements between the Parties, Class Counsel ultimately was able to reach a Settlement Agreement that provides significant monetary compensation, while avoiding the risks and delay of further litigation. The Parties selected Erich Vieth, a successful private attorney with class action experience, on both for both plaintiffs and defendants, and counsel has been actively involved in supervising and managing all aspects of Mr. Vieth's administration of the notice program. *Id*. at ¶ 19.

Moreover, Class Counsel will continue to work closely with the class members and Mr. Vieth through final approval in this matter. The decision to use Mr. Vieth also was an effective way to ensure the most money is available to the Class.

### III.   ARGUMENT

#### A.   Legal Standard

The Federal Rules of Civil Procedure provide that in a certified class action, the Court may award reasonable attorneys' fees "that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "It is well established in this circuit that a district court may use the 'percentage of the fund' methodology to evaluate attorney fees in a common-fund settlement." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999).

Indeed, "where attorney fees and class members' benefits are distributed from one fund, a percentage-of-the-benefit method may be preferable to the lodestar method for determining reasonable fees." *West v. PSS World Med., Inc.*, 4:13 CV 574 CDP, 2014 WL 1648741, at *1 (E.D. Mo. Apr. 24, 2014); "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" (quoting *Petrovic*, 200 F.3d at 1157)); *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 736 F. Supp. 1007, 1008-09 (E.D. Mo. 1990) (percentage of fund "is a more appropriate and efficient means of calculating an attorneys' fee award" than lodestar method); *Barfield v. Sho-Me Power Elec. Co-op.*, 2:11-CV-4321NKL, 2015 WL 3460346, at *3 (W.D. Mo. June 1, 2015) (same); *Wiles v. Southwestern Bell Tel. Co.*, 09-4236-CV-C-NKL, 2011 WL 2416291, at *4 (W.D. Mo. June 9, 2011) (same). Courts may, but are not required to, use the lodestar method to crosscheck the fairness of a percentage award. See *Petrovic*, 200 F.3d at 1157.

#### B.   The Fee Requested is a Reasonable Percentage of the Fund.

Plaintiffs seek a fee award of $1,638,000.00, which is equal to one-third of "the full value of the

4

benefit to each absentee member" obtained through the "entire judgment fund." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980).

The request for one-third of the settlement amount here is reasonable and well within the range typically approved by courts in this Circuit. "[C]ourts in this circuit . . . have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund." *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159, at *1 (N.D. Iowa Nov. 9, 2011) (awarding 36.04% of $18.5 million common fund, plus over $900,000 in expenses).

Indeed, awards of one-third of the fund are common. See, e.g., *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) ("[C]ourts have frequently awarded attorneys' fees ranging up to 36% in class actions."); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming award of 36% of $3.5 million fund, plus $40,000 for expenses); *In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 WL 4045741, at *21 (E.D. Mo. June 30, 2005) ("33% remains the fee most frequently requested."); West, 2014 WL 1648741, at *1 (fee award of 33% of fund reasonable); *Wiles*, 2011 WL 2416291, at *4-5 (same); *Barfield*, 2015 WL 3460346, at *4 (same).  See also Wyrsch Decl. ¶¶ 16-21.

    **C.**    **The Johnson Factors Support the Reasonableness of the Fee Request.**

The reasonableness of the fee award requested here is supported by the "Johnson" factors, which are approved in the Eighth Circuit. See *Barfield*, 2015 WL 3460346, at *5 (The Eighth Circuit "has approved consideration of the twelve factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719-20 (5th Cir. 1974)."). The Johnson factors include:

> (1) The time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the attorney's preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results

5

obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at *5 (quoting *Allen v. Tobacco Superstore, Inc*., 475 F.3d 931, 944 n.3 (8th Cir. 2007)).

Not every factor applies, and the Court has discretion regarding which factors it considers and the relative weight given to each. See *In re Xcel,* 364 F. Supp. 2d at 993 (citing *Uselton v. Commercial Lovelace Motor Freight, Inc*., 9 F.3d 849, 854 (10th Cir. 1993), which notes that "rarely are all of the Johnson factors applicable; this is particularly so in a common fund situation" (citation omitted)); see also *Yarrington v. Solvay Pharmaceuticals, Inc.,* 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010) ("[N]ot all of the individual factors will apply in every case, affording the Court wide discretion in the weight to assign each factor."). Here, the most salient factors support the requested fee award.

      **a**.    **Class Counsel Achieved an Excellent Recovery for the Class.**

The Settlement is excellent for the Class, particularly considering the significant risks of litigation. Moreover, there were many unique risks in this case, particularly when considering the complex questions of constitutional law involved, the risks of prolonged litigation, and the uncertainty of trial and appeal, all of which would have delayed recovery even if Plaintiffs had prevailed in full at trial. The Settlement amount is substantial in the aggregate and will provide significant cash benefits to Settlement Class members. In fact, from Class Counsel's review of other similar settlements throughout the country, this class action is one of the best achieved so far.

      **b**.    **The Contingent Nature of the Case Supports the Fee Request.**

In evaluating the Johnson factors, courts must take into consideration the contingent nature of any attorneys' fee award, because "[a]ccess to the courts would be difficult to achieve without compensating attorneys for that risk" of uncertainty. *In re Abrams & Abrams, P.A.,* 605 F.3d 238, 246 (4th Cir. 2010).

"Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." *Yarrington*, 697 F. Supp. 2d at 1062 (quoting *In re Xcel,* 364 F. Supp. 2d at 994). "The risk of non-payment must be judged as of the inception of the action and not through the rosy lens of hindsight." *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liab. Litig.,* 553 F. Supp. 2d 442, 478 (E.D. Pa. 2008).

"A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007). The risk of no recovery factors into undesirability, and is considered in light of, among other things, the risk of obtaining class certification and establishing liability at trial. *Bredbenner v. Liberty Travel, Inc.*, No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *20 (D.N.J. Apr. 8, 2011).

Here, Class Counsel faced numerous hurdles and defenses making liability (and consequent payment) uncertain. The case was prosecuted entirely on a contingent basis, entailing substantial risk that the litigation would yield little or no recovery or compensation. See Wyrsch Decl. ¶ 13.

  c. **The Factual and Legal Issues in this Action are Complex.**

Plaintiffs allege class claims for violation of the First and Fourteenth Amendments to the United States Constitution, as well as state law claims. See Dkt. No. 1 (Complaint). Defendants denied all liability and sought review on Appeal. See Dkt. No. 19-28, 67. The claims are complex in terms of subject matter and legal issues resulting from, among other things, uncertainty and a lack of precedent as to similar class-wide claims.

  d. **Counsel for All Parties are Skilled Practitioners in Complex Litigation**

The quality and skill of Class Counsel's work prosecuting this challenging litigation also warrants

approval of the requested fee. Complex litigation and class actions require skill sets and experience needed to perform the legal service properly.

Counsel brought their exceptional abilities to bear on behalf of the Settlement Class, both in developing the factual record in the case, as well as in the quality of their legal research, writing, and argumentation in, among other things, successfully opposing Defendants' motion to dismiss, successfully litigating this case through appeal, while simultaneously developing the factual and legal case in the individual cases.

Moreover, Class Counsel brought their tenacity and skill to bear at the negotiating table, ultimately resulting in an exceptional settlement for the Class. See Wyrsch Decl. ¶¶ 4-12, 17-18. Plaintiffs faced well-qualified opposing counsel who pressed defenses on their client's behalf. *Bredbenner*, 2011 WL 13447, at *20 (performance and quality of opposing counsel considered in measuring the skill and efficiency of class counsel). "Class counsel's success in bringing this litigation to a conclusion prior to trial is another indication of the skill and efficiency of the attorneys involved." *Id*. Accordingly, this factor supports approval of the requested fee award.

**D.     Class Counsel Should Be Awarded Costs.**

Reasonable and necessary expenses also have been advanced to prosecute this litigation in the amount of $201,910.37. Wyrsch Decl. ¶ 27. "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *Yarrington*, 697 F. Supp. 2d at 1067 (quotations omitted).

The requested costs must be relevant to the litigation and reasonable in amount. *Id*. The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are the type typically billed by attorneys to paying clients in the marketplace. See *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994) (allowing recovery of "out of-pocket expenses

that 'would normally be charged to a fee paying client'").

Here, Class Counsel seeks reimbursement of costs and expenses totaling $201,910.37. The great majority of these costs are discovery and expert witness related. Wyrsch Decl. ¶ 27. These are the type of expenses routinely charged to hourly clients and, therefore, the full requested amount should be reimbursed. See *Yarrington*, 697 F. Supp. 2d at 1067 (approving request where "the costs incurred included filing fees; expenses associated with the research, preparation, filing, and responding to the pleadings in this matter; costs associated with copying, uploading, and analyzing documents; fees and expenses for experts; and mediation fees").

All of these costs and expenses were advanced by Settlement Class Counsel with no guarantee they would ultimately be recovered, and most were 'hard' costs paid out of pocket to third-party vendors, court reporters, and experts.); *West*, 2014 WL 1649741, at *1 (finding costs including mediation expenditures, travel, expert fees, and depositions were reasonable and granting requested award).

## IV.     CONCLUSION

For the reasons discussed above, the Court should approve Plaintiffs' request for $1,638,000.00 in attorneys' fees, and $201,910.37 in reasonable costs.

9

Dated: February 20, 2023                                Respectfully submitted,

                                                     **KHAZAELI WYRSCH LLC**

/s/ James R. Wyrsch
Javad M. Khazaeli, 53735MO
James R. Wyrsch, 53197MO
John M. Waldron, 70401MO
911 Washington Avenue, Suite 211
St. Louis, MO 63101
(314) 288-0777
(314) 400-7701 (fax)
javad.khazaeli@kwlawstl.com
james.wyrsch@kwlawstl.com
jack.waldron@kwlawstl.com

**CAMPBELL LAW LLC**

Alicia Campbell, 59586MO
8112 Maryland Ave.
Suite 400
St. Louis, Missouri 63105
alicia@campbelllawllc.com

*Attorneys for Plaintiffs*